Mr. Brett L. Eliason, Agent for Max D Eliason
43 South Fairway Drive
North Salt Lake, Utah 84054
801-949-0080
Brett.eliason1@gmail.com
  Plaintiff is Self-Represented "Pro Se"

FILED US District Court-UT
FEB 28 '20 PM03:20

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

### Court Address: 351 South West Temple, Room 1.100, Utah 84101

| | |
|---|---|
| BRETT L ELIASON; AGENT, TRUSTEE, BENEFICIARY OF THE ESTATES OF MAX AND JOYCE ELIASON<br><br>THE MAX D ELIASON ESTATE AND TRUST DATED OCTOBER 28TH, 2015 (MAX D ELIASON IS LIVING)<br><br>THE JOYCE S. ELIASON ESTATE AND TRUST DATED OCTOBER 28TH, 2015 (deceased May 21st, 2018)<br><br>KYLIE MARIE ELIASON AND BRITTNIE LYNNE ELIASON (BENEFICIARIES OF THE GRANDCHILDREN'S TRUST)<br><br>VERONIQUE P ELIASON; (SUCCESSOR TRUSTEE TO BRETT L ELIASON UNDER THE 2016 TRUST)<br>_____<br>Plaintiff<br><br>v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS<br><br>DALLIN H OAKS, INDIVIDUALLY<br><br>KIRTON McCONKIE, PC, LEE WRIGHT, CAMERON HANCOCK, KEN OLSEN, TOM MECHAM, CHRIS HILL, GREG MOESINGER,<br><br>CRAIG MCCULLOUGH<br><br>KENT SNIDER, ATTORNEY AT LAW<br><br>BRYAN P STEPHENS, INDIVIDUALLY; CPA SMC, LLC<br><br>LISA STEPHENS. SOLE TRUSTEE OF THE JOYCE S ELIASON ESTATE DATED 10-28-15 | **COMPLAINT AND CAUSES FOR ACTION**<br><br><br>**IT IS REQUESTED THAT THE DEFENDANTS BE RESPONSIBLE TO RESPOND TO THE EVIDENCE WHICH FALLS UNDER THE RULES OF "RES IPSA LOQUITUR" WHEREIN IT SPEAKS FOR ITSELF.**<br><br><br>**REQUEST FOR DECISION ON CIVIL ALLEGATIONS WITH AN IMMEDIATE REVIEW FOR TRANSFER OF COMPLAINT TO THE US ATTORNEY'S OFFICE FOR CRIMINAL PROSECUTION**<br><br>**ADJOINDER OF CIVIL #190901906**<br><br><br><br><br>**Case No. 1:20-CV-00024**<br><br>**Judge:  The Honorable Jill N Parrish** |

1

MARK D ELIASON; LAURIE ELIASON, TRUSTEES

THE ELIASON 2015 TRUST; THE ELIASON 2016 TRUST; ELIASON EIGHT, LLC; ELIASON ENTERPRISES LLC

ROBERT BAIR, PAULINE BAIR, JON BAIR, ZAC BAIR

DAX D ANDERSON, TIMOTHY B ANDERSON, ROD N ANDREASON, BRENT A ANDREWSEN RANDY T AUSTIN, MATTHEW C BALLARD, LORIN C BARKER, JASON W BEUTLER, KENNETH W BIRRELL, CHRISTOPHER E BRAMHALL, JOSEPH R BRUBAKER, BRIAN W BURNETT, JAMES T BURTON, TYLER BUSWELL, RYAN C CADWALLADER, THOMAS K CHECKETTS, TONY CHRISTENSEN, CHRISTIAN S COLLINS, DAVID R CONKLIN, MICHAEL W DURHAM, ALEXANDER SUSHKU, BRETT D EKINS, JAMES E ELLSWORTH, DAVID S EVANS, WALLACE O FELSTED, RYAN B FRAZIER, GEOFF GERMANE, DAVID L GLAZIER, CHAD A GRANGE, R SHAWN GUNNERSON, BEN HATHAWAY, READ R HELLEWELL, KENNETH E HORTON, LOYAL C HULME, DALE E HULSE, ROBERT C HYDE, SCOTT E ISAACSON, LARRY S JENKINS, RANDY K JOHNSON, MICHAEL D JOHNSTON, ADAM M KAAS, BRYANT J KELLER, KEVIN L KIMBALL, JOHN B LINDSAY, PARK LLOYD, DANIEL S MCCONKIE, OSCAR W MCCONKIE III, ANTONIO A MEJIA, CRAIG METCALF, RUSSELL S MITCHELL, JACOB T MUKLEWICS, MERRILL F NELSON, STERLING S OLANDER, JOSEPH V OSMOND, ALEXANDER N PEARSON, DANIEL H PURDIE, JESSICA RANCIE, LANCE D RICH, MATTHEW K RICHARDS, SHAWN T RICHARDS, ERIC B ROBINSON, JOSHUA RUPP, PETER C SCHOFIELD, JUSTIN W STARR, SWEN R SWENSON, DAVID B TINGEY, BRIAN D TUCKER, JON E WADDOUPS, ADAM WAHLQUIST, DAVID M WAHLQUIST, MICHAEL C WALCH, THOMAS D WALK, ROBERT D WALKER, STEVEN L WHITEHEAD, BRINTON M WILKINS, DAVID S WILSON, R GARY WINGER, EVAN R WITT, JOEL D WRIGHT, ROBBIE G YATES, ELAINE C YOUNG

RENCHER ANJEWIERDEN LAW OFFICES, JARYL L RENCHER, D GREGORY ANJEWIERDEN, BENJAMIN K LUSTY, MICHAEL J COLLINS

ATTORNEY R DAVID BISHOP

JULIE HARMAN, DAVID WERNER, ZANT DOTY, KINDRA KAUER, PARK BEUTLER, LIZ FELIX

AMY STEPHENS, JASON STEPHENS, LINDSAY STEPHENS, WHITNEY STEPHENS, AUSTIN STEPHENS, SPENCER STEPHENS, DEREK ELIASON, DYLAN ELIASON, ANGELA ELIASON

JOHN DOES TO BE ADDED AS INDIVIDUALS/ENTITIES

2

| Defendant | |
|---|---|
| | |

Dear Honorable Robert D Shelby, Chief Judge; and D. Mark Jones, Clerk of The Court

IT has been said that *"WHEN THE LAW NO LONGER PROTECTS YOU FROM THE CORRUPT, BUT PROTECTS THE CORRUPT FROM YOU; THEN YOUR NATION IS DOOMED."*

It is hoped that the horrific story of corruption exposed within this complaint concerning the Estates of Max and Joyce Eliason will not be an indication of doom within our society, however; there is an extra degree of evil found herein to which no person in society should need be subjected to or fear that something similar could ever happen again.

Max and Joyce Eliason entered Kirton McConkie on June 20th, 2013 representing "Any Man/Woman" as two faithful and devout members of the LDS Church who needed desperate help in formulating an Estate Plan following a terminal diagnosis of lung cancer with Joyce S Eliason.

The most troubling fact of this entire situation is not that a vengeful and greedy brother-in-law was able to "buy" the loyalty of a Sr Partner of Kirton and McConkie and embezzle the estates of Max and Joyce Eliason; the real troubling evil lies within the level of conspiracy and corruption which has been exposed by Plaintiff since his mother passed away on May 21st, 2018.

Senior Management of Kirton McConkie Law Offices were aware of this "crime-scene" in February of 2019 when Tom Mecham told Plaintiff that KMC Law and Craig McCullough represented Lisa Stephens as Sole Trustee and Personal Representative of Joyce S Eliason

3

and the Joyce S Eliason Trust.  Plaintiff realized immediately that this could not be legal since Max D Eliason was the Settlor and Co-Trustee of this A/B Trust and was still very much alive.

The last thing that the Eliason Family should have needed to worry about in this tragic period of life is whether or not the Lawyers of The LDS Church were planning to embezzle their sacred life's work and target their youngest beneficiary (Plaintiff Brett L Eliason) for emotional and financial demise which they continue to do despite desperate pleas to the Board of Directors of KMC Law and Brother Dallin H Oaks; President of the Quorum of Twelve Apostles of the LDS Church.

The degradation and corruption which has been uncovered within this complaint will re-define lawlessness and to what repulsive levels and what actions human beings are capable of in the name of wealth and greed, or in this case; to exact vengeance on a younger sibling and brother-in-law who was unknowingly despised by those he thought loved him the most.

This complaint will illustrate an abuse of power unlike any heard of heretofore; and those who have participated herein should face justice; no matter what their name or status in society is. There is no professional business or title of President and/or "Prophet to Be" and the associated crimes which continue to be made by these individuals should be considered "Obstruction of Justice" and "Aiding and Abetting" known felons; and tried accordingly.

The complaint herein would never have been possible had Kirton McConkie honored their Fiduciary Duty to Max and Joyce Eliason.  The front page of this Complaint speaks volumes as to the fraudulent nature of this entire relationship.

4

Kirton McConkie knows that Max Eliason listed as "Settlor and Co-Trustee" leaves them Defenseless as to how Lisa E Stephens is appearing as "Sole Trustee" and the attached fraudulent documents which allow it.   Why would anyone with a Fiduciary Duty to Max and Joyce Eliason fight to not allow Plaintiff to include his Father to ensure the integrity of his estate?

Rather than making one effort of "good faith" which one would expect from the "Lawyers of Jesus Christ Himself"; the attorneys which were anointed and who blessed by Dallin H Oaks have reacted as "The Hell's Angels" in directing financial and emotional assaults on both Max D Eliason and his youngest son and Plaintiff; Brett L Eliason.

In the most heinous form of cover-up and obstruction of justice; KMC Law immediately directed the humiliation of Max D Eliason in front of Judge Faust in the Third District Probate Court to have him deemed "incompetent" on May 29th, 2019.  This being done with the sole intention of covering up the crime of "why are they not representing Max D Eliason"?

Plaintiff has been assaulted simultaneously as if "clinically insane" and his right to visit his own father eliminated through fraudulent allegations and defamation of character statements by Defendants along with false allegations made to the Division of Aging Services at the State of Utah.  A "Kirton McConkie" approved lawyer and Defendant Kent Snider has been appointed to "protect" Max and the siblings have installed video surveillance and lock pads on doors.

Plaintiff is requesting the "Ex-Parte Injunction Hearing" because he knows his father is being "protected" by the same siblings who coordinated an illegal dosage of morphine to be administered to his mother Joyce S Eliason three days before they had her sign an undisclosed "Second Amendment to the Joyce S Eliason Trust" dated April 17th, 2018.

5

Joyce S Eliason would fall into a morphine induced coma on April 20th, 2018 and all associated texts with the incident are compelling that Lisa Stephens in conjunction with Bryan Stephens and Craig McCullough sought to have Joyce S Eliason "put down" immediately after executing the fraudulent document which empowered Lisa Stephens as Sole Trustee.

KMC Law currently represents Lisa Stephens, Bryan Stephens, Mark Eliason, and Laurie Eliason while targeting the Plaintiff to whom Kirton McConkie owed equal treatment as Trustee/Beneficiary/and Member Manager of the Eliason Family entities.

Plaintiff's access to all funds which his mother and father appropriated for him to access for his needs have all been deliberately cut off which has caused irreparable damages and destroyed his business which he started with his mother Joyce Eliason two years before she passed away. Plaintiff is now threatened by a foreclosure on his personal residence with no place to go.

Max and Joyce Eliason paid Kirton McConkie and entrusted their sacred estates to be protected while they were living and to always show an unbiased and equal treatment of each beneficiary/trustee upon their death. They also demanded that their youngest son and Plaintiff Brett L Eliason be protected from his two older and resentful siblings whom Joyce Eliason feared would be attacked after her death. She also demanded that Kirton McConkie and Craig McCullough not allow Bryan P Stephens to participate in any way with her Estate Planning and that of her husband Max D Eliason.

Within this complaint; Kirton McConkie and Defendants are mocking the laws of God and Man not to mention their own clients Max and Joyce Eliason with the absolute knowledge that both estates have been illegally embezzled through their combined efforts with Bryan Stephens whom Joyce instructed to never allow to participate as he was merely allowed to prepare taxes for the couple and in nowise was ever considered a financial consultant.

6

It is repulsive, horrifying, ungodly, and more precisely wicked and evil that describes the nearly seven years which have passed wherein Craig McCullough and Kirton McConkie have knowingly been participating in the raping and pillaging the Estates of Max and Joyce Eliason which have illegally been distributed to unknown sources while Max D Eliason is still alive.

The damages which have been inflicted upon this family will never heal and the corruption associated with the actions herewith should be exposed and punished by every means and laws allowed to demonstrate the intolerance of society towards this form of lawlessness.

Plaintiff expresses his concern to the court and society that the only reason he is in this circumstance and complaint; is because Tom Mecham who is Craig McCullough's manager over the Estate Planning Division informed Brett L Eliason that he needed to find an attorney and file a complaint against KMC Law in order to protect his interest as Trustee/Beneficiary and as it would turn out; Member/Manager of his own companies.

Plaintiff and his parents are really considered "Victims" of greed and corruption with no valid reason for this complaint to exist had Kirton McConkie not Breached their Financial Duty to Max and Joyce Eliason.

Plaintiff Brett L. Eliason hereby records this amended complaint against the Defendants for their respective participation in the desecration and embezzlement of the Estate of Max and Joyce S Eliason as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Brett L. Eliason is an individual residing in North Salt Lake, Utah. He is the youngest of the three beneficiaries of Max and Joyce S Eliason and by all legal rights is named as a Co-Trustee and Co-Beneficiary of all entities associated with the Last Will and Testament of his parents including the Eliason 2015 and the Eliason 2016 Family

7

Trusts. Plaintiff is also a rightful 33% owner of Eliason Eight, LLC and Eliason Enterprises, LLC from which Craig McCullough has illegally removed Plaintiff from as member/manager along with his rights as Trustee and Beneficiary of every entity owned by Max and Joyce Eliason which were designated for Plaintiff to own equally.

2. Plaintiff Max D Eliason is an individual residing in Salt Lake City, Utah. As already stated, Max is in fact the "Settlor/Creator" of The Joyce S Eliason Trust dated 10-28-15 and the Co-Trustee to the Max D Eliason Trust also dated 10-28-15 (although Defendants refuse to provide Max or Plaintiff with copies of his own Last Will and Testament and the associated Trust documents). He engaged and entrusted Kirton McConkie and Craig McCullough to protect his and his late wife's Estates whose assets are now "missing" and Kirton McConkie's response to his demands from Sr Management were met with him being humiliated in front of Judge Faust and deemed "incompetent" so as to silence his legal ability to demand for accountability and hoping to cover their intentional Breach of Fiduciary Duties to Max D Eliason. Judge Faust of the Third District Court granted Plaintiff Brett Eliason the right to leave his name on as Plaintiff on subject complaint which is done to allow Max a voice in showing that he was indeed the rightful "Settlor and Co-Trustee" of the Joyce S Eliason Trust dated October 28th, 2015. As noted under the Defendants, Kirton McConkie utilized fraudulent documents to empower Lisa Stephens as "Sole Trustee" upon the death of her mother and it is apparent that all assets from both the Max and Joyce Eliason Estate have been distributed without accountability.

3. Plaintiffs the Estates of Max D Eliason and Joyce S Eliason are plaintiffs because all of the assets associated therewith are apparently "MIA" from this A/B Trust while Kirton

8

McConkie and all Defendants continue to do everything in their power to refuse the need to account for over $100M in assets. No Defendant should have an issue with showing complete transparency unless it is to conceal their respective participation in this heinous crime which continues unchecked by KMC Management.

4. Plaintiff Kylie Marie Eliason is the 20-year-old daughter of Plaintiff Brett L Eliason and resides in Anaheim California. She is also a Granddaughter and rightful Beneficiary of the Joyce S Eliason Grandchildren's Trust having her rights also deprived with no accounting provided by Kirton McConkie or the self-appointed Trustee Lisa Stephens. Kylie is threatened with being evicted from her residence in California which would never have happened had Kirton McConkie upheld its Fiduciary Duty to Max and Joyce Eliason.

5. Plaintiff Brittnie Lynne Eliason is the 18-year-old daughter of Plaintiff Brett L Eliason and also the Granddaughter of Max and Joyce Eliason. She is also a rightful Beneficiary under the terms of the Grandchildren's Trust which was created in December of 2017 and was illegally deleted by Defendants through the alleged fraudulent Second Amendment to the Joyce S Eliason Trust dated December 8th, 2017.

6. Plaintiff Veronique Eliason is the spouse of Plaintiff Brett L Eliason and is named herein as a third party and as the legal successor Trustee under the Terms of the Eliason 2016 Trust dated December 22nd, 2016. Under the terms of the Eliason 2016 Trust, Veronique Eliason should have been appointed to succeed her husband in the event he was deemed "incapacitated" by one of the beneficiaries. Whereas the Defendants had Max Eliason deemed "incompetent" and Brett Eliason deemed "insane"; the only way to remove the rights of Veronique Eliason was to declare her and her husband

"divorced" and allegedly created a fraudulent Divorce Decree dated April 16th, of 2016. While it is true that divorce proceedings were initiated in 2016, there was never a divorce decree issued and yet KMC allegedly created one in fraud.

7. Defendant the Corporation of The President of The Church of Jesus Christ of Latter-Day Saints is held liable based on its Principal/Agent relationship and the associated duty to the "Third Party" Max and Joyce Eliason. Dallin H Oaks, President of the Quorum of The Twelve Apostles of the Church of Jesus Christ of Latter-Day Saints dedicated The Kirton McConkie Law Offices as if a "Holy Temple" on April 12th, 2012; just months prior to Joyce S Eliason entering their doors after being found with lung cancer. The dedication also included the reference to the associated attorneys as "Lawyers of Jesus Christ Himself". There is an obvious Respondent Superior and Vicarious liability which is also supported under the Utah Law concerning Apparent Authority (CV2803) wherein it is clear that the endorsement by "The Prophet To Be" is a resounding confirmation that the Estates of Max and Joyce Eliason are considered in their minds to be just as safe as the millions of dollars in tithes and offerings the couple has made. It is not the responsibility of a desperate elderly couple in need of Estate planning to study the structure of the Law Firm to see if it is part of the Church or separate. KMC Lawyers are Agents for the Principal leaving their liability to the third party. The additional measures of covering up these obvious crimes and pleas to Dallin H Oaks whom plaintiff has begged to "choose the right" have been dismissed with Brother Oaks instead following and manipulating the President of Kirton McConkie and "choosing the Wright" (as in Lee Wright). It is unrealistic to assume that Kirton McConkie President Lee Wright is responsible for directing these vicious actions which

10

are considered lawless and exposing the LDS Church to a compounding amount of liability. Plaintiff alleges that it is because of the extreme level of liability to the Church that Dallin H Oaks continues to direct KMC Law to conceal this fraudulent action.

8. Defendant Dallin H Oaks is being named due to his obvious management of Kirton McConkie Law Offices and for his "advertising KMC Law" by dedicating the offices as if a Holy Temple of the LDS Church. His legal background and high level of interaction and apparent oversight of Kirton McConkie Law Offices along with his expertise in Estate Planning would make him an expert in the understanding of how heinous the crimes are which continue to be committed against Plaintiff, his Father, and his two daughters who have also been disowned through this violent attack on the beneficiary of Max and Joyce Eliason. Plaintiff has made desperate pleas to Dallin Oaks and it is alleged that the "Prophet to Be" of the LDS Church is knowingly aiding and abetting the criminal actions against the clients of KMC Law in hopes that the truth will be covered up and buried as with recent sexual abuse scandals within the LDS Church. It would be naïve to assume that the high level of exposure to the LDS Church and to Kirton McConkie is not being managed by the former Utah Supreme Court Judge and Lawyer who specializes in Estate Planning. There is a clear message within the cover-up of this "embezzlement" of over $100M in assets from the Estates of Max and Joyce Eliason that the position of the Church and Dallin Oaks stating that "the sacrifice of the few; justifies the greater good of the many" is apparently being employed to cover up internal crimes no matter how heinous or damaging they have been in destroying an entire family for generations to come. Plaintiff Brett Eliason pled for the intervention of Dallin Oaks through President Lee Wright with the anticipation that his "Prophet to Be" would

11

certainly recognize the mountain of criminal actions and to "Choose the Right". Instead of finding relief; he found himself apparently deemed "insane" and was reported to the "Aging Services Division" for financially and emotionally abusing his own father he sought to help. Ever since the day Plaintiff Brett Eliason informed Kirton McConkie that their customer by Law was Max D Eliason and they were sitting in Felony Waters; Plaintiff's home where he cared for his parents daily for five years has been put under video surveillance and key pad door locks prohibiting him from visiting his hero in life for over six months now. Associated with these attacks; the Defendants have gone on a malicious assassination of Plaintiff's character and integrity which has left him alienated from every aunt, uncle, niece, nephew, cousin, neighbor, and most friends who are all convinced that Plaintiff is "stealing" money and emotionally abusing his father; while the truth shall prove that tens of millions of dollars has already been taken and that Max D Eliason has less than $10k in his account with no accountability provided. It is unthinkable to imagine the level of abuse of power within this litigation wherein the level of greed has completely erased the defendant's consciousness and humanity and using several professional licenses including Trustee's, CPA's, Estate Planning Attorneys, Managing Sr Partners, The Board of Directors of KMC Law, and the President of The Quorum of The Twelve Apostles of The Church of Latter-Day-Saints who has ignored Plaintiff's pleas despite his extensive expertise in Estate Planning for which he has even published literature. Dallin Oaks could have intervened at any time including the present as a show of good faith towards the family and victims left in carnage following the still present fraudulent attacks which threaten the lives of the Plaintiff's Max D Eliason and Plaintiff and his family; all of whom Defendants would

12

rather see "dead" than to bring up this criminal level of corruption to the light of day and the media.

9. Defendant Kirton McConkie, PC (sometimes referred to herein as Kirton McConkie or Kirton and McConkie). It has approximately 150 Lawyers and is considered the largest and most prestigious Law Firm in the State of Utah. Kirton McConkie was entrusted to protect the sacred life's work of Max and Joyce Eliason who has left a rich heritage passed down from prior generations. There is not a more important or sacred roll within the legal industry than that of the Fiduciary Duty which Craig McCullough and Kirton McConkie were paid (a still undisclosed amount of compensation) to protect this couple with Joyce dying of lung cancer and Max showing the signs of dementia. The implication that a couple such as Max and Joyce cannot have faith in the integrity and honesty of the Sr Management of Kirton McConkie and Their "Prophet to Be" is inconceivable. Defendant Kirton McConkie does not have in its possession one legal document which allowed them to empower Lisa and Bryan Stephens with the role of "Sole Trustee" and yet continues to empower Lisa Stephens as if she and her husband Bryan Stephens had all power to do as they please within the Estates of The Eliason Couple. They sit in felony waters with no defense as to its complete dismissal of loyalty and Fiduciary Duties associated with the complete loss of over $100M which still should be in the A/B Trusts and were set up as part of the Estate Plan of Max and Joyce Eliason. Kirton McConkie refuses to respond to the whereabouts of one penny of said estates not to mention one disclosure as to who has received and benefitted from the distributions which in and of itself should be considered an obstruction of justice. The sheer fact that KMC Law openly represents two of the three siblings and their spouses

13

but not the client himself nor the beneficiary which Joyce S Eliason demanded that KMC L:aw protect demonstrates the belief that the Law Firm is not obligated to adhere to the Laws of Kirton McConkie is knowingly in possession of a letter from Joyce S Eliason stating that Bryan Stephens not be allowed to be associated with any aspect of the Estate Plan and yet he is in full control of all assets which was accomplished through the empowerment of KMC Law and Craig McCullough.  The documented proof attached herein will illustrate that Kirton McConkie under the direction of Dallin H Oaks feels and acts in disregard for the laws of both God and Man and the Corruption described herein is so malicious that it shall set a new standard of "Corruption in Estate Planning".  Upon realization of the fact that Lisa and Bryan Stephens were being represented by Kirton McConkie in complete Breach of its Fiduciary Responsibility to Max and Joyce Eliason; the Sr. Management team turned and assaulted both Max D Eliason and his only beneficiary who had not betrayed his and his wife's wishes and trust.  Kirton McConkie is knowingly aiding and abetting the breach of said fiduciary duty not to mention the known felony actions of Craig McCullough which Plaintiff Brett Eliason informed Sr Management and President Dallin H Oaks over six months ago with all pleas to "choose the right" being dismissed without response.

10. Defendant Lee Wright, President of Kirton McConkie PC.  Mr. Wright is being added due to the many correspondences between Plaintiff Brett Eliason who demanded that Kirton McConkie cease representing Lisa Stephens and pled for compassion and respect for the desecrated estates of Max and Joyce Eliason.  Plaintiff pled to not force him into another litigation just following the death of his mother since he had been hospitalized several times during a previous litigation and the intense stress associated

14

therewith.  Mr. Wright stated to Plaintiff Brett Eliason that he "still did not know if Max was a client or not, but that the allegations against his partner were very serious and he was standing by Craig McCullough instead of the Customer to whom KMC Law owed a Fiduciary Duty.

11. Defendant Cameron Hancock, Vice President of Kirton McConkie PC.  Plaintiff Brett Eliason knew Mr. Hancock from a prior litigation wherein Mr. Hancock worked for Ray Quinny Nebekar.  Plaintiff tried to engage him to represent him in a Law Suit against his business partners (Defendants Robert Bair, Pauline Bair, Jon Bair, Zach Bair) who turned out to be supported by Bryan and Lisa Stephens as part of the emotional and financial attacks on Plaintiff's well-being.  Prior to the litigation in early 2019; Tom Mecham told Plaintiff of KMC Law that Mr. Hancock could not represent him due to the exposed "Conflict of Interest" with both his sister and his business partners who had joined against Plaintiff.  Plaintiff's pleas of assisting in rectifying the issue went unanswered.

12. Defendant Tom Mecham is a Board Member and Managing Partner of Kirton McConkie PC and was the Sr Manager who disclosed to Plaintiff that his Father's Estate was not represented by KMC Law who had chosen to represent Bryan and Lisa Stephens and Mark and Laurie Eliason leaving Max D Eliason and Brett L Eliason with no representation and no access to any funds to secure Legal Counsel for themselves.  Mr. Mecham rebuked Plaintiff for "complaining about Craig McCullough and to quit contacting members of The Board of Directors for help.  He continued to inform Plaintiff to engage outside legal counsel to protect his and his father's rights knowing that all access to millions in business and Trust accounts had been severed to both Max

15

Eliason and Brett Eliason leaving them as the only two not able to use the Estates of Max and Joyce Eliason to cover the only legal costs that have been incurred to protect the Estates of Max and Joyce Eliason.

13. Defendant Ken Olsen, Senior Manager of Kirton McConkie, PC who directs the In-House Legal Counsel. Plaintiff was referred to Mr. Olsen following his demands for accounting of compensation and all documentation relating to the Estate Plans on behalf of Max D Eliason. Plaintiff was told that his father and himself were considered adversarial and to not return to their LDS Dedicated Offices. He is but one more Sr Manager who is being alleged to collude in aiding and abetting a known felon and the breach of fiduciary duty.

14. Defendant Chris Hill, Manager of Litigation of KMC Law. Plaintiff Brett Eliason reached out to Mr. Hill via an injunction for immediate relief in order to save his Business My 3-D Me in Trolley Square and expected the Attorneys to respond favorably since they had admitted guilt of breaching their duties to the Eliason Family just days before. Rather than assisting Brett Eliason; Mr. Hill responded under the explanation that paraphrased him as his greed being the basis for the urgent injunction needed to avoid losing his business. When asked via email as to what defenses he thought to have in a court setting and responded on the basis that technicalities and other would allow the Law Firm to prevail over their own customer Max D Eliason.

15. Defendant Greg Moesinger; Litigation for Kirton McConkie PC. Plaintiff directed pleas for respecting the dire situation of both him and his father and was ignored by Defendant and has been contributory in several Court appearances to have all matters dismissed for technicality issues despite the clear knowledge of the ongoing suffering which the

16

Plaintiff is experiencing due to the direct and intentional Breach of Fiduciary Duty. Both Mr. Moesinger and Hill have ruthlessly allowed Plaintiff to attempt to bring the matter of this embezzlement to justice and have been key participants in "obstructing justice". He is a key participant in this intentional attack on the customer he should represent.

16. Defendant Craig McCullough is an attorney practicing in Salt Lake County who is a partner/attorney with Defendant Kirton McConkie. Upon information and belief, at all times related to the allegations herein, Craig McCullough was acting as an agent and/or employee of Kirton McConkie and within the course and scope of employment and authority for Kirton McConkie. Craig McCullough and Kirton McConkie also acted as agents of the other defendants. Defendant McCullough performed all Estate Planning Services for Max Eliason and Joyce Eliason; husband and wife. This work was also performed for the intended beneficiaries Lisa Stephens, Mark Eliason and Plaintiff Brett Eliason. It is also believed that Defendant Kirton McConkie and Craig McCullough performed legal work for the two companies where Plaintiff is an owner and has permitted fraudulent transfers of oil and gas mineral interests in Eliason Eight, LLC and Eliason Enterprises, LLC. Mr. McCullough informed Plaintiff Brett L Eliason in February of 2019 that he represented Lisa Stephens as the "Sole Trustee" of his mother Joyce S Eliason's Trust which has since been concluded as being impossible since Max D Eliason is the rightful Trustee and Settlor of the Joyce S Eliason Trust dated October 28th, 2015. All evidence shows that Mr. McCullough and Bryan Stephens acted in "Fraudulent Misrepresentation" in order to secure the Estate Planning Contract with Max and Joyce Eliason.

17. Defendant Lisa Stephens is the sister of Plaintiff who resides in Salt Lake County. She was to be an equal beneficiary and equal trustee under all applicable trusts described above. She was knowingly named as the "Sole Trustee" via fraudulent documents and

17

has abused her power of Trustee to commit intentionally malicious financial and emotional attacks which were all enabled by Kirton McConkie and Craig McCullough. She has completely dismissed every single duty as required by law which she owed to Plaintiff as the "Trustee" which title she had no right to "buy" from Craig McCullough in the first place. She has betrayed the love and trust placed in her as a sister and daughter and has instead been a key participant in the complete decimation of her parent's estates and the financial and emotional health of her younger brother. She had no more legal right to have control of the Eliason Estates than Plaintiff but claimed such empowerment via the disclosure by Craig McCullough that she was the appointed "Sole Trustee" upon the death of her mother. She continues to attack Plaintiff's 3-D Technology business and is making fraudulent claims as to her mother's intentions so as to cause its demise. She has been in violation of the laws of "Self-Serving" even before her mother died and fraudulently naming her as Sole Trustee. Her knowing participation in fraudulently administering an illegal dose of morphine to her mother on April 17th, 2018 in order to acquire an illegal signature places her in the control and execution of the "conspiracy to commit murder" or bodily harm as this action clearly put Joyce Eliason into a week-long coma with Defendant Lisa Stephens telling the nurses at the hospital that Joyce had a DNR in place which Plaintiff Brett Eliason was able to inform otherwise and have his mother revived.

18. Defendant Bryan Stephens is the brother-in-law of Plaintiff and is married to Plaintiff's sister Lisa Stephens and also resides in Salt Lake County. Defendant Bryan Stephens is also a CPA who has performed all tax reporting for the Eliason's which he was allowed to do as a benefit for being a son-in-law. He has also performed accounting work for

18

The Estates of Joyce and Max Eliason, the Joyce S. Eliason Trust, The Max Eliason Trust, the Eliason 2015 Trust, the Eliason 2016 Trust, Eliason Eight, LLC and Eliason Enterprises, LLC.  Mr. Stephens recommended Craig McCullough and Kirton and McConkie to Joyce and Max Eliason on June 20th, 2013.  It has been determined that this introduction was made under Fraudulent Misrepresentation with both Bryan Stephens and Craig McCullough deceiving Max and Joyce into believing Craig was an advisor to Larry Stillman; Joyce Eliason's younger brother.  This in and of itself represents fraud and implies that the relationship was consummated based on intentional deceit and that a rescission of all documents is the appropriate remedy. Bryan Stephens has told Plaintiff that he is a "needy and greedy piece of shit sibling who needs to go get a job" following Plaintiff's demands for accounting and the location of all of the unaccounted-for assets.  It is believed that the Defendant's great jealousy and resentment towards Plaintiff which had been growing for years as Defendant perceived his brother-in-law to have had an easy life.  Knowing he was not a designated owner of any of the Eliason Estates in question; Defendant Bryan Stephens utilized the assets and income stream from his younger brother in law to "bribe and buy" the associated partners including Craig McCullough from Kirton McConkie Law Offices.

19. Defendant Mark Eliason is the brother of Plaintiff Brett Eliason and resides is Salt Lake County.  Defendant Mark Eliason was to be an equal beneficiary and equal trustee under all applicable trusts.  He has also been fraudulently named as joint guardian of Max Eliason along with his sister Lisa Stephens which was done via deceptive allegations of financial and emotional abuse by Plaintiff towards Max D Eliason.  This was done for no other reason than to disguise their own crimes of raping and pillaging

19

the Estates of his parents.    He is a manager of Eliason Eight, LLC and Eliason Enterprises, LLC and was knowingly included within an illegal representation by Craig McCullough within this alleged conspiracy of multiple fraudulent actions leaving his wife Laurie being Trustee.

20. Defendant Laurie Eliason is the wife of Mark Eliason and the sister-in-law of Plaintiff Brett L Eliason.  She has been improperly named as a trustee of the 2015 and 2016 Eliason Trust and Member of Eliason Eight, LLC and Eliason Enterprises, LLC; thereby intentionally depriving Brett L Eliason of his legal ownership and membership of all entities.  She was recently named member/manager of Eliason Eight, LLC illegally by Craig McCullough who allowed such an approval with the signatures of Mark Eliason and Lisa Stephens which is in complete contradiction to the documentation on file with Kirton McConkie.

21. Defendant, Eliason Eight, LLC is a limited liability corporation which owns and leases oil and mineral rights to various oil producers and collects oil revenues from the producing wells.  Plaintiff was a member/manager and has been improperly removed by various Defendants in order to deny him the right to have accounting and forensic audits performed on the whereabouts of the tens of millions of dollars of missing oil properties which have been illegally transferred out of the LLC. Defendants illegally transferred Brett Eliason's rightful 33% ownership of his family owned entity which he had paid for and put it in the name of Laurie Eliason; Plaintiff's Sister-In-Law (this one action was done on May 20th, 2019 and literally robbed plaintiff of over $25M of equity in a company which could not be removed by a "Trust Protector" since the company and its assets should never have been included in a Trust.  Plaintiff has literally been

disowned by the Defendants despite the fact that not one legal document allows anyone to do such a heinous action which began the day this "Estate Plan" was put into place on June 20th, 2013.  He has not only been disowned via a six plus year embezzlement plot; but his rightful ownership of all personal assets including his exotic cars and businesses have been fraudulently encumbered via "notes" due to his mother and father and a conspiracy of fraudsters involved with his intentional demise.  All of this intentional targeting accomplished by the son-in-law which Joyce Eliason demanded was never to touch hers or her husband's estates.  And all of this made possible by a Sr. Partner of Kirton McConkie Law Offices named Craig McCullough who still works there despite every member of the Board of Directors and Dallin H Oaks receiving pleas for compassion.

22. Defendant Eliason Enterprises, LLC is a limited liability corporation which owns several million dollars in rental properties and other real estate investments.  Plaintiff was also a member and has been improperly removed as a member/manager with his ownership and position in this real estate holding company illegally assigned to his sister-in-law and Defendant Laurie Eliason.

23. Defendant, The Eliason 2015 Family Trust was set up by Bryan Stephens and Craig McCullough with the stated intention of using it as the instrument whereby the three beneficiaries; Mark Eliason, Lisa Stephens, and Brett Eliason would be able to purchase the remaining 59% interest in both Eliason Eight, LLC and Eliason Enterprises, LLC from Max and Joyce Eliason as part of the Estate Planning.  The Plaintiff was told in 2016 that this entity was closed and that all proceeds were transferred to the Eliason 2016 Trust.  It was discovered in May of 2019 that the 2015 Eliason Family Trust not

only still existed; but it held the assets and income stream which legally belonged to Eliason Eight, LLC and that millions of dollars of assets were missing and all income and distributions had been concealed from Plaintiff Brett L Eliason despite all documents showing him as an equal beneficiary and Trustee. Plaintiff demanded accountability from Kirton McConkie along with his rightful distributions on May 21st, 2019 as per the documentation only to have Mr. Craig McCullough backdate a "removal of Trustee" document to read May 20th, 2019 and Kirton McConkie relies on that fraudulent removal to justify their refusal to allow Zions Fiduciary Services to take over this responsibility and commence a Constructive Trust to begin a claw back and locate the recipients of funds which have been distributed illegally. It has been discovered that the nieces and nephews of Plaintiff own oil properties via this entity and **that Mr. Craig McCullough has an approval to distribute income and assets to the "Charitable Trusts" of his choosing while having the ability to suddenly dismiss Plaintiff's rights as a beneficiary/trustee.** There is no apparent reason for this Trust to be in existence other than to act as a vehicle of fraud to deprive Plaintiff of his ownership in Eliason Eight, LLC oil properties.

24. Defendant, The Eliason 2016 Trust was initiated with the same goal of the Eliason 2015 Trust and all payments were intended to go to pay back the loan due to Max and Joyce Eliason. Over $5M has been drained out of Eliason Eight, LLC along with tens of millions of oil properties which now holds more assets illegally than Eliason Eight, LLC itself. Just as was with the Eliason 2015 Trust; Plaintiff was never informed by Kirton McConkie nor Craig McCullough that he was a rightful Trustee/Beneficiary and was also immediately removed by "Trust Protector" Craig McCullough. Brett Eliason pled with

Mr. Lee Wright and The Board of Directors of KMC Law to prosecute Craig McCullough for felony bribery and various other corruption related felonies but all requests were met with additional crimes. It should be noted that in 2018 alone, Bryan Stephens and Craig McCullough knowingly and illegally transferred $722K from Eliason Eight, LLC to the Eliason 2016 Trust in order to pay via wire transfer to the IRS (two separate wires; both meeting the definition of Felony Wire Fraud) the taxes due on illegal and unreported income that was generated via illegally removed oil properties and which has distributed millions of dollars to unknow individuals; all of which are in complete defiance of all laws. Defendants refuse to provide any form of transparency despite their legal responsibility to do so. Plaintiff was illegally removed as Trustee and his position given to his sister-in-law and Defendant Laurie Eliason which is once again in complete violation of the Trust Documents. As an accentuation of the malicious intentions of the Defendants; a specific clause has been added indicating that in the event of a divorce decree being issued between the Plaintiff and his Spouse; that the existing Trustees could replace Plaintiff according to their wishes. So as to follow said Trust instructions, Defendants have indicated via an unlawfully obtained document which has yet to be disclosed; Plaintiff was reported to the Unified Police Department that he was "clinically insane" so as to provide the reason for which he is not included as Trustee and as an additional reason to prohibit his visitation rights. According to the 2016 Family Trust; in the event Plaintiff is "clinically insane" Plaintiff's spouse Veronique Eliason is to be the duly appointed Trustee unless a formal divorce decree has been created. Attached as an exhibit is a divorce decree which has been fraudulently created by Defendants with debts listed as owing to Joyce S Eliason and encumbering Plaintiff's Ferrari and various

23

other exotic vehicles which Bryan Stephens had resented over the years. The divorce decree was created via an obvious "Intrusion of Privacy" wherein one of Plaintiff's employees who was staying in Plaintiff's house temporarily accessed personal files and created said Divorce Decree with no other reason in mind other than to satisfy the requirements for dismissing Plaintiff Brett Eliason's rights as under this Trust. The Decree also states that Plaintiff is not entitled to the house his mother bought for him prior to her death in order to help him find freedom.

25. Defendant Robert Bair is one of the four business partners of Plaintiff Brett Eliason who as head of his family accepted the generous offer to join in a new 3-D technology company named My 3-D ME which Plaintiff offered in kindness and as a neighbor. After Plaintiff had worked together with Defendant and his other family members for over two years; the Defendant Robert Bair and his family "quit" as partners and sabotaged the opening of the business which Joyce Eliason had funded with her son Brett Eliason in over $750K of capital along with a 5 year executed personal guarantee from both Brett and Joyce Eliason who was abandoned as the Bair Family had decided to be in alliance with Bryan and :Lisa Stephens for an undisclosed period of time but who's intentions were consistent with the conspiracy to cause the complete demise of plaintiff in favor of the Stephens Family. After sabotaging the 3-D entity and retail outlet in Trolley Square, The Bair Family issued a demand letter for a separation so they could compete against the entity they had not put any funds in from the beginning. It is believed that Robert Bair has accepted bribes or promises of future compensation in order to justify such illegal deceit and the intentional sabotage of his own company.

24

26. Defendant Pauline Bair is the spouse of Robert Bair and neighbor to Plaintiff Brett Eliason in North Salt Lake Utah. Pauline also intentionally defrauded Joyce S Eliason and her son by requesting funding from the Joyce S Eliason Estate and sat and watched Plaintiff Brett Eliason pour in over $750K into the business while her family put in zero. She stated to Plaintiff just before her family was to "quit" as partners that "no good deed goes unpunished does it Brett". Defendants from the Bair family all befriended Joyce Eliason through her son and where their alliance with the Stephens apparently occurred wherein the group backed by Craig McCullough of Kirton McConkie colluded in their attacks on in September of 2018. It is believed that Pauline Bair has accepted bribes or promises of future compensation in order to justify such illegal deceit and the intentional sabotage of his own company.

27. Defendant Jon Bair is the oldest son of Robert and Pauline Bair and who's involvement as the engineer responsible for assisting in the software and technology of the new 3-D business was vital to the operation and his comment to Plaintiff in September of 2018 was that he never was made a member of the Bair Elite LLC which owned the 50% of the company and therefore had no fiduciary duty to uphold when he deliberately stole hardware and software which sabotaged the business and then used extortion on Plaintiff demanding $75K or he would not allow the store to open. He refused to comply with all legal demand letters and Plaintiff found all of his technology and 3-D Statues he had printed and paid for along with his Website which Defendant Jon Bair had stolen under the new name of "Soul Capture" which immediately was taken down following the questioning of Lisa and Bryan Stephens as to their knowledge and underlying meaning of a company which clearly described what they were hoping to accomplish under the

25

empowerment of Kirton McConkie's 150 LDS backed attorneys. It is believed that Jon Bair has accepted bribes or promises of future compensation in order to justify such illegal deceit and the intentional sabotage of his own company.

28. Defendant Zack Bair is the youngest son of this family and has been particularly responsible for heinous activities against Plaintiff who was introduced by Pauline Bair as a mother who requested that Plaintiff spend time with her 20-year-old son in hopes of helping him with anxiety and other issues. Plaintiff allowed Zach access to his exotic cars and included him as "a son" with full access to his own residence and all financial documents within the businesses of Plaintiff. He was paid extraordinarily well for doing little and yet was caught and confessed to the theft of thousands of dollars in rare pens and autographs from Plaintiff who was too emotionally drained from caring for his dying mother to pursue within the justice system at the time. Zach was in contact with Joyce Eliason regularly and knowingly benefitted from her Estate and Trust. It is believed that Zac Bair has accepted bribes or promises of future compensation in order to justify such illegal deceit and the intentional sabotage of his own company.

29. Defendant Kent Snider, is a supposed "third party" attorney who was presented to Judge Faust as being an unbiased Lawyer who represented the best interests of Max D Eliason. He has instead done everything in his power to not allow Plaintiff to visit his own father despite being required to do so from Judge Faust. He has been involved with filing an intentionally fraudulent complaint with the State of Utah Division of Aging Services with nonsensical allegations of financial emotional abuse of Plaintiff towards his father despite him being the only one identifiable that has not breached his fiduciary duty to Max and Joyce Eliason. Mr. Snider appeared in the Court of Judge Skanchy

26

and stated that "Max Eliason hates the Plaintiff's guts and never wants to see him again."?    Plaintiff has provided Mr. Snider with all the proof of the complete embezzlement of the estates of Max and Joyce Eliason yet he inexplicably continues to even represent Lisa Stephens in an action against the 3-D Business which Bryan and Lisa Stephens have targeted to take over and destroy Plaintiff's primary source of income outside of family entities which they have also succeeded in depriving the Plaintiff of over the past several years.    Despite the fact that no legal documentation is in place; Mr. Snider denied Plaintiff Brett L Eliason the right to visit his father on his 85th birthday stating Max Eliason was still upset from the last time Plaintiff visited him on April 17th, 2019.    Max D Eliason suffers from short term memory loss and cannot remember who has visited him during the last month.    These intentional actions by Defendants constitute abuse and exploitation of Max D Eliason to whom they were to protect.    Defendants are all aware that Kent Snider is protecting their own interests of not being found guilty rather that protect the great man Max D Eliason "ME" who was misled in believing his could trust his own "God Frauder".

30. The numerous defendants listed herein are the partners of Kirton McConkie who are held vicarious as being responsible as per Utah Law.    Plaintiff has contacted the Board of Directors via email from whom her received a reply to "quit bothering them about Craig McCullough's actions".    Wherein the allegations are considered criminal, all Partners are liable on a Joint and Several Basis whether they were materially involved (such as the entire Board of Directors) or if they work for The Law Offices of Kirton McConkie who is responsible for "checks and balances" and the proper filtering of all new hires:

27

DAX D ANDERSON, TIMOTHY B ANDERSON, ROD N ANDREASON, BRENT A ANDREWSEN RANDY T AUSTIN, MATTHEW C BALLARD, LORIN C BARKER, JASON W BEUTLER, KENNETH W BIRRELL, CHRISTOPHER E BRAMHALL, JOSEPH R BRUBAKER, BRIAN W BURNETT, JAMES T BURTON, TYLER BUSWELL, RYAN C CADWALLADER, THOMAS K CHECKETTS, TONY CHRISTENSEN, CHRISTIAN S COLLINS, DAVID R CONKLIN, MICHAEL W DURHAM, ALEXANDER SUSHKU, BRETT D EKINS, JAMES E ELLSWORTH, DAVID S EVANS, WALLACE O FELSTED, RYAN B FRAZIER, GEOFF GERMANE, DAVID L GLAZIER, CHAD A GRANGE, R SHAWN GUNNERSON, BEN HATHAWAY, READ R HELLEWELL, KENNETH E HORTON, LOYAL C HULME, DALE E HULSE, ROBERT C HYDE, SCOTT E ISAACSON, LARRY S JENKINS, RANDY K JOHNSON, MICHAEL D JOHNSTON, ADAM M KAAS, BRYANT J KELLER, KEVIN L KIMBALL, JOHN B LINDSAY, PARK LLOYD, DANIEL S MCCONKIE, OSCAR W MCCONKIE III, ANTONIO A MEJIA, CRAIG METCALF, RUSSELL S MITCHELL, JACOB T MUKLEWICS, MERRILL F NELSON, STERLING S OLANDER, JOSEPH V OSMOND, ALEXANDER N PEARSON, DANIEL H PURDIE, JESSICA RANCIE, LANCE D RICH, MATTHEW K RICHARDS, SHAWN T RICHARDS, ERIC B ROBINSON, JOSHUA RUPP, PETER C SCHOFIELD, JUSTIN W STARR, SWEN R SWENSON, DAVID B TINGEY, BRIAN D TUCKER, JON E WADDOUPS, ADAM WAHLQUIST, DAVID M WAHLQUIST, MICHAEL C WALCH, THOMAS D WALK, ROBERT D WALKER, STEVEN L WHITEHEAD, BRINTON M WILKINS, DAVID S WILSON, R GARY WINGER, EVAN R WITT, JOEL D WRIGHT, ROBBIE G YATES, ELAINE C YOUNG

31. Defendant RENCHER ANJEWIERDEN Law Offices is the former Law Firm for the Plaintiff who accepted service to represent the interests of Brett L Eliason and his father Max D Eliason within these legal proceedings. The Defendant has allegedly aided and abetted in the Obstruction of Justice with other Defendants.

32. Defendant Jaryl L Rencher is one of the managing partners of Rencher Anjewierden who was referred to Plaintiff through a joint acquaintance. Mr. Rencher clearly

28

understood the grave nature of the allegations and reviewed all of the associated files. He accepted service with an hourly fee in addition to a contingency amount of $1M/month for his service. He had reviewed the Plaintiff's prior submission to Judge Mow and was fully aware that Plaintiff needed to respond to the 30-day requirement to resubmit an amended complaint which was due on September 10th, 2019 as per the request of the Court and Judge Mow. Defendant and his associate waited until the day the Amendment was required in Court and completely distorted and modified the submission despite the strong response of contradiction from Plaintiff. Among the modifications was the removal of Max D Eliason as Plaintiff despite Judge Faust agreeing to allow this for purposes of the proceedings. This action has been a critical concern of Kirton McConkie because they realize that it is impossible for Max D Eliason as Settlor and Co-Trustee to be involved as Plaintiff since they had stood behind Lisa Stephens as "Sole Trustee" of the same Joyce S Eliason Trust dated October 28th, 2015. Plaintiff also alleges that Defendant Jaryl L Rencher knowingly removed all criminal allegations including bribery and anything else considered criminal and also removed the key Defendants including the LDS Church, Dallin H Oaks, and the Senior Management team of KMC Law after explaining to plaintiff that all Partners within the Law Firm should be added as Defendants on a vicarious level. Plaintiff's serious suspicions that his attorneys were not acting in his best interest but had instead created a secret relationship with Kirton McConkie Law Offices were confirmed when Plaintiff discovered from an online resume of Jaryl L Rencher that he was in fact a former employee of Kirton McConkie Law Offices and that he was having undisclosed conversations with The President of KMC Law Lee Wright (Defendant) in an apparent

29

attempt to force Plaintiff into an out of court settlement which all Defendants know is not an option for Plaintiff and the desecrated estates of his parents through alleged felony corruption activities. Mr. Rencher was obligated by law to disclose the potential conflict of interest between him and Kirton McConkie and allow Plaintiff the right to decide for himself whether or not the Law Firm could represent his best interests and not actually be an "undercover attorney" for Kirton McConkie.

33. Defendant Mike Collins is the attorney who was assigned to work under Jaryl Rencher on this complaint. Mr. Collins intentionally withheld the obvious and immediate actions which should have been taken including the removal of Lisa Stephens as "Trustee" and Craig McCullough as "Trust Protector" both of which were fraudulent and this fact was easily identifiable. Mike was also instructed to remove the obviously "Kirton McConkie" designated third party attorney Kent Snider who is the attorney hired by the Defendants to "protect" Max D Eliason from being visited by his own son and Plaintiff, Brett L Eliason. During the three months that Mr. Collins was working on behalf of Plaintiff; it became apparent that each of his actions being undertaken were to undermine the complaint and the allegations being filed against Kirton McConkie Law Offices and he also expressed the eventuality of a settlement on the missing oil properties without performing an audit. He clearly has been under the instruction of Jaryl Rencher and KMC Law.

34. Defendants D Gregory Anjewierden and Benjamin K Lusty are considered Defendants on a vicarious basis as Managing Partners of the Law Firm of Rencher Anjewierden.

35. Defendant R David Bishop, Attorney at Law is being named due to his collusion and participation in issuing fraudulent "cease and desist" letters to Plaintiff and representing

30

Kirton McConkie's wishes at the hearings wherein Max D Eliason was deemed "incompetent" in order to conceal their crimes. Plaintiff alleges that Mr. Bishop had no substantiated proof to issue said letters which Defendants reported to the Unified Police Department as proof of an existing "Restraining Order" against Plaintiff which was never legally obtained despite the entire extended Eliason Family being told that Plaintiff was emotionally and financially abusing his father which was also reported to Utah Department of Aging Services. Ironically; this group is charging Plaintiff shamelessly knowing that they are indeed the perpetrators of the very thing which they are accusing Plaintiff of doing.

36. Defendants Amy Stephens, Jason Stephens, Lindsay Stephens, Whitney Stephens Bagley, Austin Stephens, Spencer Stephens, Derek Eliason, Dylan Eliason, and Angela Eliason are the Plaintiff's nieces and nephews who are all knowingly benefitting from the Estates of Max and Joyce Eliason and are relying on the Second Amendment to the Joyce S Eliason Trust dated April 17th, 2018 to justify their ability to access the illegally stolen funds. This Amendment provided for the creation of the Grandchildren's Trust and Dynasty Trust along with the associated illegal distribution of the Settlor's TD Ameritrade IRA account #188-191951 in addition to the illegal allocation of the note dated December 22nd, 2016 and in the amount of $4,168,123 which was due to the Eliason 2016 Trust (irrevocable). This Amendment provided for the ability of the Defendants to buy homes with 20% free down payments, procure an unlimited and non-recourse business loans, utilize the amounts for any and all education including private schools, and any and all medical costs up to $500,000 also permissible. It has also been determined that each of these Defendants own interest

31

in Eliason Eight, LLC mineral rights through the Eliason 2015 Trust and that Craig McCullough would have the authority to create any charitable trusts or appoint other beneficiaries of his choosing which is also considered fraudulent. Plaintiff's children Kylie and Brittnie Eliason have been omitted from this secret distribution and are considered disinherited along with their father via the illegal and criminal actions of Defendants to embezzle and deprive Plaintiff of six and a half years of his life along with every asset he owned or should have owned per all valid Trust Documents which have not been fraudulently altered.

37. Defendant Julie Harman is a former Ms. America and business associate of Plaintiff Brett L Eliason who was one of the initial partners in the 3-D Technology based entity formed in 2016 under the initial name of USCAN 360. Defendant is believed to have been knowingly utilized as a method of destroying the character and perceived integrity of Plaintiff to family members and including intentionally deceitful statements to Joyce S Eliason just prior to her death. Defendant was in contact with Lisa Stephens as shall be proven via copies of texts and Joyce S Eliason had been told extensive lies concerning a non-existent intimate relationship with Defendant just prior to her death. Defendant knowingly accepted generous assistance from Plaintiff and from the Estate of Joyce S Eliason with the understanding that the proceeds were for her to be successful in her business and for payment for her introduction to the 3-D Technology which Plaintiff and Joyce Eliason had funded. She sent an aggressive text to Plaintiff for no other reason than to inflict emotional abuse on Plaintiff within the same time frame that several of the Defendants all attacked with simultaneous emotional and financial attacks. The motivation of Defendant Lisa Stephens for utilizing Julie Harman as a

32

weapon was to attempt to persuade a dying Joyce Eliason to sign the Trust Documents leaving the complete power with her as Sole Trustee (based on the fictitious lies that her son had suddenly started dating "fast" women). Joyce S Eliason declined to take action and remained the loving mother to Brett thereby forcing the perpetrators to use morphine instead. Defendant intentionally and illegally drained Plaintiff's credit cards in December of 2017 which was fraudulent and qualifies for a felony allegation in and of itself.

38. Defendant David Werner is being included due to his actions relating to the intentional sabotage of the Plaintiff's company called 'My 3-D Me' along with several other associate Defendants. He interacted on occasion with Lisa Stephens and met the Defendant at the office of Bob Bair and the other members of the Bair family. Plaintiff paid Defendant a $7,500 consulting fee in order to assist in restoring the needed technology to the retail store in Trolley Square and his knowledge of said technology was sufficient to restore the operation to functionality but he abandoned the job without finishing the required adjustments. He has been fully aware of the deceitful actions of the Defendants and that the Estates of Max and Joyce Eliason were being pillaged. There are other miscellaneous circumstances which shall be provided at trial and the Defendant can be dismissed upon proof he was not working in conjunction with the other Defendants.

39. Defendant Zant Doty is being included in the complaint in association with the 3-D Technology based business in addition to his participation in having Plaintiff claimed "insane" for purposes of the 2016 Eliason Family Trust. Zant Doty is an admitted client of Lisa and Bryan Stephens (as his CPA) and began working at the Plaintiff's retail store

following the sabotage and associated theft by the Bair Family members who were considered partners. Mr. Doty and his girlfriend Kindra Kauer requested the Mr. Doty be allowed to stay at Plaintiff's personal residence on 43 S Fairway Drive in the fall of 2018 since he was being forced to leave the home of his cousin at Jeremy Ranch. Whereas the proximity to Trolley Square was convenient and Plaintiff lived alone in a large home; he agreed to allow Defendant to bring his dog and move into the former bedroom of Plaintiff's oldest daughter Kylie M Eliason who had recently moved to California. Defendant is a very skilled Engineer who worked with Defendant David Werner to restore the 3-D Business back to working order as it was prior to the Bairs criminal actions. Rather than complete the task, Defendant dismissed the responsibility and the opening of the store was but on hold as the Plaintiff was locked out of his store which he and his mother had personally guaranteed for five years and for which Joyce Eliason fought desperately to have opened and visited prior to her death. Plaintiff Brett L Eliason realized that the Defendant was intentionally doing activities which harmed his cause in the complaint herein as if there was an influence from Kirton McConkie associated with his motives. This included the original filing of the complaint in this matter wherein Defendant Zant Doty insisted on utilizing a Federal Form which Plaintiff attempted to replace the next day but was unsuccessful. Defendant Kirton McConkie appeared in court implying that Plaintiff obviously was not competent enough to file the complaint on the correct form; and Plaintiff became more suspicious when he realized that Defendant Zant Doty was in clear communication with Bryan and Lisa Stephens. Plaintiff confronted Mr. Doty concerning his motives and pointed out that within the body of the Eliason 2016 Trust was a section wherein the Trustees at their discretion may

34

deem someone incapacitated by prescription drugs and that if this should be the case; that the Trustees may provide an in-house care taker to show the beneficiary they really "loved" him. Defendant Doty accompanied Plaintiff to the preliminary Court hearings wherein the entire group of Defendants were mocking Plaintiff with each word as if his insinuations were insane and the accompanying "caretaker" proved this point. Plaintiff's suspicions were so great that he confronted Mr. Doty and requested to be provided with his phone records to which Defendant Doty refused but did offer to provide a copy of his Temple Recommend along with a Notarized signature that he was being truthful. Plaintiff eventually confronted Mr. Doty (who is 6'5" and is always carrying weapons) armed with a 9MM rifle and forced him to leave his house. Plaintiff had been in fear of his life for weeks prior to that time as the undeniable evidence pointed to this "house guest" being associated with the embezzlement and the need for KMC Law to cover it up. Plaintiff blocked his bedroom door with his desk and slept with three loaded guns on his bed wondering if Zant Doty would be paid to "take him out." Defendant stated to Plaintiff that although he may have been the actor found within the Eliason 2016 Trust; Plaintiff would easily win any contestation of said "caretaker" position described with the Eliason 2016 Trust and to not worry about him living in his house. He did not deny such allegations and left without providing the requested phone records except three correspondences with Bryan Stephens in early 2018 (which in and of itself supports the allegations herein). Mr. Doty was suspiciously motivated to have Plaintiff's divorce finalized which had been initiated by Plaintiff's spouse in 2016. Plaintiff stated to Mr. Doty that he could not finalize this proceeding since the 2016 Trust documents state that the Trustee Succession provided for Plaintiff's wife Veronique to become Trustee

35

in the event Plaintiff was somehow being considered 'clinically insane'. Upon the departure of Defendant Zant Doty from Plaintiff's residence, it was discovered among the documents that he had in his possession a fraudulently created "Divorce Decree" dated April of 2016 which is impossible given Plaintiff's engagement of Kirton McConkie to represent his proceedings in November of 2016. Ironically enough, this Divorce Decree included a schedule of debts which could have only been created by a greedy brother in law who was seeking to create fictitious debts in order to prove to Plaintiff that he owed the estate of Joyce Eliason hundreds of thousands of dollars which was secured by all of his exotic cars which Bryan Stephens sought to acquire. The creation of a fraudulent divorce decree in order to fraudulently not allow Veronique Eliason to represent her own daughters as Trustee are just more acts of mafia style corruption which includes the fraudulent designation of Plaintiff as "insane". This horrific display of ongoing corruption with the intent of depriving Plaintiff of his own birthright is all being supervised by Kirton McConkie Sr Management and pleas of help to Dallin H Oaks being dismissed "without apology" as he states to the parents of suicide victims and associated cover ups of sexually abused members of the Church. This "paid character" in the conspiracy to "capture the soul" of Plaintiff is repulsive.

40. Defendant Kindra Kauer was the girlfriend of Zant Doty and a mutual acquaintance with Defendant Julie Harman who introduced Kindra to Plaintiff. She is also a former Pageant winner who Plaintiff employed to manage the 3-D Entity and to act as his personal assistant. Defendant paid both Defendants Doty and Kauer tens of thousands of dollars and invited them to accompany him and his daughter Kylie Eliason on a Caribbean cruise in December of 2018. While dating Defendant Zant Doty, Kindra

Kauer participated in the complete removal of all personal items from Plaintiff's bedroom drawers and removed items from his house to review without his permission while Plaintiff visited his daughter in California. It is alleged that Kindra Kauer was knowingly involved in this intentional deceit with Mr. Doty.

41. Defendant Park Beutler is a partner of Plaintiff as it pertains to a professional race car located at the former Miller Race Track. Plaintiff has generously advanced tens of thousands of dollars to Defendant in order to avoid the foreclosure of his home while jeopardizing his own financial well-being all in the name of Trust and Friendship. When it became apparent that it was the intention of the Defendants to deprive Plaintiff of every single asset he owned through any form of deceit possible; it became apparent that the generosity which was being abused by Mr. Beutler is allegedly intended to cause intentional financial and emotional damages to Plaintiff and that the Siblings would therefore also own the Corvette which Plaintiff has clearly paid for over the past several years he assisted Mr. Beutler. Defendant Beutler has knowingly been the recipient of tens of thousands of dollars from the Estate of Joyce S Eliason.

42. Defendant Liz Felix is a sports massage therapist and close friend of Defendants Lisa and Amy Stephens. Lisa Stephens introduced Defendant Liz Felix to Plaintiff following the stressful month of sleeping in ICU with Joyce S Eliason who had just had her left lung removed in August of 2013. Plaintiff continued to see Defendant Felix weekly following a serious accident which has compromised the discs in Plaintiff's neck. Whereas the apparent conspiracy to inflict emotional and financial damages to plaintiff have been in place since the introduction to Kirton McConkie Law Offices on June 20th, 2013; it became apparent that Defendant Felix was informing Lisa and Amy Stephens

of any and all actions and emotions which were attacking Plaintiff. She would question Plaintiff weekly as to his anticipated actions to defend himself concerning his retail store which Bryan and Lisa Stephens had targeted for demise. Defendant to be dismissed upon the proof that she was not an acting informant nor that she received any outside compensation from Defendants.

43. John Does I-X, are individuals or entities that may have been involved in the conduct that gives rise to this Complaint but are unknown to the Plaintiff.

## GENERAL BACKGROUND INFORMATION AND ALLEGATIONS

44. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

45. Dallin H Oaks, President of the Quorum of Twelve Apostles of the Church of Jesus Christ of Latter-Day Saints dedicated the Law Offices of Kirton McConkie on April 12th, 2013. There would be no other reason for the Law Offices to be dedicated or to promote them in this manner other than to attract faithful and wealthy couples such as Max and Joyce Eliason into their doors with their Estate Planning needs.

46. The dedication ceremony was done in a "Holy Temple" style ceremony with the attorneys being referred to as "The Lawyers of Jesus Christ Himself" and that the "conscientious attorneys like those of Kirton McConkie" as being vital in the work of the Lord among his children on earth.

47. Max D Eliason and Joyce S Eliason entrusted Craig McCullough and Kirton McConkie Law offices with their sacred estates for Estate Planning purposes on June 20th, 2013 following the diagnosis of Joyce Eliason with lung cancer.

38

48. This created a contractual Fiduciary Duty towards Max and Joyce Eliason who assumed that Kirton McConkie was synonymous with their faith and their belief in the leaders of the LDS Church to which they have been faithful their entire lives.

49. Kirton McConkie and Craig McCullough have an inherent duty of care and loyalty within their lawful obligations included in the requirements of this most important role in the legal industry of Fiduciary Duty with the associated attorney/client privileges.

50. Kirton McConkie and Craig McCullough are required by law to provide full disclosure, never mislead their clients, disclose any and all conflicts of interest, act in good faith, and always put their clients' interest first.

51. Although Kirton McConkie and Craig McCullough did not have a Fiduciary Duty to Plaintiff Brett L Eliason, they are required by law under the category of Duty of Care and Loyalty to Max D Eliason to treat each beneficiary equally without any form of bias towards one over the other.

52. When Joyce S Eliason passed away on May 21st, 2018; Kirton McConkie informed Plaintiff that Lisa Stephens had been named as "Sole Trustee" which was different than the Documents which Plaintiff Brett L Eliason had in his possession.

53. The Joyce S Eliason Trust and the Max D Eliason Trust clearly had delineated the Original Trustee Success Order to allow Mark D Eliason, Lisa E Stephens, and Brett L Eliason with Co-Trustee and Co-Personal Representative designation; both of which were awarded to Lisa Stephens without providing evidence of legality to this day.

54. Tom Mecham disclosed to Plaintiff on February 11th, 2019 that Craig McCullough had an "undisclosed conflict of interest" between Bryan and Lisa Stephens and that Kirton

McConkie represented Lisa Stephens as their client and in her role as Sole Trustee and Personal Representative of Joyce S Eliason and the Joyce S Eliason Trust dated October 28th, 2015.

55. Tom Mecham stated to Plaintiff that he would need to secure outside legal counsel in order to protect his rights as Trustee and Beneficiary since the Law Firm was representing his sister.

56. Mr. Mecham also indicated that for Craig McCullough to legally represent Lisa Stephens, Max D Eliason would have needed to have been deemed "incompetent" through the appropriate legal procedure and through the Third District Court.

57. Plaintiff confirmed with the Third District Court that this had never been done which implies an admission of guilt that Tom Mecham made on behalf of Kirton McConkie concerning the illegality of representing Lisa Stephens and not her father Max D Eliason who was still alive.

58. Plaintiff would soon learn that Kirton McConkie and Craig McCullough represented not only Lisa Stephens; but also, Bryan Stephens, Mark Eliason and his wife Laurie Eliason with no disclosures ever made concerning their obvious conflict of interest.

59. Plaintiff demanded a copy of the governing document which Kirton McConkie was relying on in order to justify Lisa Stephens being named as "Sole Trustee" while her father was still alive.

60. The Document which was provided Plaintiff in February 2019 which KMC Law provided is the Second Amendment to The Joyce S Eliason Trust dated April 17th, 2018.

61. The Evidence will prove that Joyce Eliason did not have the authority to change the name of "The Settlor and Co-Trustee" along with the Original Trustee Succession order

40

which Kirton McConkie and Craig McCullough have fraudulently submitted to Probate Court in June of 2018.

62. This implies that the real governing documents clearly state that all three beneficiaries of Max and Joyce Eliason are Co-Trustee's and Co-Personal Representatives despite KMC Law fraudulently empowering Lisa Stephens and her husband Bryan Stephens to remove all assets from The Max and Joyce Estates.

**EVIDENCE WHICH FALLS UNDER THE RULE OF RES IPSA LOQUITUR MEANING "LET THE EVIDENCE SPEAK FOR ITSELF" AND PLACES THE BURDEN OF PROOF ON THE DEFENDANTS TO EXPLAIN HOW SUCH EVIDENCE COULD EXIST WITHOUT THEIR ASSOCIATED IMPLICATION OF GUILT. AS PER THE RULES THEREWITH, PLAINTIFF STATES THAT KMC LAW HAD COMPLETE CONTROL OF EVENTS.**

63. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

64. Kirton McConkie claimed Lisa Stephens as being the "Sole Trustee" of the Joyce S Eliason Estate dated October 28th, 2015 upon the death of Joyce Eliason on May 21st, 2018.

65. Plaintiff Demands that Defendants explain how it is possible for Lisa Eliason Stephens to be named as Sole Trustee of the Joyce S Eliason Trust while Max D Eliason is showing as Settlor and Co-Trustee.

66. Tom Mecham told Plaintiff on February 11th, 2019 that there was an "undisclosed conflict of interest" between Craig McCullough and Bryan and Lisa Stephens and that in order for them to be able to represent Lisa legally; would be to have Max D Eliason deemed "Incompetent" as per the laws of the State of Utah which had not been done.

41

67. Plaintiff Demands that Kirton McConkie and Tom Mecham explain to the Court how the statements made by Sr Management to Plaintiff in regards to his father's estate are not an admission of "Conflict of Interest" and "Breach of Fiduciary Duty" to both Max and Joyce S Eliason when they stated that "The Estate of Max D Eliason had no representation by KMC Law".

68. Plaintiff was told by Tom Mecham on February 11th, 2019 that the Law Offices of Kirton McConkie and Craig McCullough represented only the interests of Lisa Stephens and that Plaintiff needed to seek outside legal counsel in order to secure his rights as Trustee and Beneficiary of the Max and Joyce Eliason Trusts.

69. Plaintiff would learn that KMC Law and Craig McCullough not only represented Lisa E Stephens, but also Bryan Stephens, Mark Eliason, and Laurie Eliason.

70. Plaintiff Demands that President Lee Wright explain to the Court how Plaintiff's pleas of mercy to him and Dallin H Oaks were dismissed and that the Law Offices of Kirton McConkie could legally represent only two of the three beneficiaries along with their spouses; but not their actual client Max D Eliason and the youngest son of Max and Joyce Eliason whom the LDS Lawyers were paid to protect?

71. Bryan P Stephens and Craig McCullough called a meeting on November 2nd, 2016 without informing Joyce S Eliason or Max D Eliason of their intentions to deprive Plaintiff Brett L Eliason of $2M from Eliason Enterprises, LLC which is the Family owned real estate holding company.

72. Under the Fiduciary Duty responsibilities is the duty of loyalty, full disclosure, good faith, and the duty to treat each beneficiary equal.

42

73. Joyce S Eliason issued a scathing letter to Kirton McConkie on November 7th, 2016 which exposed her anger towards Kirton McConkie and Craig McCullough for not telling her of said fraudulent attack on her youngest son without even showing her a copy of her own balance sheet.

74. Within the attached letter is the demand that Bryan Stephens never be allowed to participate in any planning activities of her or her husband for he has never been considered a Financial Advisor to the Eliason family.

75. Plaintiff demands the Defendant Kirton McConkie and Bryan Stephens explain who in fact prepared all of the estate planning documents and under whose wishes and best-interests were being used. All of which were done without any disclosure to Plaintiff nor were the implications of said documents stated to Max and Joyce Eliason under the requirements of equality to each beneficiary. With the undisclosed conflict of interest; how could there be any legality to any documents? Plaintiff has yet to be given one document which does not reveal intentional fraud as per Utah Law.

76. The letter to Craig McCullough and Kirton McConkie dated November 7th, 2016 was written almost one year after the creation of the Eliason 2015 Trust and one month prior to the Eliason 2016 Trust.

77. Joyce Eliason's comments should be considered to represent her wishes of equality among her children and that any derivation from those demands to Craig McCullough being representative of someone else's wishes other than those of Max and Joyce Eliason.

78. The Eliason 2015 Trust was created in December of 2015 with the purpose being to provide the financial instrument recommended by Craig McCullough and Kirton McConkie to allow the three Eliason Beneficiaries the means to purchase the remaining 58% of Eliason Eight, LLC and Eliason Enterprises, LLC from Max and Joyce Eliason.

79. This was to result in a 33.33% ownership in each entity for Mark Eliason, Lisa Stephens, and Brett Eliason which should still be present today.

80. Defendants have not produced one legal document which has not indicated some form of fraudulent modifications and has yet to show proof that anything but the original 33.33% ownership of all entities should still be in place.

81. Joyce S Eliason demanded on December 8th, 2017 that all respective entities require a mandatory three-beneficiary signature from all three children.

82. These Amendments are arguably the only known documents that Joyce S Eliason required of Kirton McConkie and were requested due to the fraudulent actions taken on November 2nd, 2016 wherein Bryan Stephens and Craig McCullough deprived Plaintiff of $2M of his ownership in Eliason Enterprises, LLC.

83. Craig McCullough asked Plaintiff during the execution of the documents whether or Plaintiff knew "how much your mother loves you?" as he stated that this modification was being done to protect him against his older two siblings who she considered resentful and jealous.

84. Prior to the death of Joyce S Eliason, she sought to soften the hearts of her oldest children by writing them both a check for $500,000 with the hopes that they would not feel less privileged than Plaintiff.

85. Craig McCullough reported to Plaintiff that the Eliason 2015 Trust had been closed and all cash payments thereto being transferred to the new Eliason 2016 Trust on December 22nd, 2016.

86. Plaintiff was told that the millions of dollars of cash which was paid to the Eliason 2015 and Eliason 2016 Trusts was being done to repay the purchase price of $4.5M to the Estates of Max and Joyce Eliason.

87. Plaintiff discovered in May of 2019 that the Eliason 2015 Trust was never closed and that he was considered and equal Co-Trustee and equal Beneficiary to said entity.

88. Plaintiff Demands that Kirton McConkie explain to the Court how it is possible for a Prestigious Law Office such as themselves as representatives of the LDS Church do not have a "checks and balances" system and/or reporting process that would keep tracking of whether or not the respective attorney Craig McCullough had informed Plaintiff of his rights as Trustee and Beneficiary and if said Beneficiary was receiving the required accounting and his portion of the Eliason 2015 Trust.

89. Plaintiff was provided copies of the Eliason 2015 Trust in May of 2019 for the years 2016, 2017, and 2018 showing income and holding oil and gas mineral rights.

90. Plaintiff forwarded a letter to President Lee Wright of KMC Law dated May 21st, 2019 (exactly one year to the date after the death of Joyce S Eliason) which indicated that Plaintiff had requested that Zions Fiduciary Services and Wealth Management take over his position as Trustee of said Trust.

91. Kirton McConkie forwarded a letter and E-mail to Plaintiff on or about May 26th, 2019 which had been backdated to May 20th, 2019 and stated that in his role as "Trust Protector" of the Eliason 2015 Trust; KMC Law Attorney Craig McCullough was

45

removing Plaintiff Brett L Eliason as Trustee of an entity which was supposedly closed three years earlier.

92. Kirton McConkie Sr Management is hereby demanded by Plaintiff and on behalf of his Father Max D Eliason to explain how the President of Kirton McConkie Lee Wright can account for his intentional actions of allowing an admitted situation of "conflict of interest" continue to act as a "Trust Protector" which was never exposed to Max and Joyce Eliason as even being in place.

93. Plaintiff Brett L Eliason was replaced without cause and by an attorney who secretly represented his siblings and their spouses (which is obviously illegal) and replaced Plaintiff Brett L Eliason with his sister-in-law; Laurie Eliason who has never been mentioned as being a Trustee or Beneficiary and is the wife of Mark D Eliason.

94. Plaintiff discovered within the Eliason 2015 Family documents that Craig McCullough had the authority to create new beneficiaries while deleting Plaintiff's rights and includes his ability to create "Charitable Trusts" of his choosing with income and assets of said Trust transferred thereto at his own discretion.  This being in direct conflict with all wishes and correspondence of Joyce S Eliason's letter to KMC Law.

95. Plaintiff demands that Kirton McConkie and all Defendants account for their respective actions in depriving Plaintiff Brett L Eliason from his rightful and lawful position as equal Co-Trustee and Beneficiary of the Eliason 2015 Trust without ever providing one statement concerning the distributions and to whom they have been paid.

96. Bryan Stephens indicated to Plaintiff that the "Grandchildren's Trust" owned 3% of Eliason Eight, LLC through the Eliason 2015 Family Trust which was never disclosed nor approved by Plaintiff Brett L Eliason who is by all rights a 33% owner of said entity

and whose approval was required by law and the Resolution Joyce Eliason demanded on December 8th, 2017.

97. Plaintiff disclosed to KMC Senior Management that there had been potentially tens of millions of dollars of oil and mineral rights transferred illegally from Eliason Eight, LLC to The Eliason 2015 Trust which received $1,358,879 in cash credits during the year 2018 alone.

98. Plaintiff demands that President Dallin H Oaks and President Lee Wright explain in detail to Judge Mow and the Judicial Court system (to which Brother Oaks formerly served as Utah Supreme Court Judge) the definition of "Conspiracy to Commit Felony Embezzlement", "Corruption", and the associated "Obstruction of Justice" and how they relate to everyone's participation in 'Aiding and Abetting" a known felony action.

99. Plaintiff demands that all Defendants explain in detail why they are not guilty of depriving Plaintiff of his rightful cash flow and assets which began with the alleged "Fraudulent Misrepresentation" of Craig McCullough by Bryan Stephens to the Eliason Family on June 20th, 2013.

100.    Plaintiff alleges that the actual amount of stolen oil and gas mineral rights from Eliason Eight, LLC can only be determined through a criminal forensic audit and to locate and prosecute each recipient of said income from the stolen property of Plaintiff and Eliason Eight, LLC.

101.    This action by Defendants was directly responsible for the Plaintiff's complete loss of his flawless credit score which was over 800 in 2015 and which plummeted to the 400+ level amid his "Defendant caused cash crisis" while Plaintiff sat religiously by his mother's and father's side for five years.

102.    Defendants and in particularly his siblings knowingly watched in an apparent sadistic enjoyment as Plaintiff's Penthouse Condominium which was under construction in Hawaii was foreclosed on along with another already owned Condominium in 2016 which his family traditional used to spend Christmas at.

103.    This financial and emotional attack on Plaintiff and his children are of such substantial nature that there is not an amount large enough on earth to replace the destroyed years of quality of life which have forever been robbed by Defendants and their ongoing relentless cover-up which is causing exponential consequences.

104.    Plaintiff demands that KMC Law Management explains why they have heretofore refused to take one action of "good faith" towards Plaintiff and his father knowing fully that the Law Office and all Defendants have been in complete collusion and conspiracy to disown the youngest beneficiary and rob their client Max D Eliason and the Estates of him and his wife to whom the Law Firm of Kirton McConkie and Craig McCullough were paid to protect.  Kirton McConkie has not only deprived Plaintiff of his birthright; but removed his rightful ownership in Eliason Eight and Enterprises.

105.    Plaintiff demands to know why his request on behalf of his father Max D Eliason and acting as his Agent with his associated Power of Attorney to revoke and provide accounting for their own client in May of 2019 was dismissed without response from Senior Management.

106.    Following Plaintiff's demands on behalf of his father and the initial filing of the complaint herein; Defendants immediately presented Max D Eliason in front of Judge Faust of the Probate Court and humiliated him by having him deemed "incompetent" for no other reason than to once again believe themselves above the law by justifying their

48

inexcusable Breach of Fiduciary Duty to Max D Eliason by taking such a heinous action of "Abuse and Exploitation" of an Elderly Client of theirs.

107.    PLAINTIFF FINDS THE DEFENDANTS ACTIONS BEYOND REPULSIVE AND EVIL; WIHTOUT ANY INDICATION OF COMPASSION OR HUMANITY FOR THEIR ACTIONS AGAINST MAX D ELIASON TO WHOM THEY EACH OWE A FIDUCIARY DUTY AND/OR THE LOYALTY OF A CHILD TOWARDS THEIR FATHER.

108.    **PLAINTIFF DEMANDS THAT THE DEFENDANTS PRODUCE ANY AND ALL EVIDENCE WHICH SUPPORTS THE VERACITY OF THE ALLEGED CRIMES BY PLAINTIFF TO ABUSE MAX D ELIASON FINANCIALLY AND EMOTIONALLY.**

109.    Plaintiff Brett L Eliason's attempts to plead with Kirton McConkie were met by Senior Management and President Dallin Oaks with false allegations being made to the Utah Division of Protective Adult Services with whom Plaintiff recently was ordered to attend a hearing wherein he was dismissed from all allegations from the Defendants. Ironically Plaintiff's alleged crimes are reflective of exactly what the Defendants have done to Max D Eliason which is considered criminal in Utah.

110.    Defendants made false allegations to the Court and to the Unified Police Department Wherein Max D Eliason resides with Lisa Stephens personally meeting with the officers and producing copies of "Cease and Desist" orders which were disclosed to police as representing a valid "Restraining Order" against Plaintiff towards his father and his own personal childhood residence.

111.    Defendants are knowingly keeping Plaintiff away from his own father since April 17th, 2019 via a fraudulently appointed attorney, Kent Snider who supposedly is there to protect the best interests of Max D Eliason but whom is knowingly protecting the

49

Defendants with compensation and directions allegedly coming from defendants including the Sr Management of Kirton McConkie.

112.    **DEFENDANTS ARE EACH TO BE HELD ACCOUNTABLE FOR ARGUABLY THE MOST HORRIFIC FORM OF DEGRADATION POSSIBLE WITHING SOCIETY. PLAINTIFF HAS BEEN ACCUSED AND ATTACKED BY THE LAW FIRM AND THE "GOD AND RELIGION" HE THOUGHT WAS THERE TO PROTECT HIM. HE HAS BEEN BETRAYED THROUGH GREED AND DECIET BY HIS OWN LOVED ONES WHO CARE MORE FOR DOLLARS THAN SENSE (OF LOVE OR THE MEANING OF ETERNAL FAMILIES). PLAINTIFF DEMANDS THAT ATTORNEY KENT SNIDER BE HELD RESPONSIBLE FOR HIS CRIMINAL PARTICIPATION IN KNOWINGLY KEEPING A LOYAL SON FROM PROTECTING HIS OWN FATHER WHOSE LIFE AND LEGACY HAS BEEN VIOLATED BY A MAFIA STLYE GANG OF GARMENT WEARING THUGS. ALL SURVEILLANCE CAMERAS AND THE DISCLOSURE OF THE TRUTH TO ALL EXTENDED FAMILY MEMBERS IS ALSO DEMANDED HEREIN CONCERNING THIS CRIME.**

113.    Defendants have made false allegations to family and friends that Plaintiff is considered "clinically insane" and justifies this as qualification for being considered "disabled" as per the terminology of the Eliason 2016 Trust which has also been created with deceit and fraudulent intentions to deprive Plaintiff of his birthright.

114.    The Eliason 2016 Trust was reportedly created to replace the "still existing" Eliason 2015 Trust from which Plaintiff has been deprived all rights as Trustee and Beneficiary.

115.    Likewise; Plaintiff discovered in February of 2019 that he was considered an equal Co-Trustee and Beneficiary of the Eliason 2016 Trust when KMC Law finally provided him with the associated information.

116.    Plaintiff demands that Kirton McConkie Law Offices and Sr Management and the Co-Trustees each defend their positions as to how it is possible for this entity to have received over $5M in proceeds which were meant to remain within the Trust but which were illegally removed by Lisa Stephens immediately with the associated accounts closed as soon as Plaintiff discovered he was an equal Trustee/Beneficiary to the siblings which Kirton McConkie secretly represent.

117.    Plaintiff demands that Kirton McConkie and Defendants explain how they could legally close the Eliason 2015 Trust accounts without ever providing accountability or approval to Plaintiff.

118.    Plaintiff demands that Kirton McConkie and the Defendants explain how they could legally close the Eliason 2016 Trust accounts without ever providing accountability or approval to Plaintiff.

119.    Plaintiff has discovered that the Eliason 2016 Trust illegally holds more oil and gas mineral rights than Eliason Eight, LLC; all of which has illegally been removed by Defendants in order to deprive Plaintiff of the tens of millions of dollars in assets and the associated millions of dollars of cash flow which have intentionally been deprived from the utilization of Plaintiff since the inception of this Trust.

51

120.    <u>Plaintiff Demands that Defendants explain how it is legally possible to move oil and gas mineral rights out of the Eliason Eight, LLC without approval of each member/manager of the entity and why they should not be held responsible for all of the extensive financial damages which have been inflicted by the Defendants actions.</u>

121.    Defendants have knowingly been depriving Plaintiff of his rightful cash flow and torturing him financially and emotionally since the existence of the relationship between Craig McCullough and Bryan Stephens and Lisa Stephens in 2013.

122.    The Zions Bank statements from 2018 indicate that $722K of cash flow was illegally transferred to the Eliason 2016 Trust in order to pay income taxes.

123.    The Defendants wired this $722K to the IRS to pay income taxes on undisclosed income which was generated from undisclosed and illegally removed oil mineral rights and paid from Plaintiff's rightful assets to individuals which Defendants refuse to disclose.

124.    <u>Plaintiff demands that Kirton McConkie and President Lee Wright and President Dallin H Oaks explain to the Court the definition of Wire Fraud under the terms of the United States Government.</u>

125.    <u>Plaintiff demands that Kirton McConkie and President Lee Wright and President Dallin H Oaks explain to the Court the definition of Tax Evasion and Kickbacks.</u>

126.    The amendments which Joyce S Eliason required that Kirton McConkie execute in December of 2017 which required all three beneficiaries' signatures included the family entities of Eliason Eight, LLC and Eliason Enterprises, LLC.

127.    Plaintiff stated to Defendants that he was ordering a forensic audit on the oil properties associated with Eliason Eight, LLC on May 21st, 2019 in order to account for all amounts which have been illegally removed from the respective entities.

128.    Craig McCullough sent a correspondence to Plaintiff which was back dated to May 20th, 2019 which illegally removed Plaintiff Brett L Eliason in his respective role of 33% owner and Member/Manager of Eliason Eight, LLC and Eliason Enterprises, LLC.

129.    Plaintiff demands that Kirton McConkie President Lee Wright explain why Plaintiffs cries of "mercy" concerning this display of corruption at its "best" went unheard and were knowingly backed by himself and by Dallin H Oaks; President of the Quorum of the Twelve Apostles of The Church of Jesus Christ of Latter-Day-Saints.

130.    Plaintiff's allegations include the obvious criminal actions which are being initiated by Senior Management and allegedly under the direction of Dallin H Oaks with the implications that this Prestigious and LDS "Lawyers of Jesus Christ Himself" are capable of committing any crime to cover this incident up and to have it buried.

131.    Plaintiff demands that Kirton McConkie and each Defendant participating herein respond as to what the Defendants were expecting the Plaintiff to do amongst all of the horrific crimes which have been committed against him; if it be something other than to "die"?  Plaintiff makes reference herein to the most corrupt conspiracy to commit intentional harm as his "Trustee" sister asked "what color of coffin" he liked.

132.    The evidence provided herein shows that Bryan and Lisa Stephens obtained an illegal prescription of Morphine and began giving said drug to Joyce S Eliason on or about April 14th, 2018.

133.    Defendants knew that Plaintiff was not going to be with Joyce S Eliason on April 17th, 2018 as he was at the new store in Trolley Square which he and his mother had been working on opening for the prior two years.

134.    The evidence shows that Joyce S Eliason was presented with an undisclosed Second Amendment to the Joyce S Eliason Trust which was dated April 17th, and is the governing document which Kirton McConkie is relying on to show that Lisa Stephens was made "Sole Trustee" just days before Joyce S Eliason would die.

135.    Plaintiff arrived at the home of Joyce S Eliason very late on April 20th, 2018 to hear his mother ask him "Brett; what did I just sign concerning my Trust" but she was obviously very drugged and fell into an immediate deep sleep.

136.    Lisa Stephens texted Plaintiff that night and told him to turn the oxygen of Joyce Eliason down to "3" since Joyce had been needing a very high level of "5" for the prior 2-3 days without explanation.

137.    Plaintiff sat up with his mother all night by her bed making certain that her oxygen remained on her nose so as to not allow her to suffocate while she slept.

138.    Plaintiff and his father realized early in the morning that Joyce S Eliason was deathly cold and Plaintiff could not get an oxygen reading on his mother.

139.    He was able to take the oxygen level back up to "5" and to watch his mother have a violent reaction with terror in her eyes while vomiting just before she would fall into a multiple day coma.

140.    Plaintiff Brett L Eliason was puzzled when he learned that his sister had told the Emergency Room doctors at the University of Utah Hospital that her mother had a "DNR" in place.

141. Plaintiff immediately found the nurses and reversed said decision by Lisa Stephens and reminded her that her mother stated that she wanted to be given a chance to live as long as "one brain cell" was still functioning.

142. Plaintiff would later speak with the medical staff at the Huntsman Hospital who indicated that all of the symptoms matched those of a "morphine overdose" and that nobody would have prescribed a contraindication drug that depressed breathing to an 84-year-old cancer patient with one lung and who was already on "clonazepam".

143. Plaintiff alleges that his sister along with Bryan Stephens and Craig McCullough obtained this illegal dosage of morphine (with allegations that it was done in associating with Defendant Pauline Bair who is a Hospice worker) and intended on "putting Joyce down" after she had signed the illegal document that enabled Lisa Stephens to be the "pretend" Trustee and empty both estates feloniously.

144. Plaintiff demands that the Defendants research the definition of "Conspiracy to Commit Murder/Bodily Harm" and then report to the Court why they would knowingly give Joyce S Eliason an overdose of Morphine on the day Lisa told her younger brother and Plaintiff to "turn down mom's oxygen" since Lisa was fully aware that this was destroying Joyce's already weak ability to breathe.

145. Plaintiff demands to receive copies of all correspondences surrounding this alleged crime with depositions to be taken on the four Bair family members and Bryan and Lisa Stephens; none of which should be protected by a client/attorney privilege.

146.    Plaintiff Demands to have President Lee Wright and President Dallin H Oaks respond to the allegations that they have knowingly participated in the complete desecration of the lives of Max and Joyce Eliason and have targeted their youngest son whom KMC Law was specifically paid to protect.

147.    Plaintiff Demands that Dallin H Oaks present to the Court and to Judge Mow why these horrific actions against Plaintiff and his parents and daughters do not hold the LDS Church Liable for all damages under the rules of Apparent Authority following his Holy Temple Ceremony of the KMC Offices on February 12th, 2012.

148.    Plaintiff Demands that President Dallin H Oaks and President Lee Wright explain why the laws of Vicarious Liability and Respondeat Superior do not apply herein.

149.    Plaintiff Demands that KMC Management disclose why the rules of "Joint and Several" do not apply to their Law Firm as it pertains to the criminal actions herein and under the laws of Utah.

150.    Plaintiff alleges that all Defendants herein have done the calculations as to the potential liability and exposure to the Law Firm of Kirton McConkie and the LDS Church and have decided (as is the case with prior alleged sexual cover ups) that the "Needs of the Many" outweigh the "Needs of the One" and are justifying the extensive criminal conspiracy and corruption by committing whatever crime is necessary to cover up and bury this crime no matter how much financial and emotional damage is inflicted on an innocent Max D Eliason and his son and youngest Beneficiary who holds his father out as the bravest hero he has ever met. PLAINTIFF DEMANDS THAT DEFENDANTS ANSWER THE ONE QUESTION WHICH DOOMS THEM TO GUILT OF BREACHING THEIR FIDUCIARY DUTY: "WHAT ABOUT ME?".

## FIRST CAUSE OF ACTION

## (FRAUDULENT MISREPRESENTATION)

*False Representation means the false or wrongful representation of a material fact with the knowledge or belief of its inaccuracy and is a 2nd degree felony under the laws of the State of Utah.*

*Instance of false statement where (1) the party making the statement is aware that it is false or disregards the possibility of it being false, (2) the party making the statement does so to induce another party to enter into a contract, and (3) the other party enters the contract as a result of the statement and consequently suffers a loss.*

151.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

152.    Bryan Stephens sent an e-mail to Plaintiff on June 19th, 2013 wherein he introduced Craig McCullough as having been an advisor with a common acquaintance to Larry B Stillman who is the younger brother of Joyce S Eliason.

153.    The statement was made with both Bryan Stephens and Craig McCullough knowing that the Eliason's had a high respect for Larry B Stillman and his financial acuity and with the understanding that Max and Joyce and their youngest son and Plaintiff would accept Mr. McCullough based on that referral.

154.    This contract was entered into because of that introduction concerning Larry B Stillman.

155.    Each document which Joyce S Eliason executed came with the personal recommendation and endorsement of her brother Larry B Stillman including all discussions of generation skipping which Bryan Stephens and Craig McCullough continued to insist on despite Max and Joyce Eliason declining to accept.

156.    Plaintiff went to his uncle Larry B Stillman's home on February 10th, 2019 because Craig McCullough refused to see Plaintiff in person or respond to his e-mails concerning a needed litigation against his business partners (Defendant Bair Family).

157.    Larry B Stillman stated that he had never heard of his name before but that he believed he had met Craig McCullough's younger brother if they were related.

158.    The following is a copy of the E-Mail wherein Plaintiff was introduced to Mr. McCullough and the associated comments concerning Larry Stillman.

159.    This was an e-mail introduction just prior to the first in-person meeting the following day wherein Joyce S Eliason would be introduced to her new Attorney from KMC Law which came with a resounding endorsement by President Dallin H Oaks the prior April 12th, 2012.

From: Bryan Stephens

Sent: Wednesday, June 19, 2013 5:55 PM

To: 'cmccullough@kmclaw.com'

Cc: kbirrell@kmclaw.com

Subject: Max & Joyce Eliason Meeting Prep

Mr. McCullough,

I am the CPA (and son in-law) for Max & Joyce Eliason with whom you have a meeting tomorrow. I advise them on tax issues, track financial issues and would like to help in planning, but I am an in-law and should, therefore, let you do your work. Ken Birrell at your office recommended you highly. You might know Larry Stillman that is a younger brother to Joyce. Your dad has worked with Larry, but I imagine that you likely helped with most of the implementation of his estate planning.

160.    Plaintiff alleges that the only viable reason that would have caused Bryan Stephens to introduce Craig McCullough as a key advisor to Larry Stillman; would be to secure the relationship knowing that the Plaintiff and the Clients of Kirton McConkie would accept a relationship with someone recommended by Mr. Stillman.

161.    Max and Joyce Eliason never would have entered into a relationship with anyone who needed to lie concerning their mutual acquaintance which was done in necessity to conceal the Kirton McConkie admitted "Conflict of Interest" which Sr Management knew about before the Plaintiff confronted them.

162.    Plaintiff requested via email that Craig McCullough explain his acquaintance with Larry B Stillman to which Mr. McCullough responded via a letter dated March 7th, 2019 and stated as follows:

> *"In answer to your question concerning my initial representation; I understand that Ken Birrelle of Kirton McConkie referred Max and Joyce to me. I understand that Larry Stillman was a client of my brother, though I have not worked with Mr. Stillman."*

163.    The contract with Max and Joyce Eliason was not secured by a referral from Ken Birrelle whom Max D Eliason has never heard of; the relationship was secured because of some criminally minded individuals with intentional fraudulent and deceitful intentions decided that they would use the name of Larry B Stillman to deprive the Clients Max and Joyce Eliason of their Estates while still living.

164.    The Damages associated with this action include a rescission of all documents associated with the Estate planning of Kirton McConkie on behalf of Max and Joyce Eliason and the restoration of both Estates to the "condition" in which they were in prior to the introduction to Kirton McConkie and Craig McCullough.

165.    Plaintiff is requesting Treble Damages against all Defendants on a Joint and Several Basis with Vicarious Liability imposed on all Partners of Kirton McConkie Law Offices along with other Defendants included herein.

166.    Plaintiff also claims that there exists an "Apparent Authority" between the LDS Church as Principal and the Law Office of Kirton McConkie as Agents of said Principal with the Clients Max and Joyce Eliason considered the damaged third party along with Plaintiff whose life was intentionally targeted for demise.

## SECOND CAUSE OF ACTION

## (FRAUD ON FEBRUARY 2ND, 2016)

*Fraud is generally defined in the law as an intentional misrepresentation of material existing fact made by one person to another with knowledge of its falsity and for the purpose of inducing the other person to act, and upon which the other person relies with resulting injury or damage. Fraud may also be made by an omission or purposeful failure to state material facts, which nondisclosure makes other statements misleading.*

167.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

168.    The Defendants Bryan P Stephens and Craig McCullough convened a meeting at the home of Bryan P Stephens on November 2nd, 2016 created three separate Trusts for each beneficiary to execute and held a meeting on November 2nd, 2016 in the home of Bryan Stephens.

169.    The true motivation of said meeting was apparent wherein Mr. McCullough had prepared three separate trusts for the three beneficiaries of Max and Joyce Eliason; however, said Trusts were not equal as Bryan and Lisa Stephens had reduced the Trust of the Plaintiff by approximately $2M. This was relating to advances the parents of Plaintiff had made on his behalf following a life's crisis meltdown wherein they did all they could to protect him.

170.    Although never appointed as such; Mr. Stephens and Lisa Stephens felt the need to research all advances from historical accounts in order to decide how much they had been shorted relative to their younger brother (In-law).

171.    Bryan Stephens did indeed perform the tax work but by definition; was never instructed to maintain and "impute" an implied interest rate which was being accrued against the wishes of Max and Joyce Eliason.

172.    Joyce S Eliason would learn later in the day of November 2nd, 2016 as to what had transpired earlier that morning following a conversation between Plaintiff and his mother concerning the intentions and actions of Craig McCullough as it related to the Estates of Max and Joyce Eliason.

173.    Joyce S. Eliason was in disbelief at the insinuation that her CPA Son-In-Law Bryan Stephens and her own Estate Attorney had gone behind her back and created documents designed to deprive Plaintiff of $2M without consulting her as client.

174.    Joyce S Eliason drafted a letter over the next six days which is found below:



Mrs. Joyce S. Eliason
4349 Lynne Lane
Salt Lake City, Utah 84124

November 7, 2016

Mr. Craig F. McCullough

50 East South Temple

Salt Lake City, Utah 84111

Dear Mr. McCullough,

I understand that there was recently a meeting held in regards to the distribution of the assets of our estate. Included in that meeting was the distribution of our balance sheet prepared and provided by my son-in-law, Bryan Stephens.  While Bryan prepares our tax returns each year, he is in no way considered our financial advisor or planner and I personally had not seen what he had prepared when that meeting was held.  I have told Bryan on several occasions that he is not our financial advisor and that as long as I am alive; I will "call my own shots" in determining what happens with our estate.

My son, Brett; has been my "hospice" caretaker since my "death sentence" of lung cancer was diagnosed almost 4 years ago.  There is not a description for his loyalty to both me and his father Max who has also required his assistance for several years.  Brett gave up all of his regular daily activities in order to care for his parents in these last years; and no amount of money can replace the role he has played in making my life bearable!

It is true that I have invested a great deal of money in Brett; during a period of his life where he needed me to get through some tragic ordeals in his life.  There has never been nor will there ever be a note attached to this amount other than those executed recently in regards to his divorce proceedings.  I am an educated and sophisticated investor and decided to help my youngest son at that time as I have done for many people in my family including Mark and Lisa and their respective families.



From this moment forward, I respectfully request that Bryan not be allowed to make any decisions for our estate; nor do I want him to attend any meetings in regards to our estate.   He seems to be overpowering my three children and I was not given any notice as to the decisions that were to be made at that meeting.  I believe that as a common curtesy, an agreed upon financial advisor would have provided a copy of my own balance sheet to review prior to an important decision involving one of my children receiving less than the other two.

Please feel free to call me at your convenience or if needed; you may come and sit down with me so that there is no mistake as to my intentions of my estate being divided equally among my three children.

 Warm regards,



Mrs. Joyce S. Eliason

The correspondence between Plaintiff and Mr. McCullough when this happened was as follows:

**From:** Brett ELIASON [mailto:brett.eliason1@gmail.com]
**Sent:** Monday, November 07, 2016 3:14 PM
**To:** Craig F. McCullough
**Subject:** See Attached Letter from Joyce Eliason

Hi Craig,

My mom asked me how the meeting went with the attorney and I assumed she was talking about the one with you. As I explained what was on the table, she got pretty upset that Bryan is doing anything but her taxes and has told him to not act as a financial advisor to my parent's estate.

She drafted this letter that I'm attaching but before she adds or subtracts anything; I wanted you to maybe look it over and possibly come out and go over it with her personally?

Best Regards,


Brett L. Eliason


As a result of said letter which my mother sent, Mr. McCullough replied the following:

**From:** **Craig F. McCullough** <cmccullough@kmclaw.com>
Date: Tue, Nov 8, 2016 at 11:48 AM
Subject: RE: See Attached Letter from Joyce Eliason
To: Brett ELIASON <brett.eliason1@gmail.com>


Brett:

Your mother just called me and read me a letter she had written. We discussed my understanding of the meeting you, Lisa, Mark, Bryan and I attended. I assured her that no steps had been taken to make any changes to her estate planning and that ideas were discussed relating to use of the tax loss to avoid future income taxes and estate taxes. We also discussed how to account for the "loans" to you. I explained that there was reporting which had to be done relating to income and estate tax issues and the "loans". She was upset that she wasn't involved with the decisions. I apologized to her.

I guess the next step, if there is to be one, would be to have a meeting with your parents and you, Lisa and Mark, to determine what if anything they would like to do relating to these issues.

Please let me know how your family would like me to proceed.

Craig

63

175.    Although Mr. McCullough indicated that no steps had been taken to change her estate plan; the intention to make certain that the wishes of Bryan and Lisa Stephens were being fulfilled rather than those of Max and Joyce Eliason.

176.    Had Joyce S Eliason never inquired concerning the "appointment with the attorney"; the Plaintiff would have been shorted over $2M without Craig even consulting his client as to her wishes.

177.    The associated emotional distress experienced by Joyce S Eliason and her associated anger and infuriated yelling "How Could They Do This?" was horrific since Joyce's vocal cords were paralyzed accidentally during her lung surgery.

178.    It was this fraudulent action in November of 2016 that led to Joyce Eliason's decision to execute the Amendment's to all associated Trusts on December 8th, 2018 when she realized her chemotherapy was no longer working.

179.    Plaintiff refers to this letter and the associated texts as additional proof as to Joyce S Eliason's intentions and her disgust that Craig McCullough would be covertly working with Bryan Stephens concerning her and her husband's Estates.

180.    Plaintiff was told by Tom Mecham on February 11th, 2019 that there had been an illegal "conflict of interest" between Bryan and Lisa Stephens and Craig McCullough of Kirton McConkie.

181.    Plaintiff reminds the Court that he is forced to file this complaint because that is what KMC Law Senior Management told Plaintiff to do in order to protect his rights and those of his father.

182.    Plaintiff is nauseated to know that the Law Firm representing his own Religious Beliefs could be capable of arguably the evilest form of corruption in society.

183.    Further evidence concerning Joyce's thoughts and intentions as it relates to Bryan Stephens and her demands that Bryan not be involved in any decisions for her estate be respected.

184.    The following is a text received by Plaintiff Brett L Eliason from his mother on November 6th, 2016 following her discovery of this unauthorized meeting:

185.    Kirton McConkie Sr Management is aware of this letter and Tom Mecham required Craig McCullough to reverse the fraudulent debts of Plaintiff to his mother which was done on her balance sheet which Kirton McConkie forwarded to Plaintiff.

186.    Defendants simply moved the amount owed from Joyce to Eliason Enterprises.

---

iMessage Message received from JE  11/6/2016 1:07:33 PM

J

Dear Mr. McCullough,

I understand, my son in law, Bryan Stephens, has asked you to set up a new formula for the distribution of my estate other than the one we previously agreed upon.
My children should be treated as equals.  Equal distribution to all.  I have asked Bryan in fact told him on several occasions, he is not my financial advisor.  While I am still alive - my leash grows shorter - I am calling q my own shots.
My son, Brett, has been my "hospice" caretaker since my death sentence 4 years ago - beyond description for his degree of loyalty to me No amt of money can replace the role he has played in making my life bearable!
I have given Brett a lot of money.

iMessage Message received from JE  11/6/2016 1:17:25 PM

J          This has had a note attached to it.  I did not want him to pay me back.
I respectfully request
Bryan not be allowed to make any decisions for my estate.  He seems to overpower my three children.  I was given no notice of the meeting or decision made.
If I need to put this in a more formal letter, please let me know.
Respectfully signed, Joyce Eliason.
iMessage Message received from JE  11/6/2016 1:44:00 PM

187. As will be demonstrated in the texts between Plaintiff and Joyce Eliason in April and May of 2018; both parties were convinced that Craig was not working for Max and Joyce which was prophetic since the introduction in June of 2013.

188. Joyce Eliason was also furious to realize that expensive legal costs were being incurred by her and her husband's estate for documents which Bryan Stephens had requested and not the clients themselves.

189. Max D Eliason was enraged at what was evolving and demanded that Plaintiff Brett L Eliason set up an appointment with Sr Management of Kirton McConkie to question how they could legally be representing Bryan and Lisa Stephens and not himself who was the rightful Co-Trustee and Settlor of the Max and Joyce Eliason Estates.

190. It is alleged that Dallin H Oaks was very much aware of the record liability which was being faced by his own actions and was the individual who would have been responsible for having Ken Olsen of KMC Law Sr Management to refuse to see Max D Eliason because he was now considered "antagonistic".

191. Dallin H Oaks has publicly stated that "he asks for no apologies, nor does he offer any" in addition to stating that "nobody should criticize the leaders of the Church; even if they are wrong".

192. Dallin H Oaks also has publicly stated to "never forget who you work for" and "to whom you report"

193. Dallin H Oaks knowingly advocated that faithful Latter-Day-Saints bring their Estates to the "Temple of McConkie" just months before Joyce S Eliason contracted lung cancer.

194. Max and Joyce Eliason paid his "anointed attorneys" to protect their estates.

195.    He has used his philosophy of justifying the sacrifice of the one in exchange for the well-being of the many (or in this case; his position of leadership and the next "Prophet to Be") hoping to have all charges dismissed without ever being held accountable for the $100M plus criminal embezzlement of which he is more than well aware.

196.    Plaintiff cites once again that the rescission of all documents and the restoration of the respectful Estates of Max and Joyce Eliason to be among the remedies and damages incurred out of respect for the wishes of Max and Joyce Eliason who paid Kirton McConkie to protect them and their youngest son.

## THIRD CAUSE OF ACTION

### (CONSPIRACY TO COMMIT EMBEZZLEMENT)

**Embezzlement crimes fall under the umbrella of property theft. Embezzlement occurs when one entrusted to manage or monitor someone else's money or property, steals money or property for his or her own personal gain. A main component of embezzlement includes the defendant having legal access to another's money or property, but not legal ownership of it. The taking of another's money or property for the defendant's own gain is stealing. When combined with the fact that the theft was committed by someone in a special position of trust, you get the crime of embezzlement, which is a unique but a very serious criminal charge.**

**When a charge is aggravated, it carries harsher penalties. Embezzlement charges become aggravated when a defendant embezzled from a specially protected class of victims, such as the elderly or disabled adults. When a victim had a heightened level of trust with the offender, a charge can be aggravated as well. Common examples of individuals who yield a heightened level of trust include a defendant who is a public servant, an insurance company employee, or a bank employee.**

197.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

198.    Plaintiff by all legal rights is a Co-Trustee and Beneficiary to each and every entity which is held under the Estate Plan of Max and Joyce S Eliason.

199.    Kirton McConkie does not possess one legal document which would permit Lisa E Stephens to be appointed "Sole Trustee" of the Joyce S Eliason Estate.

200.    Under the rule of RES IPSA LOQUITUR; Defendants are demanded to account for the location of every asset included within the Estates of Max and Joyce Eliason and including every barrel of Oil which has been fraudulently stolen and the status of all Real Estate held within Eliason Enterprises, LLC from which Defendants also illegally removed Plaintiff from as Member/Manager on May 20th, 2019.

201.    Plaintiff alleges that Bryan Stephens has no legal or assumed rights to be in control of the Eliason Accounts especially given the admission of guilt by KMC Law Sr Partner Tom Mecham.

202.    Defendants refuse to reveal the status of all of the cash and savings accounts held at Zions Bank and Wells Fargo.

203.    Defendants refuse to reveal the status of all of the cash and investments which had millions of dollars therein and were held at TD Ameritrade where there should be five separate accounts.

204.    Defendants refuse to reveal the location of the Eliason 2015 missing cash and who the recipients of all proceeds have been.

205.    Defendants refuse to reveal the location of the Eliason 2016 missing cash and who the recipients of all proceeds have been.

206.    It is alleged that the Stillman Ranch which consists of several thousand acres of land and what is worth tens of millions of dollars has allegedly been illegally moved from the Joyce S Eliason Estate to the Eliason 2015 Trust as per the fraudulent verbiage found therein.

207.    Plaintiff's father Max D Eliason has had all of his personal cash taken away from him by Defendants so as to prevent Plaintiff and his Father from having access to the legal costs needed to prosecute these allegations.

208.    As noted above, this allegation of Embezzlement becomes aggravated when it occurs against a protected class of individuals which would include the elderly and certainly a dying 84-year-old Joyce S Eliason and an 85-year-old Max D Eliason whom is still being "protected" by his and his wife's rapists.

209.    The allegation becomes exponentially aggravated when it occurs by one who has been entrusted with a Fiduciary Duty to Protect the victim.

210.    Plaintiff, his daughters, and Max and Joyce Eliason have been victimized by multiple professional business licenses all of which was done out of greed and power with no regard to the impact on the Eliason Family and what the implications to society are following this horrific display of "humanity at its worst".

211.    Their CPA and Son-In-Law Bryan Stephens has used his trusted position for personal gain along with Craig McCullough who has also used the name of The Prestigious Law Firm of Kirton McCONKIE and its LDS affiliation to deceive the Plaintiffs.

212.    Each of the Kirton McConkie Partners and Board of Directors are knowingly sitting in Felony waters and yet refuse to this day to make one attempt to show a good faith gesture and being compassionate rather than assaulting those who paid the Defendants to protect them.

213.    President Dallin H Oaks as President of The Quorum of The Twelve Apostles of The Church of Jesus Christ of Latter Day Saints is just one more fatal blow to the Plaintiff when he realized that even his "God and Religion" has joined in this display of corruption against the innocent victims of his family whose lives shall never be the same.

214.    Plaintiff requests that each and every Defendant who has participated in this intentional display of degradation at its worst within society so as to show those who feel "untouchable" or immune to the laws of Man and God see the example that is set herein against them.

## FOURTH CAUSE OF ACTION:
## (BREACH OF FIDUCIARY DUTY TO MAX AND JOYCE ELIASON)

215.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

216.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

217.    Tom Mecham disclosed to Plaintiff Brett L Eliason on February 11th, 2019 that there was an undisclosed "Conflict of Interest" which existed between Bryan P Stephens and Lisa Stephens with Crag McCullough of KMC Law.

70

218.    The Fiduciary Duty owed by an attorney to a client in this area of legal work is considered the most sacred roll of all duties within the scope of legal representation.

219.    The admission by Tom Mecham that the Estate of Max D Eliason did not have legal representation on February 11th, 2019 is an admission of guilt that Kirton McConkie had breached their Fiduciary Duty of Loyalty, requirement to Disclose any conflicts of interest, duty to act in good faith of client, duty to treat all beneficiaries as equals, and to never mislead clients.

220.    Plaintiff reasserts that this Complaint would not be possible had Craig McCullough and Kirton McConkie not breached their Fiduciary Duty to Max and Joyce Eliason.

*There is no legal standard of care higher than fiduciary duty. Fiduciary duty exists in many different contexts and situations, but it essentially refers to times when a special trust or confidence is placed in one party by another.*

*A fiduciary duty is an obligation to act in the best interest of another party. For instance, a corporation's board member has a fiduciary duty to the shareholders, **a trustee has a fiduciary duty to the trust's beneficiaries, and an attorney has a fiduciary duty to a client**.*

*A fiduciary obligation exists whenever the relationship with the client involves a special trust, confidence, and reliance on the fiduciary to exercise his discretion or expertise in acting for the client. The fiduciary must knowingly accept that trust and confidence to exercise his expertise and discretion to act on the client's behalf.*

*When one person does agree to act for another in a fiduciary relationship, **the law forbids the fiduciary from acting in any manner adverse or contrary to the interests of the client, or from acting for his own benefit in relation to the subject matter. The client is entitled to the best efforts of the fiduciary on his behalf and the fiduciary must exercise all of the skill, care and diligence at his disposal when acting on behalf of the client. A person acting in a fiduciary capacity is held to a high standard of honesty and full disclosure in regard to the client and must not obtain a personal benefit at the expense of the client.***

221.    Kirton McConkie Senior Management and the Board of Directors of KMC Law including Dallin H Oaks are all fully aware that they have intentionally Breached their Fiduciary Duty to Max and Joyce S Eliason.

71

222.   Each respective Defendant is currently committing "Conspiracy to Commit Obstruction of Justice" including Dallin H Oaks and the associated "Conspiracy of Aiding and Abetting the Breach of Fiduciary Duty" owed to Max and Joyce Eliason which has been ongoing since June 20th, 2013.

223.   Plaintiff alleges that Kirton McConkie Law Offices and its Sr Management have never considered Max and Joyce Eliason their customers but rather the Son-In-Law Bryan Stephens who was to not have any participation in the Estate Planning of Joyce S Eliason.

224.   Senior Management admitted that the Estate of Max D Eliason nor the rights of Brett L Eliason had any Fiduciary Duty owed them by Kirton McConkie Law Offices; and they have knowingly kept Craig McCullough as the Lawyer of Mark Eliason, Lisa Stephens, Bryan Stephens, and Laurie Eliason.

225.   This would indicated that Craig was supported by Senior Management and Dallin H Oaks to follow the business strategy known as "The Old Switcheroo" wherein the two siblings in this case along with their spouses had pre-meditated this conspiracy to commit embezzlement and the numerous criminal actions which have taken place since the inception of this relationship.

226.   Lisa Stephens was knowingly and fraudulently named as Trustee to the Joyce S Eliason Trust dated October 28th, 2015 and was therefore a "self-appointed" Trustee to her younger brother and Plaintiff.

227.   This was a Breach of Fiduciary Duty to both Max and Joyce Eliason, but also to her younger brother whose rights had been illegally taken from him via the empowerment by Kirton McConkie Law Offices and Craig McCullough.

72

228.    In summary; the Defendants allegedly lied and committed intentional "Conspiracy to Commit Breach of Fiduciary Duty" and every action taken within the Estate Planning of Max and Joyce Eliason was done through intentional and malicious deceit.

229.    Plaintiff requests to see a copy of the associated "Letter of Engagement" that should have been executed with Max and Joyce Eliason in 2012 and would likewise like to see whether a "Letter of Engagement" was executed with Bryan and Lisa Stephens.

230.    Defendants have committed "Conspiracy to Abuse and Exploit" an elderly individual through the intentional humiliation of Max D Eliason wherein the Defendants presented him in front of Judge Faust and had him deemed 'incompetent" in order to silence his voice as their respective customer rather than admit fault by representing Bryan Stephens, Lisa Stephens, Mark Eliason, and Laurie Eliason.

231.    Kirton McConkie and Defendants have not just "Breached their Fiduciary Duties" to Max and Joyce Eliason; they have intentionally and criminally attacked them while still alive and continue to do so by keeping Plaintiff away from his father.

232.    Plaintiff demands that each and every Defendant be held accountable for this display of corruption and abuse of power.

233.    Defendant Kirton McConkie and Dallin H Oaks consider their actions above the laws of Man and God and the associated Fraudsters should be publicly humiliated just as they have done unto their own clients and the Plaintiff Brett L Eliason.

234.    There is no favor being done to Society by allowing the Prestigious names herein to go unpunished and allow this Law Firm to "live in corruption" another day.

# FIFTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT THE AGRAVATED ABUSE AND EXPLOITATION OF A VULNERABLE ADULT BY A FIDUCIARY)

235.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

236.    Max and Joyce Eliason entrusted Kirton McConkie Law Offices with their Estate Planning needs on June 20th, 2013.

237.    Max and Joyce Eliason executed a Durable Power of Attorney and Nomination of Conservator on July 10th, 2013.

238.    Max and Joyce Eliason named each other and Mark D Eliason, Lisa E Stephens, and Brett L Eliason as their designated agents for both financial and medical issues which may arise throughout their lives.

239.    Kirton McConkie disclosed an existing "Conflict of Interest" to Plaintiff Brett L Eliason on February 11th, 2019 which had been uncovered between Craig McCullough and Bryan and Lisa Stephens.

240.    Tom Mecham stated that "In order for Craig McCullough and Kirton McConkie to represent Lisa Stephens LEGALLY, Max D Eliason would have needed to have been deemed 'incompetent' as per Utah Law.

241.    Plaintiff confirmed with the Third District Court that this had not been done nor had Plaintiff been notified that KMC Law represented Lisa Stephens and Bryan Stephens and Mark and Laurie Eliason.

242.    Tom Mecham of KMC Law stated that Max D Eliason nor his estate had legal representation from an attorney of Kirton McConkie.

243.    Plaintiff asserts that this statement made by Tom Mecham of the Board of Directors of Kirton McConkie is in itself an admission of guilt as to both the Breach of Fiduciary Duty it owed to Max and Joyce Eliason; but also, the violation of the Laws of Abusing and Exploiting Max and Joyce Eliason.

244.    Joyce S Eliason died on May 21st, 2018 and was a Co-Trustee and Settlor of the A/B Trusts associated with their respective Estates along with her husband Max D Eliason who is still living today.

245.    It is alleged that Kirton McConkie and its Senior Management were aware of the enormous liability associated with the Breach of Fiduciary Duty to Max and Joyce Eliason which would ultimately fall on the LDS Church; that Dallin H Oaks instructed the Law Offices of KMC Law to protect the LDS Church by silencing Max D Eliason and his son and Plaintiff Brett L Eliason using any means necessary including additional felony actions.

246.    An "outside" attorney named Kent Snider (Defendant) was immediately hired to act on behalf of Max D Eliason and had the immediate responsibility to present Max D Eliason in front of Judge Faust of the Third District Court in an unnecessary and humiliating request to have Max D Eliason deemed incompetent.

247.    This was not done for any reason other than to "legalize" the relationship of Kirton McConkie and Craig McCullough to Lisa Stephens.

248.    This action by all Defendants who have contributed herein is considered a violation under Utah Code 76-5-111 (Abuse, Neglect, or Exploitation of a vulnerable adult).

249. This is considered to be a misrepresentation and concealment as to the facts that surround the intentional theft of all assets from both Max and Joyce Eliason through multiple actions of criminal behavior over the past seven years.

250. Kirton McConkie and all Defendants are considered to be in a position of Trust and are knowingly Exploiting Max D Eliason with each day that passes. Plaintiff Demands that Defendants provide proof of financial and emotional allegations against him.

251. All evidence within the texting conversations which are included as exhibits is the administration of an illegal prescription of morphine to Joyce S Eliason beginning on April 14th, 2018

252. It is alleged that Bryan and Lisa Stephens worked in association with Craig McCullough to make certain that Joyce S Eliason was incoherent in order to have her sign the Second Amendment to the Joyce S Eliason Trust on April 17th, 2018.

253. This Amendment has been proven to be Fraudulent since Joyce S Eliason did not have the power to appoint Lisa Stephens as "Sole Trustee" since Max D Eliason is showing as "Co-Trustee and Settlor" of the Joyce S Eliason Trust which Defendants told Joyce Eliason to sign.

254. The texting conversation between Plaintiff and his sister Lisa Stephens show a clear indication that immediately after the signature was obtained from Joyce S Eliason which empowered Lisa Stephens to control both Estates; the Defendants knowingly administered what they had hoped to be a lethal dosage of Morphine which instead put Joyce S Eliason into a coma at the Huntsman Hospital.

255. Lisa Stephens knowingly made a false representation to the E/R nurses at the University of Utah by stating that Joyce S Eliason had a DNR in place.

256.    This evidence clearly shows the complete lack of respect for life and for the Fiduciary Duties which each Defendants were entrusted with and illustrates the shameless actions which Defendants continue to take to "conceal and bury" the evidence of their crimes.

257.    These heinous actions against Joyce Eliason of Fraud and the associated emotional abuse she sustained while fighting lung cancer are impermissible in society and especially when enacted by one's own children and the attorney from KMC Law who was paid to protect Max and Joyce S Eliason.

258.    This is further aggravated by the associated LDS Church supported cover-up and the Conspiracy of multiple professional business licenses to protect those accused of Defiling the last wishes and legacies of Max and Joyce Eliason.

259.    The intentional abuse of an elderly individual is considered a 2nd Degree Felony in the State of Utah and the crime becomes aggravated through the Conspiracy associated herewith and the participation of the "Lawyers of Jesus Christ Himself" in the ongoing obstruction of justice and aiding and abetting of a felony crime.

260.    Utah Code 76-5-111 section (L) (i) (A) specifically addresses the intentional "Isolation" of Max D Eliason which the Defendants have done relentlessly in order to keep Plaintiff Brett L Eliason away from his own father.

261.    Plaintiff is repulsed by the actions of Defendants in the vicious and criminal attacks which they are employing against both Max D Eliason, Brett L Eliason, and his daughters Kylie M Eliason and Brittnie L Eliason who are also forbidden from visiting their grandfather.

262. The attorney Kent Snider has been hired to keep Plaintiff away from his dad.

263. There is not one legal document or valid allegation against Plaintiff that should deprive Plaintiff of his rightful role of son and Fiduciary with an associated Durable Power of Attorney in order to stand up for and protect his father.

264. Defendants have illegally removed Plaintiff's rights as Agent/Power of Attorney with the associated Guardianship and Custodian of the well being and health of Max D Eliason.

265. Plaintiff was forced to respond to a hearing with the Department of Aging Services in order to successfully dispute the allegations of Financial and Emotional abuse which Defendants claimed Plaintiff Brett L Eliason had done towards his father.

266. Plaintiff agrees to drop all charges should the Defendants provide the evidence which shows that Plaintiff has legally been deemed "insane" and/or the proof that the assets of Max and Joyce Eliason are in their designated place within the A/B Trust.

267. Plaintiff's last visit to his father was on April 17th, 2019 at which time four of his nieces and nephews along with Laurie Eliason arrived after calling the Unified Police Department and stating that there was a legal restraining order against Plaintiff.

268. Defendants have installed a video surveillance camera system and they are notified immediately should Plaintiff attempt to visit his father.

269. All extended family members have been told countless false allegations concerning the behavior of Plaintiff with Bryan Stephens even telling Plaintiff's daughter Brittnie that he was certain Brett Eliason was on drugs and drinking to account for his uncontrollable attacks on his own father.

270.    Plaintiff was denied his request to visit his father on his 85th birthday by Kent Snider because "Max could still remember how poorly Plaintiff treated him in April".

271.    Plaintiff was banned from sitting next to his father at the recent funeral of Larry B Stillman which was Joyce Eliason's beloved brother.

272.    Bryan and Lisa Stephens and each of their children surrounded Max D Eliason which also backed the allegations made to the extended family of Plaintiff.

273.    Bryan P Stephens who was prohibited from participating in the Estate Planning of Max and Joyce Eliason is knowingly concealing the complete embezzlement of his in-laws Estates while assassinating the character and integrity of the beneficiary Joyce Eliason instructed KMC Law to protect.

274.    It is furthermore alleged that the verbiage included in the Estate Planning documents clearly indicates that the Defendants likely added life insurance policies on Joyce S Eliason which was to be awarded to the "Personal Representative" of Joyce S Eliason should no other Trustees claim their share.

275.    Plaintiff once again states the words of Max D Eliason on April 17th, 2019 concerning the complete desecration of the Estates of Max and Joyce Eliason: "Jail is not good enough for any of them".

276.    Joyce S Eliason had $33K on her balance sheet for her burial services which included the head-stone and a bench for visitors to come and meditate near her remains.

277.    One year after the death of Joyce S Eliason; Plaintiff's demands for his mother's headstone were finally fulfilled but Defendants kept the money intended for the bench which Joyce Specifically requested be put into place.

278.    Plaintiff demands that Kirton McConkie be required to immediately pay for the Bench which they have also 'stolen' by breaching their Fiduciary Duty to their clients.

279.    Plaintiff also demands a public acknowledgement from Kirton McConkie and the LDS Church for their role in this despicable action against their own clients. Plaintiff's life has been destroyed because of their hideous crimes and demands that this be done in order to help restore Plaintiff's integrity and disclose exactly who is guilty of abusing and exploiting Max and Joyce Eliason.

## SIXTH CAUSE OF ACTION:

## (EXTORTION OR BRIBERY TO DISMISS A CRIMINAL PROCEEDING)

(1) A person is guilty of a felony of the second degree if by the use of force or by any threat which would constitute a means of committing the crime of theft by extortion under this code, if the threat were employed to obtain property, or by promise of any reward or pecuniary benefits, he attempts to induce an alleged victim of a crime to secure the dismissal of or to prevent the filing of a criminal complaint, indictment, or information.

280.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

281.    Utah Code 76-8-509 specifically states that it is a crime of theft by extortion to either threaten or promise any type of reward or pecuniary benefits by trying to induce an alleged victim of a crime to secure the dismissal of or to prevent the filing of a criminal complaint, indictment, or information.

282.    Plaintiff alleges that Kirton McConkie has done this repeatedly to conceal fraud.

80

283. Plaintiff appeared before Judge Adam Mow of the Third District Court on or about July 10th, 2019 on a Pro Se basis with injunction requests for temporary relief against the crimes alleged herein.

284. Judge Mow informed Plaintiff that in order for a decision to be rendered, Plaintiff was required to follow the legal requirements of "Requesting a Decision from the Court" on the front page of the complaint.

285. Judge Mow kindly permitted Plaintiff an additional 30 days to file an amended complaint wherein the newly amended document was to "clean the slate" of all of the technical mistakes Plaintiff had made due to his lack of legal experience within the judicial system.

286. Plaintiff was referred to the Law Office of RENCHER ANJEWIERDEN by a mutual acquaintance and was introduced to Jaryl L Rencher who is a managing partner of this Law Firm following the hearing with Judge Mow.

287. Defendant Jaryl L Rencher also introduced his associate and Defendant Michael J Collins both of whom accepted the representation of Plaintiff Brett L Eliason on a deferred hourly contingency basis which also included a $1M/month legal fee for each month that the complaint lasted.

288. Plaintiff provided all evidence necessary to justify the allegations made within the Complaint made previously to Judge Mow along with copies of all associated Trust Instruments which were related and showed undeniable fraud.

289. Defendant Jaryl L Rencher failed to disclose to Plaintiff that he was a former employee of Kirton McConkie which was required under the duty of disclosure as a potential of a "Conflict of Interest" for which Plaintiff should have been notified.

290.    Defendants Jaryl L Rencher and Mike Collins fully understood each of the allegations of Plaintiff and explained that Plaintiff should include all Partners of KMC Law under the rules of vicarious liability in addition to the Plaintiff's nieces and nephews who were benefitting from the Plaintiff's stolen assets.

291.    Attorneys Jaryl Rencher and Mike Collins recommended the immediate removal of Lisa Stephens as a fraudulent Sole Trustee and Craig McCullough as a fraudulent Trust Protector.

292.    Defendants Rencher and Collins also stated that they would immediately have the attorney of Max D Eliason (Kent Snider) replaced with an unbiased person with the best interests of Max D Eliason rather than those of Kirton McConkie.

293.    Plaintiff was also told by his legal counsel from Rencher Anjewierden that he would request that Kirton McConkie not be allowed to represent his siblings or their spouses since KMC Law was directing the siblings to follow their instructions concerning the cover-up of Max D Eliason's unlawful treatment.

294.    Plaintiff alleges that Defendants from Rencher Anjewierden understood the serious nature of all of the allegations and the amount of evidence which backed up Plaintiff's prior complaint to Judge Mow of the Third District Court.

295.    Plaintiff alleges that his attorneys Mike Collins and Jaryl Rencher were influenced or promised some form of compensation so as to have the victims claims against all Defendants dismissed through intentional deceit and actions contrary to Plaintiff's demands.

296.    All of the correspondence between Plaintiff and Defendants Jaryl Rencher and Mike Collins exposes intentional deceit which was clearly against Plaintiff's request.

82

297.    The emails between Plaintiff and Defendants Rencher and Collins show a clear intention of delaying the submission of the amended complaint until the due date of September 10th, 2019; after already requesting a 30-day extension which was considered unnecessary by Plaintiff.

298.    On the day of September 10th, 2019; Plaintiff received a revised copy of the complaint which was supposedly reflective of the same allegations Plaintiff had already proposed on August 10th, 2019.

299.    As per the attached exhibit showing the correspondence between Plaintiff and his attorneys Rencher and Collins; the complaint was completely modified and removed the LDS Church and the Management team of KMC Law.

300.    Furthermore, the business partners were excluded along with the partners of KMC Law which was not according to the understanding between Plaintiff.

301.    Despite Plaintiff's demands to reinstate the criminal allegations which are substantiated by evidence; Mike Collins indicated that he refused to add the Defendants which Plaintiff had requested because it was "bad faith".

302.    He immediately left for the airport on an undisclosed business trip which left no time for the amended complaint to be modified before the last-minute deadline was met.

303.    The Defendants Rencher and Collins were given 45 days to make minimal changes to the Plaintiff's already completed complaint which he did on a "Pro-Se" basis.

304.    Defendants were fully aware of the urgent nature of the Plaintiff's Injunction request and that he was not willing to accept a "Settlement" on his birthright.

305.    Plaintiff provided evidence of each respective allegation and even requested that Jaryl Rencher and Mike Collins attempt to refute the allegations of the Plaintiff's

complaint and have them play the part of KMC Law as "Devil's Advocate" should they not agree as to the criminal nature of said events.

306.    The initial amended complaint sent to Plaintiff for review was one day prior to the 30-day deadline and Plaintiff was surprised to see the original 65-page complaint reduced to 16 pages with multiple misspellings of Plaintiff's own name.

307.    With 2-3 hours remaining before the 30-day deadline to refile had lapsed; Attorney Jaryl Rencher finally met with Plaintiff and explained that the "Judge would respect the fact" that I did not come to court looking like "I had added a ski rack on my Porsche" in overkill.

308.    Attorney Rencher then had Plaintiff sign a "Verified Complaint" and stated this was to show evidence that the complaint had been fully reviewed by Plaintiff and that he was in agreement with said statements.

309.    All correspondence between Plaintiff and Attorneys Rencher and Collins are included in Exhibit Book which clearly demonstrates that Defendants from Rencher Anjewierden had knowingly been coerced or bribed by KMC Law in order for them to see that the wishes of Dallin H Oaks were followed; and not those of the client to whom was owed a Fiduciary Duty.

310.    Plaintiff Brett Eliason's insistence to bring in the District Attorney were met with him being dismissed as a client for no other reason than that he demanded justice.

311.    Within 24 hours of being "terminated" by said attorneys of Plaintiff; Kirton McConkie would issue a declaration that Plaintiff had 21 days to secure Counsel.

312.    Jaryl Rencher would follow up with a letter to Plaintiff indicating that "according to his calculations, Plaintiff had until November 29th, 2019 to secure Counsel or appear in Court or the entire case would be subject for Dismissal.

313.    Defendant Lisa Stephens would simultaneously file a claim against Plaintiff in reference to the business of My 3-D Me which Defendants have all conspired together to destroy as Plaintiff's primary source of income.

314.    Likewise, A decree was issued simultaneously from Judge Gardner in regards to a Law Suit concerning My 3-D Me, LLC and Fugazi which was filed as yet one more distraction to overwhelm the Plaintiff into agreeing to a settlement "that the Plaintiff could not refuse" as stated by Jaryl Rencher.

315.    Plaintiff's request to return under a "Temporary Injunction" to see Judge Mow within the Third District Court were met with the reply "You have less than a .5% chance of getting any relief and all you will accomplish is to delay the process of "Discovery".

316.    Both Mike Collins and Jaryl Rencher deleted The LDS Church, Dallin Oaks, Sr Management of KMC Law, Plaintiff's sibling Mark Eliason and his wife Laurie Eliason and the Bair Family who are very much involved with the corruption herein.

317.    Plaintiff was told this would not go in front of any judge for at least 18 months wherein an out of court settlement for the stolen properties and oil rights would be negotiated since Mike Collins suddenly saw no "criminal activity".

318.    Defendants Collins and Rencher tried in vain to convince Plaintiff that each alleged criminal action could be explained through some fairy-tale fictitious story which one would need to be "clinically insane" to believe.

319.    Plaintiff recognizes that the allegations under this "Cause of Action" are circumstantial only (Plaintiff has no way of knowing the discussions held between Kirton McConkie and Jaryl Rencher and/or any proposed compensation for betraying their client and his own father).

320.    Plaintiff would remind the Court that due to the obvious "Kindergarten" level of Legal Representation he was receiving at the cost of $1M/month on contingency; his research and discovery of the resume of Jaryl Rencher states that he is a former employee of Kirton McConkie Law offices.

321.    The associated failure to disclose this clear "Conflict of Interest" to client for his evaluation prior to accepting them as Lawyers; is a Breach of their Fiduciary Duty of Disclosure, Good Faith, Loyalty, and always acting in the client's best interest.

322.    Plaintiff demands that each of these actions be included within the scope of "Conspiracy" and that both KMC Management and Dallin H Oaks be held responsible along with the associated Defendants from Rencher Anjewierden.

## SEVENTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGGRAVATED CONFLICT OF INTEREST)

323.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

324.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

325.    Plaintiff Brett L Eliason was informed by Sr Partner Tom Mecham of KMC Law on February 11th, 2019 that there was an "undisclosed conflict of interest" and to leave.

86

326.    The attached correspondence from Tom Mecham and Craig McCullough clearly states that Kirton McConkie Law Offices represented Lisa Stephens in her duties as "Sole Trustee" and "Personal Representative" of Joyce S Eliason's Estate and Trust.

327.    Tom Mecham told Plaintiff that "in order for Kirton McConkie to legally represent Lisa Stephens, Max D Eliason would have needed to have been legally deemed "incompetent" through the Third District Court.

328.    Plaintiff Brett L Eliason confirmed with the Third District Court in Salt Lake City that no legal proceeding had been commenced and that Max D Eliason was by all legal rights, still considered Competent.

329.    The Board of Directors of Kirton McConkie including President Lee Wright were aware of this Breach before the Plaintiff ever entered the doors of Kirton McCONKIE.

330.    Kirton McConkie by all definition meets the criteria for being an agent of the LDS Church as Principal with the allegation that the "Lords Lawyers" are under the direct control of Dallin H Oaks.

331.    Plaintiff once again affirms that the only thing he has ever asked of Defendants is transparency and documents to which he was entitled as a Trustee, Personal Representative, and Beneficiary.

332.    Had Kirton McConkie not breached this "Conflict of Interest" intentionally under the premise of "Conspiracy to Embezzle" the Estates of Max and Joyce Eliason; this complaint would not be in front of the Court this day.

333.    Kirton McConkie and Dallin H Oaks' actions suggest their position as the largest and most Prestigious and LDS Accredited Law Offices in the State of Utah is immune to following the laws of man and of God due to the Power they wield with Dallin Oaks.

334.    When Plaintiff filed a temporary injunction under the duress of losing the business which he started with his mother Joyce Eliason, he assumed that the Defendant Kirton McConkie was managed by individuals with integrity who had already acknowledged their guilt and would therefore not contest Plaintiff's request for financial relief.

335.    Rather than doing one gesture of good faith towards a clearly distraught beneficiary of Max and Joyce Eliason who had paid them to protect both their estates and specifically Brett L Eliason.

336.    Defendant was shocked to receive a response from Sr Partner and Manager of the Litigation Department Chris Hill stating that the Law Firm "denied" every allegation (which they had already admitted guilty to) and stated that the "root cause behind this complaint was greed from the Plaintiff"?

337.    Plaintiff was nauseated to find out that in addition to representing Lisa Stephens as Fraudulent Trustee and Fraudulent Personal Representative, the Prestigious Law Office also represented Bryan Stephens whom Joyce S Eliason had specifically told Kirton McConkie to never allow to be involved in any of her estate planning whatsoever.

338.    As the evidence continued to fall into place, it was also revealed that Kirton McConkie represented Plaintiff's Brother Mark D Eliason and his wife Laurie Eliason who now holds the position of Trustee on each entity to which he has yet to receive any accounting or response to any of his questions as to the location of the assets.

339.    Under the Laws of the State of Utah Rule 1.7 concerning "Conflict of Interest with Current Clients", It is illegal to a lawyer to represent a client if adverse to another.

340.    It is alleged that Kirton McConkie under the direction of the Principal LDS Church and Dallin H Oaks that this "unholy" representation of a greedy son-in-law was

88

empowered since 2013 to gain control of both of the Max and Joyce S Eliason Estates through whatever criminal action necessary to "cover up and bury" the evidence.

341. A management team with any integrity or humanity would have immediately taken the appropriate steps of good faith to ensure the missing estates were returned to the integrity which Max and Joyce Eliason had paid for.

342. Plaintiff begged the Board of Directors to "choose the right" and recognize that Craig McCullough was guilty of the obvious Bribery and that Max D Eliason was still the legal "Settlor and Co-Trustee" to the Joyce S Eliason Trust to which Lisa Stephens had illegally been appointed to.

343. Utah Law concerning Conflict of Interest states clearly under Rule 1.7 (a)(2) that a concurrent conflict of interest exists if the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the Lawyer.

344. Kirton McConkie and Dallin H Oaks cannot possibly claim any possible defense of ignorance of this law with President Oaks serving as a former Judge of the Utah Supreme Court.

345. Utah Law Rule 1.7 (3) under General Principles has also been breached which clearly states that a pre-existing Conflict of Interest as it pertained to Max and Joyce Eliason would have prohibited Craig McCullough from accepting the representation.

346. As stated in previous paragraphs, there is clear evidence to support that this relationship was secured using "Fraudulent Misrepresentation which is criminal.

347. The Estate Plan of Max and Joyce S Eliason should have been considered very simple despite the very large amounts of wealth.

89

348.     Bryan P Stephens is not only a CPA, but also advertises himself as a Professional Estate Planning Attorney under his company and Defendant SMC Management, LLC.

349.     Plaintiff Brett L Eliason alleges that he and Bryan Stephens easily could have worked together on behalf of Max and Joyce Eliason and paid $199 from Legal Zoom for any needed documents in the unlikely event that Bryan Stephens did not have specific forms.

350.     It is alleged that Bryan and Lisa Stephens knew that Max and Joyce Eliason's only request was that everything be equal including the positions of Trustee, Beneficiary, Agent, and Personal Representative.

351.     The texts from Bryan Stephens to Plaintiff in 2019 clearly display an angry Bryan Stephens responding to Plaintiff's requests for transparency met with "you are a needy, greedy, sibling who is full of shit and needs to go get a job".  He further indicated that Plaintiff needed to secure his own attorney after Defendants had illegally cut off Plaintiffs Max and Brett Eliason from accessing their own accounts.

352.     Defendant Bryan Stephens further indicated that he disagreed with the cries of both Max and Joyce Eliason of 33/33/33 from the first day until the last by stating that "Plaintiff did not know how lopsided 33/33/33 is" which was a clear message that it was not the wishes of Max and Joyce Eliason that were to be done, but those of a jealous and resentful sister and brother-in-law who have betrayed every level of Trust and Love which was placed on them as members and descendants of the Eliason's.

353.     Family and the ancestors that proceeded them.  to be empowered through criminal bribes to use both his professional license as a CPA and the associated legal licenses of the attorneys which each defend the Defendants to this day.

354.    The heinous nature of this conspiracy and aggravated criminal Conflict of Interest was magnified following the death of Joyce S Eliason under the alleged direction and orders of Dallin H Oaks to utilize Craig McCullough as a weapon against Plaintiff by having him "appear" in an undisclosed role of "Trust Protector" which Tom Mecham reminded Plaintiff carried no Fiduciary Duty to either Max or Brett Eliason.

355.    Plaintiff will swear under oath that Craig McCullough was never spoken of as being a "Trust Protector" of anything; nor would he have the ability to accept such a position due to the obvious conflict of interest between the three equal beneficiaries to whom he owed a duty of impartiality and care as the attorney for Max and Joyce Eliason.

356.    The attached correspondence between Brett L Eliason and President Lee Wright exposes the rage of Plaintiff who was acting on behalf of his father and their client Max D Eliason as an Agent with a Durable Power of Attorney to "fire" Craig and to revoke the Joyce S Eliason Trust dated October 28th, 2015 since Max D Eliason was discovered to be the Settlor.

357.    In the most disgusting response imaginable within society, the decision of doing anything of "good faith" was replaced with unprecedented assaults against Kirton McConkie's own client Max D Eliason and the only child that was there to protect his father.

358.    The pleas of "mercy" to Dallin H Oaks were met as discussed earlier with Max D Eliason suddenly being needed to be deemed "incompetent" and "adversarial.

91

## EIGHTH CAUSE OF ACTION:

## (CONSPIRACY TO FALSIFY OR ALTER A GOVERNMENT RECORD)

359.   Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

360.   Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

361.   Joyce S Eliason died on May 21st, 2018 with Craig McCullough and Kirton McConkie owing Joyce S Eliason a Fiduciary Duty of Care and Loyalty with any and all disclosures of existing conflicts of interest.

362.   Tom Mecham admitted guilt to this fact to Plaintiff on February 11th, 2019 wherein he was told to secure his own legal counsel.

363.   Joyce S Eliason was administered a coma inducing level of illegally obtained morphine on April 20th, 2018 just three days after the Defendants forced a drugged Joyce S Eliason to execute the Second Amendment to the Joyce S Eliason Trust.

364.   This document illegally appointed Lisa Stephens as the "Sole Trustee" which Kirton McConkie stood behind and empowered the fraudulent disbursal of all assets from both of the Estates of Max and Joyce S Eliason.

365.   Joyce S Eliason asked to see a copy of whatever she had signed prior to going into her coma which was DENIED by both Lisa Stephens and Craig McCullough.

366.   Joyce S Eliason screamed at Lisa Stephens on the eve of May 3rd 2018 to have Craig McCullough "reverse whatever had been done on April 17th.

367.   A text from Joyce S Eliason to Brett Eliason gave him the approval to reverse.

368.    Craig McCullough appeared on the morning of May 4th, 2018 with Notary Debra Demke and informed Joyce S Eliason and Plaintiff Brett L Eliason that everything was reversed as per the request.

369.    Plaintiff and his mother were not provided with a copy of said documents until Tom Mecham provided them in February of 2019 upon demands from Plaintiff.

370.    Included in the Exhibits is the Court Filing to Judge Royal Hansen in the Probate Court of the Third District Court with the application for the Informal Probate dated June 22nd, 2018.

371.    The Civil number 190901999 indicates in Section 6 that Craig McCullough has included a copy of the Will dated October 8th, 2015 along with the Second and Third Codicils Dated April 17th, 2018 and May 4th, 2018 respectively.

372.    Craig McCullough knowingly submitted fraudulent documents to the Probate Court which intentionally changed the Original Trustee Succession order as per section 6.1 of the Joyce S Eliason Trust dated October 28th, 2015.

## FRAUDULENT CHANGE OF TRUSTEE

Below is the verbiage taken from the original Joyce S. Eliason Trust dated October 28th, 2015 with Max D. Eliason and Joyce S. Eliason clearly identified as the original Trustees; and with Max Eliason being the Settlor of the Trust and the intended Co-Trustee upon the death of Joyce S Eliason.

### ARTICLE 6 TRUSTEE PROVISIONS

**6.1 Trustee Succession. The following will act as original Trustees, and as successor Trustees in the following order of succession:**

**Joyce S. Eliason and Max D. Eliason. If either should cease or fail to serve, the survivor shall serve alone.**

**(2) Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason. If a Trustees should cease or fail to serve, the survivor(s) shall continue to serve.**

**A Trustee chosen by the majority of the beneficiaries voting by right of representation as defined in Section 8.8.6, with the natural or legal guardian voting for legally disabled beneficiaries.**

93

373.    The original Trustee Succession order clearly indicates that upon the death of Joyce S Eliason, that Max D Eliason is the Settlor and Co-Trustee of this A/B Trust as per the intention of the Estate Plan

374.    The Second Amendment dated April 17th, 2018, The Third Amendment dated May 4th, 2018, and the Trust Certification dated May 4th, 2018 have each fraudulently indicated that The Section 6.1 as stated in the original Trust Document was something very different from what was intended and legally binding within the original Trust.

375.    There is no arguable way of interpreting this provision as anything but Max D. Eliason being the surviving Co-Trustee and clearly indicates that upon the death of both Co-Trustees and Settlors, that all three beneficiaries serve as joint Trustees.

**That verbiage was replaced with the following intentionally deceptive Trustee information within each of the three separate documents executed on April 17th 2018 and May 4th, 2018 respectively**

**ARTICLE 6 TRUSTEE PROVISIONS**

*6.1 Trustee Succession. The following will act as original Trustees, and as successor Trustees, in the following order of succession:*

    *(1) Joyce S. Eliason.*

    *(2) Lisa Eliason Stephens.*

    *(3) A Trustee chosen by each of Settlor's descendants who are over the age of 25 and are not legally disabled, voting by right of representation as defined in Section 8.8.6, so there is one Trustee serving from each family line, who shall serve jointly. If all of the descendants of a Settlor's child are under age 25, the then serving Trustees of the Trust shall select a Trustee to represent that family line until a descendant reaches age 25.*

376.    The Trustee Succession has been completely erased as per the Settlor's intentions, and replaced with the combined Max and Joyce Eliason estates handed to the Stephens on a Dallin H Oaks approved and Kirton McConkie golden platter to the Stephens with the complete removal of Max D Eliason having existed as Co-Trustee.

94

377.    Joyce S Eliason executed a First Amendment to each Trust Document on December 8th, 2017 when she realized that the chemotherapy had failed to slow the growth of the tumors in her one remaining lung.

378.    The reason for said First Amendment to each instrument was requested by Joyce S Eliason was to protect her youngest son from her oldest two children as she realized there was a level of jealousy and resentment from Mark Eliason and Lisa Stephens toward their younger brother.

379.    Kirton McConkie refuses to provide Plaintiff with any of the First Amendments concerning the Trusts and Wills and Codicils of either Max and Joyce Eliason given the difficulty to explain why Max and Joyce would go from mandatory three Co-Trustee signatures on every document to "Brett L Eliason will never be a Trustee nor will one of his children until they reach the age of 25.

380.    Craig McCullough has prepared and executed a "Trust Certification" of the Joyce S Eliason Trust dated May 4th, 2018 which states that he has reviewed the contents of the Joyce S Eliason Trust dated October 28th, 2015 showing the Fraudulent modification to the original Trustee Succession order as per the original Trust Documents.

381.    The Trust Certification is attached in the Exhibits and states that "The following provisions are found in the trust agreement and may be relied upon by anyone dealing with any of the original Trustees or their successors as a full statement of the matters covered in such provisions".

382.    The Defendants are knowingly concealing a flagrant and intentional criminal action of falsifying or altering a Government Record with no Defense available.

95

383.    Dallin H Oaks is the "High Managerial Agent" of The Corporation of The President of The Church of Jesus Christ of Latter-Day-Saints.

384.    Brother Dallin H Oaks is the President of The Quorum of Twelve Apostles of The Church of Jesus Christ of Latter-Day Saints.

385.    Kirton McConkie, PC is an agent who has been authorized by the Principal to act as the Lawyers of The Church of Jesus Christ.

386.    Under the branch of law called "Agency" which relies on the common law proposition "QUI FACIT PER ALIUM, FACIT PER SE"; "HE WHO ACTS THROUGH ANOTHER, ACTS PERSONALLY'.

387.    This is a parallel concept to vicarious liability and strict liability (in which one person is held liable for the acts or omissions of another) in criminal law or torts.

388.    Under the rules concerning Apparent or Ostensible Authority, the actions and words of President Dallin H Oaks led Plaintiffs to believe that The LDS Church has an Apparent Authority.

389.    Plaintiffs have all acted reasonably and in good faith, and Plaintiff hereby states that any third party in the similar position would have believed that an Apparent Authority existed and are entitled to assume such from the Prestigious 'Lawyers of Jesus Christ Himself".

390.    Within the laws of Authority by Virtue of a Position Held, the Partners of the Law Firm and all Executives and Senior Employees with decision-making authority by virtue of their declared position have apparent authority to bind the corporation.

391.    Under the Law (CV-2-204); The actions of Dallin H Oaks and the Board of Directors of KMC Law implies "Criminal Responsibility of a Corporation" to the LDS Church.

96

392. The Liability to each partner or Senior Executive is considered Joint and Several for both the Law Office of Kirton McConkie and The Corporation of the President of The Church of Jesus Christ Himself.

393. The LDS Church has been accused by the media to consistently cover-up and bury sexual crimes with victims stating the authorities treated the actions as if a "sin" punishable by excommunication when the criminal justice system should have been employed in order to identify sexual predators and avoid additional victims.

394. The Principal has used the law office of Kirton McConkie as its "Sword and Shield" and indicated that they were following the recommendations of their lawyers in using the philosophy that "the sacrifice of the one is justified for the well being of the many".

395. Plaintiff alleges that he and his father who paid Kirton McConkie/LDS Church to protect him and his wife along with their estates and their beneficiaries has committed extensive criminal actions which have decimated the family and robbed both of the Estates of Max and Joyce Eliason.

396. Plaintiff would remind the Defendants that he represents the army of ancestors who settled this valley with the original saints and that their voices are all being heard within this complaint as each of their respective legacies has been stolen and distributed illegally by the LDS Church to which all have been faithful.

397. The leaders of the church and its affiliated law offices are all aware of the potentially devastating blow to their credibility and reputation within the society and the world.

398. Any person who is capable of committing such levels of heinous abuses of power to protect and conceal their own fraud should not deserve freedom or power.

## NINTH CAUSE OF ACTION:

## (ABUSE OF OFFICE BY PRESIDENT DALLIN H OAKS)

399.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

400.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

401.    Dallin H Oaks is the current President of the Quorum of the Twelve Apostles of The Church of Jesus Christ of Latter-Day-Saints.

402.    Millions of faithful members of the LDS Church sustain him in a position wherein he will be the next Prophet, Seer, and Revelator for the LDS Church.

403.    Dallin H Oaks is a former Utah Supreme Court Judge with extensive knowledge within the laws of Estate Planning and would be considered an expert in understanding concepts herein surrounding the A/B Trust of Max and Joyce Eliason.

404.    Dallin Oaks appeared on April 12th, 2012 at the Main Office of Kirton McConkie and dedicated the building as if the structure was a "Holy Temple" and promoted the Lawyers therein as representing "Jesus Christ Himself".

405.    Plaintiff alleges that this action was used to attract the wealthy LDS Couples such as Max and Joyce Eliason into the doors of the "Temple" of McConkie to promote revenue within the newly developed retail mall known as City Creek which is owned by the LDS Church.

406.    Plaintiff questions the motivation of Dallin H Oaks and Kirton McConkie Sr Management to conceal this crime with Craig McCullough empowered even more.

98

407.    President Oaks refuses to respond to desperate pleas from Plaintiff who has sent numerous communications through President Lee Wright begging his "Prophet to Be" to intervene in this tragic display of corruption which has destroyed his family.

408.    President Dallin H Oaks and the entire Law Office of Kirton McConkie are knowingly representing Bryan P Stephens, Lisa Stephens, Mark Eliason, and Laurie Eliason and it is assumed that this was the intention of the Defendants from the first day of this relationship.

409.    The fact that the Defendants have sought retaliation against their victims/clients rather than take action against fraudulent bribery among other allegations would lead a third party to believe that the "raping and pillaging" of elderly couples' wealthy estates is part of the "Business Plans" of Dallin H Oaks and KMC Law.

410.    Attached is the copy of the Eliason 2015 Trust which was not provided to Plaintiff until May of 2019 on the same day that Craig McCullough removed him as Trustee and Beneficiary under the guise of "Trust Protector" who illegally represents two of the three beneficiaries.

411.    This Trust was supposedly replaced by the Eliason 2016 Trust and yet it is apparent by the 2015 Trust Tax returns that the entity is the recipient of illegally removed oil and gas mineral rights which were never to be removed from the Eliason Eight, LLC family oil company.

412.    In an absolute mockery of the wishes of Max and Joyce Eliason who paid KMC Law to protect them; the Eliason 2015 Trust which should no longer exist provides the authority for Sr Partner Craig McCullough to create new "Beneficiaries" of his choosing to receive profits and assets via newly formed Charitable Trusts.

413.    Plaintiff's demands for the accounting and disclosure of everyone that has been a beneficiary of the stolen oil mineral rights and the prosecution of all who have knowingly been the recipient of said assets stolen from the Estates of Max and Joyce Eliason have gone unheard.

414.    The paralyzing manner in which the Defendants have attacked Max and Brett Eliason as being deemed "incompetent" and "insane" respectively is the basis for the allegation that there are "Secret Beneficiaries" who have replaced the Plaintiff and who receive monthly oil proceeds from the "stolen booty".

415.    PLAINTIFF DEMANDS THAT EVERY DROP OF OIL SINCE 2012 BE ACCOUNTED FOR THROUGH A FORENSICS AUDIT TO FIND OUT THE LOCATION OF THE EMBEZZLED ASSETS FROM THE TWO ESTATES.

416.    Dallin H Oaks has said from the pulpit to "Remember who you serve; and to who you report".

417.    Dallin H Oaks as the Managerial Authority working for the "Principal" Corporation of the President of the LDS Church serves the third parties to whom he owes a Fiduciary Duty.

418.    Whereas Max D Eliason has been deemed incompetent by the Lord's Lawyers; Dallin H Oaks reports to Plaintiff Brett L Eliason in his capacity as Trustee and Agent of his "Father's House" he seeks to protect.

419.    Plaintiff alleges that Dallin H Oaks is responsible for multiple criminal actions which continue to happen each day that the Apostle of "God" dismisses his responsibilities to the customers he enticed to entrust KMC Law with their sacred estates.

100

## TENTH CAUSE OF ACTION:

## (CRIMINAL RESPONSIBILITY OF CORPORATION OR ASSOCIATION)

420. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

421. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

422. The Utah Law (CV 76-2-204) states that a corporation or association is guilty of said offense when the conduct constituting the offense is authorized, solicited, requested, commanded, or undertaken, performed, or recklessly tolerated by the board of directors or by a high managerial agent acting within the scope of his employment and in behalf of the corporation or association.

423. Plaintiff alleges that Dallin H Oaks is a High Managerial Agent who as the President of The Quorum of the Twelve Apostles of The Church of Jesus Christ of Latter Day Saints and that every action taken since February 11th, 2019 against Plaintiffs has been done on an aggravated conspiracy level with directions given by himself and that of The Board of Directors of KMC Law.

424. Plaintiff has contacted members of the Board of Directors incessantly since they admitted guilt of representing Lisa Stephens and not their real client Max D Eliason.

425. As per the attached communication in the exhibits, Tom Mecham literally told Plaintiff to "quit bothering Senior Management" and to deal with Craig McCullough and Lisa Stephens; both of whom were known by KMC Board of Directors to have committed criminal actions against Plaintiff.

## ELEVENTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGGRAVATED AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS)

426.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

427.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

428.    Plaintiff started a business entity in October of 2016 known as USCAN 360 initially and was later known as "My 3-D Me, LLC" and asserts that the intentionally malicious actions of The Defendants fall within the following definition:

*Tortious interference with contract rights can occur when one party convinces another to breach its contract with a third party (e.g., using blackmail, threats, influence, etc.) or where someone knowingly interferes with a contractor's ability to perform his contractual obligations, preventing the client from receiving the services or goods promised (e.g., by refusing to deliver goods). The tortfeasor is the person who interferes with the contractual relationship between others. When a tortfeasor is aware of an existing contract and deliberately induces a breach by one of the contract holders, it is termed, "tortious inducement of breach of contract".[4]*

*Tortious interference with business relationships occurs where the tortfeasor intentionally acts to prevent someone from successfully establishing or maintaining business relationships with others. This tort may occur when one party knowingly takes an action that causes a second party not to enter into a business relationship with a third party that otherwise would probably have occurred. An example is when a tortfeasor offers to sell a property to someone below market value knowing they were in the final stages of a sale with a third party pending the upcoming settlement date to formalize the sale writing. Such conduct is termed "tortious interference with a business expectancy".[2]*

*The above situation are actionable only if someone with actual knowledge of, and intent to interfere with, an existing contract or expectancy between other parties, acts improperly with malicious intent and actually interferes with the contract/expectancy, causing economic harm.[2]*

429. Plaintiff asserts that he and his mother Joyce S Eliason worked together and funded almost 100% of the costs needed to open the business known as "My 3-D Me" in Trolley Square.

430. Plaintiff and Joyce Eliason worked daily to provide the financing and implement the associated business plan within very unique revolutionary idea of printing 3-D statuettes of both people and animals.

431. Joyce S Eliason's dying wish was to see this entity open and to have herself "scanned" so as to leave a 3-D Statue within the store as one of the key founders of said entity.

432. It has been admitted by Kirton McConkie that there was an undisclosed conflict of interest between Bryan and Lisa Stephens whose wishes were completely contrary to those of the "clients of KMC Law".

433. After working on technology and funding all of the costs related to said entity, Joyce S Eliason and Brett L Eliason signed personal guarantees on the retail space within Trolley Square where said operation had two functioning 3-D Booths needed to scan clients.

434. Plaintiff and Joyce S Eliason had accepted Robert Bair, Pauline Bair, Jon Bair, and Zac Bair to be 50% owners at the inception of the entity with the Bair family promising to provide 50% of all of the expenses included therewith.

435. Plaintiff and his mother Joyce S Eliason contributed approximately $750K into the startup costs which included their personal guarantees on the 5-year $390K lease for the space in Trolley Square.

436. The Bair Family members were responsible for correctly setting up the technology within the retail outlet and stated they could accomplish said action within 10 days after the lease was signed in February of 2018.

437. The evidence will show that the Bair Family members were in constant communication with Joyce S Eliason who contributed capital as they requested.

438.    It is alleged that Bryan and Lisa Stephens intention from the beginning of the relationship was to not only disown their younger brother and Plaintiff; but to destroy every source of income he had available and to remove his existing ownership illegally through fraudulent documents prepared by Kirton McConkie.

439.    Bryan and Lisa Stephens had anticipated long before the death of Joyce that they would be in complete control of the Eliason Family estates and Lisa Stephens decided to undermine the entity in which mother and brother had both worked so hard on for months.

440.    Unbeknownst it to Joyce and Brett; the partners associated with this business (Bair Elite) were purposely awaiting the death of Joyce having stalled and sabotaged the retail business in Trolley Square wherein both Joyce and Brett had placed a personal 5-year guarantee.

441.    Brett Eliason's sister and "self-appointed trustee" had gone behind his brother's back and made an undisclosed partnership with Bair Elite with the intention of providing business opportunities for the Stephens while intentionally destroying the source of income Plaintiff anticipated upon his mother's death.

442.    Joyce S Eliason died on May 21st, 2018 without ever seeing the store opened.

443.    The Bair Family members allegedly used intentional deception and breach of all covenants of good faith and Fiduciary Duty to their partner by intentionally allowing him to drain his cash assets into the company while knowing they were not going to allow it to open.

444. Bryan and Lisa Stephens worked in coordination with the Defendants Robert Bair, Pauline Bair, Jon Bair, and Zac Bair in having the business partners of Brett Eliason "quit" as partners at the same time Lisa Stephens told her younger brother that "there is no payday for you" in reference to Plaintiff's request as to the status of his mother's estate.

445. This knowingly put Plaintiff in risk of foreclosure and eviction from Trolley Square.

446. Plaintiff contacted Kirton McConkie Attorney Craig McCullough via the attached email and requested that he assist in pursuing the Bair Family who had knowingly betrayed the Estate of Joyce S Eliason and that she would "have their heads" on a platter for deceiving both her and her son whom Craig was paid to protect.

447. Craig McCullough refused to respond to e-mails concerning the matter and also refused to see Plaintiff Brett L Eliason in person.

448. Defendant was forced to take out a $600K hard money loan on his residence in October of 2018 in order to stop the foreclosure of his home and to fund the costs needed to get My 3-D Me open and running.

449. Defendants including the Bair Family successfully sabotaged the operation by stealing the software associated with the technology along with computer hardware which Plaintiff Brett L Eliason had paid for.

450. Plaintiff Brett L Eliason's own siblings refused to advance $10K to their younger brother from his own percentage ownership in Eliason Eight, LLC despite being fully aware that they had been criminally robbing plaintiff and their parents "blind" since 2013.

451.    This all done in conjunction with Kirton McConkie's Board of Directors fully aware of the offensive action they were taking against their own client's son along with the wishes of Joyce S Eliason.

452.    Kirton McConkie cut off Plaintiff's access to all of the inheritance money he was entitled to in addition to closing the family business accounts of Eliason Eight, LLC and Eliason Enterprises, LLC.

453.    Plaintiff was forced into filing a civil complaint against his partners in February of 2019 when Trolley Square was once again threatening eviction.

454.    Plaintiff had been paying rent on a space which was intended to be opened in March of 2018 without the knowledge that the "self-appointed trustee" had targeted this entity to be her own families rather than that of Plaintiff.

455.    Plaintiff had paid tens of thousands of dollars for the website development which the Bair Family stole when they "quit" in September of 2018.

456.    Plaintiff found his exact site with all of his associated inventory under the name of "Soul Capture" which was taken down immediately when Plaintiff inquired.

457.    Plaintiff alleges that Lisa Stephens as "Sole Trustee" was actually funding the Defense of the business partners who are now represented by Darwin H Bingham and Joseph A Skinner of Scalley Reading Bates Hansen & Rasmussen PC.

458.    This allegation would infer that Kirton McConkie and Lisa Stephens in their Fiduciary roles owed to Max and Joyce Eliason, refused Plaintiff access to his own money to file a complaint on behalf of himself and his mother's estate.

459.    It is alleged that rather that assist Plaintiff, the Defendants were knowingly using Plaintiff's own money to defend against his own complaint which is now added herein

while Plaintiff is still being illegally denied access to his own assets for litigation purposes.

460.    As identified in the damages section of this complaint, there are multiple intentional and criminal assaults by Defendants with the intention of depriving Plaintiff of his rightful cash flow which has inflicted incalculable damages both financially and emotionally.

## TWELVETH CAUSE OF ACTION:

## (CRIMINAL RESPONSIBILITY OF PERSON FOR CONDUCT IN NAME OF CORPORATION OR ASSOCIATION)

461.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

462.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

463.    Under Utah Code (CV 76-2-205) it states "A person is criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or on behalf of a corporation or association as if done for his own behalf"

464.    Dallin H Oaks and the Entire Board of Directors of Kirton McConkie Law Offices are all knowingly attacking Plaintiff and his father Max D Eliason in the most heinous are criminal manner possible with the intent of covering up and "burying" the evidence.

465.    Tom Mecham of Kirton McConkie was fully aware of the undisclosed "conflict of interest" in February 2019 to which he admitted fault to Plaintiff Brett L Eliason in telling him "to seek outside counsel to protect his rights and those of his father".

466.    Plaintiff alleges that Dallin H Oaks is knowingly covering up Mafia Style Estate Planning which goes unchecked under his abuse of power among the lawyers in the Mormon Community.

467.    He above all others should be held responsible for the complete dismissal of the laws of man and god given his hypocrisy in denouncing members of the LGBTQ community with many of them committing suicide due to his abuse of power and office.

## THIRTENTH CAUSE OF ACTION:

## (BREACH OF FIDUCIARY DUTY BY LISA STEPHENS TOWARDS KYLIE MARIE ELIASON AND BRITTNIE LYNNE ELIASON AS BENEFICIARIES)

468.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

469.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

470.    Tom Mecham and Craig McCullough provided Plaintiff with a copy of the Second Amendment to the Joyce S Eliason Trust dated April 17th, 2018 in February of 2019.

471.    The Amendment was executed by Joyce S Eliason who did not have the authority to sign since she was a Co-Trustee of this entity and did not have the unilateral authority to execute such a document without the signature of Max D Eliason who appears as the "Settlor" of the Joyce S Eliason Trust dated October 28th, 2015.

472.   Defendants also have no way of explaining how the original "Trustee Succession" order from section 6.1 could be modified without intentional criminal intention of depriving Plaintiff of his rightful position of Co-Trustee which this document relieves him of.

473.   Included in said Amendment is the creation of the "Grandchildren's Trust" to which millions of dollars were illegally diverted to within this document.

474.   Kirton McConkie nor Lisa Stephens will provide a copy of the "Grandchildren's Trust" which should have included Plaintiff Kylie M Eliason and Plaintiff Brittnie L Eliason as beneficiaries.

475.   It is alleged that Kirton McConkie not only facilitated the illegal appointment of Lisa Stephens as "Sole Trustee" of the Joyce S Eliason Trust, but also illegally named her as "Sole Trustee" of the "Grandchildren's Trust".

476.   Plaintiff alleges that the verbiage within the Second Amendment allows for Lisa Stephens to utilize her discretion in dismissing her nieces Kyle and Brittnie of any and all benefits from this trust which is uncertain as to its existence given the deathbed signature which is considered invalid.

477.   Lisa Stephens is currently withholding a stipend of $500/month in addition to this.

478.   As beneficiaries of any Trust which has been created for the "Grandchildren", Kylie and Brittnie Eliason should also be receiving statements as to the balances within their respective accounts.

479.   As is the case with every single trust within the estate planning of Max and Joyce S Eliason, Defendants refuse to provide one statement of accounting or notification of the existence of the assets which until proven otherwise; have been embezzled.

480.    Plaintiff once again informs Defendants that all that is being requested is full disclosure as to the location of the assets of Max and Joyce Eliason.

481.    Lisa Stephens was illegally appointed Sole Trustee with the empowerment coming from Kirton McConkie and Craig McCullough who admittedly had an undisclosed conflict of interest relationship thereby nullifying the validity to any and all documents within the Estate Plan of Max and Joyce Eliason.

## FOURTEENTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED BRIBERY OR OFFERING OF A BRIBE)

482.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

483.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

*Bribery is defined as the offering, giving, receiving, or soliciting of something of value for the purpose of influencing the action of an official in the discharge of his/her public or legal duties. Bribery is a crime which directly affects the state at large through its officers and representatives. [i] The offer or promise of a gift in an attempt to bribe is equal to a gift actually made for the corrupt purpose. [ii] However, there are several elements that must be proved in order establish the crime of bribery.*

*Intent is one of the elements that must be established to prove the crime of bribery.[iii] Corrupt intent is the intent to receive a specific benefit in return for the payment.[iv] The intent to use the opportunity to perform a public duty for acquiring an unlawful personal benefit or advantage by the person who receives the bribe amounts to a corrupt intent.[v]*

*Some statutes make attempted bribery a crime and so long as a bribe is offered or promised with the requisite intent to influence any official act, then it is presumed that the*

110

*crime is committed.[vi] The guilt of a bribe taker depends solely upon his/her own corrupt intention and the defendant cannot escape conviction upon the ground that the bribe giver had no criminal intent.[vii]*

*Another element required to constitute the crime of bribery is that a bribe must involve something of value that is used to influence the action or nonaction of the recipient. However, the bribe must not be necessarily in the form of money. It is sufficient if the receiver gets anything of value to himself/herself from the bribe.*

*Therefore, in order to constitute a solicitation of a bribe the thing solicited must be either valuable or beneficial. It need not be property or money but can be some act.*

484.   Tom Mecham stated to Plaintiff Brett L Eliason on February 11th, 2019 that Kirton McConkie illegally represented Lisa Stephens as Sole Trustee since Max D Eliason was still alive, still competent, and considered the Settlor/Co-Trustee of the Joyce S Eliason Trust dated October 28th, 2015.

485.   Plaintiff Brett L Eliason immediately told Sr Management that any and all compensation paid to Craig McCullough and Kirton McConkie should be considered by law as a "bribe" since Craig was being compensated to act against his clients.

486.   Prior to Kirton McConkie humiliating Max D Eliason on May 29th, 2019 by having him deemed incompetent; both Max and Brett Eliason demanded the detailed billing of how much compensation Craig McCullough and Kirton McConkie had been paid by the Eliason family.

487.   Ken Olsen of the KMC Board of Directors refused to even speak to Max D Eliason and told Plaintiff Brett L Eliason that both he and his father were considered "adversarial".

488. Plaintiff has found evidence of one advance to Craig McCullough from Eliason Eight, LLC made payable to Craig McCullough which was not approved by Plaintiff nor has any legality for this entity to pay Craig McCullough for any work he has done therewith.

489. Mr. Craig McCullough is currently representing Bryan Stephens, Lisa Stephens, Mark Eliason, and Laurie Eliason and suddenly appeared as a "Trust Protector" who is knowingly acting in complete and illegal "conflict of interest" to the duty of loyalty Kirton McConkie owes Max and Joyce Eliason and the beneficiaries of their clients whom they dismissed without notice.

490. Craig McCullough has been authorized within the 2015 Eliason Family Trust to designate new beneficiaries of his choice including undisclosed "Charitable Trusts" which can receive illegal revenues from illegally removed oil and gas mineral rights which should never have been removed from Eliason Eight, LLC.

491. The "Dying Declaration" of Joyce S Eliason which was made to Plaintiff was "Brett, Lisa is a crook and is guilty of hiding the evidence; check the wires between her and McCullough". Defendants refuse to provide a response to Joyce's wishes.

492. Plaintiff alleges that the only logical reason for his business partners and other individuals who have and have not been named was due to some form of bribery or extortion for otherwise "friends and business partners" to turn against Plaintiff with designs to accommodate the desires of Defendants to cause Plaintiff's Financial and Emotional demise.

493.    Plaintiff demands that a complete accountability be held towards each Defendant as to their participation in the defiance of the Estates of Max and Joyce Eliason including those actions meant to intentionally hurt Plaintiffs Brett Eliason, Max Eliason, Joyce Eliason, Kylie Eliason, Brittnie Eliason, or Veronique Eliason.

494.    Those who have bribed or accepted bribes of any kind should be held accountable by the maximum allowance of law.

## FIFTEENTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGGRAVATED DEFAMATION)

495.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

496.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

497.    Plaintiff alleges that the Defendants created a detailed plan to assassinate the character and credibility of Plaintiff Brett L Eliason so as to make extended family members isolate and alienate him upon the death of his mother on May 21st, 2018 and has continued through the present as Plaintiff still cannot visit his own father.

498.    Defendants filed a false complaint against Plaintiff with the Utah Adult Protective Agency alleging that Brett L Eliason was "abusing and exploiting" Max D Eliason both financially and emotionally.

499.    Defendants sent Plaintiff a "cease and desist" from trespassing at his own childhood home where his father still lives due to "threatening letters" which Defendants refuse to provide as proof to Plaintiff.

500.    Lisa Stephens and Bryan Stephens informed the Unified Police Department that they had a legal Restraining Order against Plaintiff from visiting his own father which was never legally obtained.

501.    Kent Snider who supposedly represents the best interests of Max D Eliason stated to Judge Skanchy of the Third District Court that Plaintiff's father "hated his guts and never wanted to see him again".

502.    Under Utah Code Sec. 45-2-2(1) (1993) states that a violation exists if the statements challenge a person's integrity, virtue, or reputation; exposing them to hatred, contempt, or ridicule.

503.    Plaintiff heard his own niece Amy Stephens tell the Unified Police Department that her Uncle was "certifiably insane" as she showed him "proof" on her cell phone which Defendants refuse to provide Plaintiff.

504.    The nauseating truth of the matter is that Kirton McConkie knew that Plaintiff's rights under the Durable power of attorney allowed for the revocation of the Joyce S Eliason Trust which Plaintiff demanded on behalf of his father and so they needed to take any criminal action necessary to keep Plaintiff from his own father thereby abusing and exploited as per the definition of "Abuse of a vulnerable Adult".

505.    Plaintiff was unable to visit his father on his 85th birthday on October 28th, 2019 in addition to Thanksgiving due to a criminally minded Attorney Kent Snider and all Defendants who know that there is no legal document  in existence nor proof of one instance of abuse of his father or his mother who he protected with his life as he cared for both of them daily for five years.

506.   Shame on Kirton McConkie and Dallin H Oaks who are supporting the demise of both Max D Eliason and his son Brett L Eliason's lives in order to protect the crimes they have knowingly committed against the laws of man and God.

## SIXTEENTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED BREACH OF THE LAW OF CO-REPRESENTATIVES)

507.   Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

508.   Jurisdiction and Venue are proper for this Court pursuant to Utah Code Ann. §78A-5-102 and §78B-3-307.

509.   Kirton McConkie stated to Plaintiff that the Law Firm and Craig McCullough represented Lisa Stephens in her role as "Sole Trustee" and "Personal Representative" of Joyce S Eliason.

510.   It has been determined that Lisa Stephens is neither the Sole Trustee nor the Personal Representative since the Last Will and Testament of Joyce S Eliason clearly states that Max Eliason, Mark Eliason, Lisa Stephens, and Brett Eliason are considered to be the "Personal Representative" of Joyce S Eliason or the majority.

511.   Kirton McConkie is knowingly representing Lisa Stephens, Bryan Stephens, Mark Eliason, and Laurie Eliason with the full understanding that they have no legal document that allows them to represent any of their clients in any capacity which Plaintiff Brett L Eliason does not also hold.

115

512.    Furthermore, Kirton McConkie is representing Bryan P Stephens and Laurie Eliason who are not even beneficiaries or intended Trustees as per the documentation which is unacceptable by an organization that is held up by the community as "The Lawyers of Jesus Christ Himself".

513.    Plaintiff was considered an equal Co-Trustee on the Eliason 2015 Trust which has been used to steal tens of millions of dollars in oil mineral rights from Eliason Eight, LLC.

514.    Plaintiff was told this entity was closed in 2016 and was never given one statement nor even told he was a Trustee or Beneficiary.

515.    Plaintiff was illegally removed as Trustee by a biased and un-disclosed Trust Protector Craig McCullough in May of 2019 on the same day he was informed of its existence.

516.    Plaintiff was also illegally removed from the Eliason 2016 Family Trust on the same day which now holds more stolen oil mineral rights than the family company of Eliason Eight, LLC.  This entity required a three-person mandatory signature by all three co-trustees.

517.    Plaintiff was also illegally removed from Eliason Eight, LLC when he demanded accountability for the stolen oil properties.  This being done by Craig McCullough who has no authorization available to remove Plaintiff as a member/manager.

518.    Plaintiff has also been removed from Eliason Enterprises, LLC by Craig McCullough who once again has no power to steal Plaintiff's 33% ownership of an entity whose assets should never have been removed from the company.

519.   Plaintiff reasserts that this is yet one more display of "abuse of power" and "office of Dallin H Oaks" who is to be held responsible as the corporate "High Managerial" Agent from the LDS Church whether he pleads ignorance or not.

520.   The violation of this Utah Law is found in Utah CV (75-3-716).

# SEVENTEENTH CAUSE OF ACTION:

# (CONSPIRACY TO COMMIT AGRAVATED FRAUD WITHIN THE JOYCE S ELIASON LAST WILL AND TESTAMENT)

521.   Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

522.   Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

523.   The Joyce S Eliason Last Will and Testament was executed on October 28th, 2015.

524.   The First Codicil to the Joyce S Eliason Last Will and Testament was executed on December 7th, 2017 which Joyce demanded from Kirton McConkie in order to protect her youngest son Brett Eliason (Plaintiff) from his siblings by requiring a mandatory three signatures on every document concerning the Estate of Joyce S Eliason.

525.   Defendants refuse to provide a copy of said First Amendment and it was omitted from the documents submitted to probate by Craig McCullough and Lisa Stephens on June 21st, 2018.

526.    The Second Codicil to the Last Will and Testament of Joyce S Eliason was dated on April 17th, 2018 which is the same date which has been identified as the undisclosed execution of the Second Amendment to the Joyce S Eliason Trust.

527.    Joyce S Eliason was forced to sign a document deemed "fraudulent" and she was also under the influence of an illegal prescription of morphine.

528.    The Second Amendment has clearly been created to embezzle the assets of the Joyce S Eliason Estate and page 2 is copied below:


### SECOND CODICIL TO THE
### LAST WILL AND TESTAMENT OF JOYCE S. ELIASON

I, Joyce S. Eliason, of Salt Lake County, State of Utah, hereby make this Second Codicil to my Last Will and Testament, which Last Will and Testament was originally signed on the 28 th day of October, 2015.

1.    I hereby revoke in its entirety the First Codicil to The Last Will and Testament of Joyce S. Eliason dated the 7th day of December, 2017.

2.    I hereby amend my Last Will and Testament to add an additional Article 6 to read as follows:

### 1 ARTICLE 6 EXERCISE OF POWER OF APPOINTMENT

6.1 Exercise of Powers of Appointment. I hereby exercise those power of appointments granted to me in Sections 4.5.4 and 5.1.2 of The Max D. Eliason Trust, dated the 28 th day of October, 2015, and direct that upon my death, the Trustees shall transfer any and all property which is subject to the above power of appointments in trust for the benefit of the beneficiaries of The Max D. Eliason Trust dated the 28 th day of October, 201 5, the terms of which trust shall be identical to the terms and conditions of The Max D. Eliason Trust, dated the 28 th day of October, 2015, with the exception that Sections 6.1 and 6.7 shall read as follows::

529.    The only amendment Plaintiff is aware of that his mother requested before dying is the First Amendment to each document within the Estate Plan which was meant to protect her youngest son and Plaintiff from the jealousy and the resentment of his older siblings.

530.    The First Amendment executed on December 7th, 2017 is revoked in the first line of the Second Codicil purposely eliminating the only request Joyce ever made of Kirton McConkie.

531.    It then proceeds to add section 6.1 "Exercise of Powers of Appointment" which refers to powers granted to Joyce S Eliason within the Max D Eliason Trust dated the 28th, day of October, 2015.

532.    Whereas Kirton McConkie is committing "fraudulent concealment" of documents which have never been provided to Plaintiff nor his own father; it is impossible to know what powers Joyce is executing.

533.    Plaintiff alleges however that this is the clause in question which the Defendants use to state that Max D Eliason was deemed incompetent by Joyce S Eliason prior to her death.

534.    Bryan P Stephens and Craig McCullough are both Professional Estate Planners and are fully aware that Joyce S Eliason had no right under Utah Law to deem her husband "incompetent" without the due process of law.

535.    The paragraph goes on to state that "upon her death, the Trustees shall transfer any and all property to the beneficiaries of the Max D Eliason Trust dated October 28th, 2015.

536.    The action of transferring all of the assets of Joyce Eliason is illegal as per law.

537. This intended action defeats and reverses the entire purpose of an A/B Trust wherein the assets are intended to stay within the Marital Trust until the death of the Survivor Max D Eliason who is still alive.

538. To do otherwise is considered a taxable event and included in the assets of Joyce S Eliason is the 8,000-acre ranch known as Stillman Seven with an estimated replacement value exceeding $50M if one were to try to acquire such a rare piece of land.

539. Plaintiff is disgusted by the horrific manner in which the Defendants abused and exploited his mother prior to her passing which included a dose of morphine on April 20th, which was meant to "put her down" following this unholy corruption had been completed.

540. The document continues with the following change to Section 6.1 of the original Trustee Succession and is as follows:

> **6. I Trustee Succession. The following will act as original Trustees, and as successor Trustees, in the following order of succession:**
>
> **(1)   Lisa Eliason Stephens.**
>
> **(2)   A Trustee chosen by each of Settlor's descendants who are over the age of 25 and are not legally disabled, voting by right of representation as defined in Section 8.8.6, so there is one Trustee serving from each family line, who shall serve jointly. If all of the descendants of a Settlor's child are under age 25, the then serving Trustees of the Trust shall select a Trustee to represent that family line until a descendant reaches age 25.**

541. This once again represents an intentional and illegal modification to the A/B Trust and excludes Max D Eliason from his rights as Co-Trustee and Settlor.

542. Plaintiff would also question Mr. Craig McCullough and Defendants to explain how it would be possible for Joyce S Eliason to suddenly reverse her decision of just weeks before to ensure Plaintiff be considered a "mandatory equal" so as to protect him and his descendants to "he cannot ever be Trustee and his family cannot be represented until his youngest child reaches the age of 25?

543. The Third Codicil to the Last Will and Testament of Joyce S Eliason is considered fraudulent because the request Joyce made after coming out of her morphine induced coma was to reverse anything done on April 17th, 2018.

544. This Third Codicil is a mockery to Joyce Eliason and the laws of Man and God which basically states "We abused and exploited you on the 17th of April and Joyce S Eliason acknowledges that she was abused and exploited".

545. Plaintiff has demanded the e-mail from Lisa Stephens to Craig McCullough on May 3rd, 2018 wherein she had supposedly informed the "attorney of Joyce" to reverse all documentation completed on April 17th, 2018 and make certain it was now 33/33/33 for each child.

546. This should not be a "client/attorney" privileged document and Max D Eliason demanded that Defendant produce this information prior to KMC Law having him deemed "incompetent".

547. Whereas it has already been established that Tom Mecham admitted guilt concerning the "undisclosed conflict of interest"; the Defendants are fully aware that the conversations and collusion between Bryan and Lisa Stephens and Craig McCullough are done in criminal breach of "Fiduciary Duty" which in turn associates all partners of KMC Law to the same penalties on a joint and several vicarious basis.

## EIGHTEENTH CAUSE OF ACTION:

## (CONSPIRACY TO APPOINT FRAUDULENT PERSONAL REPRESENTATIVE OF JOYCE S ELIASON)

548.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

549.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

550.    The Last Will and Testament of Joyce S Eliason states the following concerning her appointment of the designated "Personal Representative" which KMC Law states they use as the authority to represent Lisa Stephens:

## ARTICLE 2 DESIGNATION OF FIDUCIARIES

2.1 **Designation of Personal Representatives. I nominate the following as Personal**

**Representatives of my estate, to act in the sequence named, each to serve in the event the preceding person or persons, as applicable, fails to qualify or after qualifying fails or ceases to act:**

**(l) Max D. Eliason, Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason to serve jointly or the survivor(s) with the act of a majority being the act of the Personal Representative.**

551.    Plaintiff has not been provided a copy of any authorization by Defendants which legally removes him as a qualified Personal Representative of his mother Joyce S Eliason and all actions at the time of death of Joyce S Eliason should have included the votes of Max D Eliason and Brett L Eliason in order to be considered legal. All actions taken by Lisa Stephens as Personal Representative are considered void.

552.    Kirton McConkie therefore has no basis for its representation of Lisa Stephens as "Sole Trustee" nor as "Personal Representative" and does so knowing it is a crime.

553.    Kirton McConkie and Dallin H Oaks mock the laws of God and Man by representing Bryan Stephens (whom Joyce Eliason specifically informed them to never listen to), Lisa Stephens (who has been fraudulently named as "Sole Trustee" and "Personal Representative), Mark D Eliason (who is knowingly betraying and attacking his younger brother), and Laurie Eliason (who has replaced Plaintiff Brett L Eliason in all roles of Trustee and Member Manger of his own companies.

# NINETEENTH CAUSE OF ACTION:

# (CONSPIRACY TO COMMIT AGGRAVATED RETALIATION AGAINST A WITNESS, VICTIM, OR INFORMANT)

554.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

555.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

556.    Tom Mecham of KMC Law informed Plaintiff on February 11th, 2019 that the law firm represented Lisa Stephens as "Sole Trustee" and "Personal Representative" of the Joyce S Eliason Trust dated October 28th, 2015.

557.    Tom Mecham stated "In order for this to have been done legally; Max D Eliason would have needed to have been deemed legally "incompetent" which was never done until KMC Law realized the potential liability and chose to "Obstruct Justice".

558.    As Per Utah Code 76-8-508.3, it is considered to be a criminal action if the Defendants actions are meant to cause "Harm" as defined by any physical, emotional, or economic injury or damage to a person or to his property, reputation, or business interests.

559.    This includes any actions against a victim or a victim's family which would cause the above stated harm.

560.    The evidence would fill volumes concerning the proof of Plaintiff and his innocent family as being intentionally destroyed emotionally by betrayal and malicious actions meant to cause the emotional and financial demise of Plaintiff and his daughters.

561.    Defendant Kirton McConkie under the direction of Dallin H Oaks as the High Managerial Agent of the Church of Jesus Christ of Latter-Day Saints chose to have Plaintiff deemed "incapacitated and/or insane" and simultaneously had Kent Snider and Plaintiff's siblings file a false accusation to the Adult Protective Services Agency alleging "abuse and exploitation" of Max D Eliason which is considered a heinous attack on Plaintiff's reputation.

562.    Defendants attacked every business interest of Plaintiff including his newly launched hedge fund "OSIA" and the entity which Joyce S Eliason and Plaintiff initiated known as "My 3-D Me" in Trolley Square as discusses elsewhere herein.

124

563.    Defendants also illegally denied Plaintiff access to any and all accounting for every document requested concerning the Eliason 2015 and Eliason 2016 Trusts whose accounts at Zions Bank were all closed and reopened without the required signature of Plaintiff Brett L Eliason

564.    This was done in order to prohibit Plaintiff from accessing his lawful funds.

565.    Defendants also removed Plaintiff as a Member/Manager of Eliason Eight, LLC and of Eliason Enterprises, LLC which was illegal as per the attached Resolution executed in December of 2017 as per the instructions of Joyce S Eliason.

566.    Defendants shamelessly closed all of the associated accounts relating to Eliason Eight, LLC and Eliason Enterprises, LLC and stated in a text from Bryan Stephens to Plaintiff that he was guilty of fraudulently removing money from his own account in order to hold off the foreclosure of his home and the eviction of his business in Trolley Square.

567.    The Defendants have maliciously continued to violate this law as it became apparent within the Law Office of Rencher Anjewierden that both Jeryl Rencher and Mike Collins had been secretly negotiating with Kirton McConkie Sr Management on how to sabotage the subject complaint and/or force the Plaintiff to accept what Jeryl Rencher stated to be "An Offer Plaintiff Could Not Refuse".

568.    As Stated previously, Plaintiff discovered that his attorney Jeryl Rencher was a former employee of Kirton McConkie which he failed to disclose as an obvious "conflict of interest" against the client and Plaintiff to whom he owed a fiduciary duty.

569.    The most heinous and unacceptable form of retaliation which still exists is the intentional alienation of Plaintiff from his own Hero and Father Max D Eliason whom Kirton McConkie was paid to protect.

570.    The Defendants backed and supported by Dallin H Oaks have shown the most disgusting behavior while dismissing all laws of God and Man in order to "bury and cover up" this display of Corruption and Abuse of Power from those who owed the Eliason Family a Fiduciary Duty and compassion following the disclosure of crime.

## TWENTIETH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED WIRE FRAUD)

571.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

572.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

573.    This law is defined under U.S. Code 1343 as Fraud by Wire and states that "Whoever, having devised or intending to devise any scheme or artificer to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representation, or promises, transmits or causes to be transmitted by means of wire shall be fined and/or imprisoned as per the definition of this U.S. Code.

574.    As per the attached tax returns for the Eliason 2016 Trust, it is apparent that the Defendants have knowingly stolen Oil Mineral Rights which should never have been taken out of Eliason Eight, LLC and that said Trust has more income than the Family LLC which was pillaged by KMC illegally.

575.    During the calendar year of 2018 alone, the Defendants embezzled $722K from Eliason Eight, LLC and deposited it into the Eliason 2016 Trust.

576. This amount was then wired to the Internal Revenue Service to pay the income taxes for the recipients of the illegal and undisclosed properties stolen via the Eliason 2016 Trust which was supposedly owned 33% by Plaintiff.

577. The two wires to the IRS in 2018 alone represent two counts of Wire Fraud and it is anticipated that an investigation will expose multiple counts of violating this law.

## TWENTY-FIRST CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED LARCENY THEFT)

578. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

579. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

580. The Elements of Theft are described as follows:

### *Larceny Definition: Elements of the Crime*

*The following elements must be proven in order to obtain a conviction for larceny:*

- *The unlawful taking and carrying away;*
- *Of someone else's property;*
- *Without the consent of the owner; and*
- *With the <u>intent to permanently deprive</u> the owner of the property. Unlawful*

*Taking*

*The first stage of a crime that comes under a larceny definition involves the unlawful taking of another's property. For immovable property, carrying away can be satisfied where the perpetrator has taken <u>control of the property</u> and removed its use and enjoyment from the owner.*

*For larceny to apply, the property in question must belong to someone else. <u>People who co-own property can also commit larceny if they deprive any co-owners of their right to the property.</u>*

127

*Even if someone intends to steal a piece of property, no larceny occurs if the owner consents to the <u>transfer of ownership</u> of the property. <u>However, it would be a crime if the</u> <u>owner transferred the property due to another person's</u> <u>deceit or fraud,</u> although these situations are covered by other property crimes.*

*The final element of larceny involves the taker's intent to permanently deprive the owner of the use and enjoyment of the property.*

*Larceny is a specific intent crime, which means that the person taking the property must specifically intend to commit larceny.*

***Degrees of Larceny***

**Effective 5/8/2018**
**76-6-412.  Theft -- Classification of offenses -- Action for treble damages.**

*(1) Theft of property and services as provided in this chapter is punishable:*
   *(a) as a second-degree felony if the:*
    *(i) value of the property or services is or exceeds $5,000;*

*(2) Any individual who violates Subsection 76-6-408(1) or Subsection 76-6-413(1), or commits theft of property described in Subsection 76-6-412(1)(b)(iii), is civilly liable for three times the amount of actual damages, if any sustained by the plaintiff, and for costs of suit and reasonable attorney fees.*

581.    The actual value of the stolen property is unknown and unaccounted for pending the requested forensic audit to be performed on all accounting and documentation of the Estates of Max and Joyce Eliason which were entrusted to be protected by Kirton McConkie.

582.    All indications show that the entire amount of the combined estates has been embezzled with proof found within the minimal and fraudulent documents which have been provided to Plaintiff.

128

583.    Plaintiff once again demands Defendant to simply show transparency as to the legality of the allegations herein and all charges shall be dropped immediately.

584.    Plaintiff has yet to receive one document regarding the Estates of Max and Joyce S Eliason which has not been intentionally frauded except for the Durable Power of Attorney which Max Eliason executed on behalf of Brett L Eliason but which has fraudulently revoked through malicious and criminal actions of aggravated conspiracy to commit defamation of character and the false reporting of Plaintiff's character.

585.    The deprivation of these assets has destroyed Plaintiff financially as he has lost two condos in Hawaii, his credit, his business they sabotaged, etc. He was obligated to get an "overnight" hard money loan on his residence at 634 Ridge Top Lane in North Salt Lake in October of 2018 following the announcement by his sister that "there is no payday for you" and the collusion of his business partners extorting him in sabotage as per his sisters' instructions.

586.    This loan cost approximately $100k in closing costs with a 12% interest rate with $600k outstanding as of the present. The note came payable on November 1st, 2019 and Plaintiff's attorneys Jaryl Rencher and Mike Collins refused to present the matter to Judge Mow on an injunctive basis stating that the loss of his personal residence and the equity therein was not a sufficient reason to go before the judge.

587.    Plaintiff was forced to negotiate with the finance company to capitalize the $18K short term extension however the $6,250/month payment of interest only is crippling and the only reason Plaintiff has this hard money loan reverts back to the "Breach of Fiduciary Duty" to Max and Joyce Eliason.

588.     Plaintiff Brett Eliason had pleaded with his siblings to assist so as to not allow him to lose his store at Trolley Square nor his residence he paid $1.5M for not to mention the hundreds of thousands of dollars invested in "My 3-D Me".

589.     His cash need was for less than $10k to hold off the eviction of the "still not open" retail store in Trolley where the lease payments which were guaranteed by both Brett L Eliason and his mother Joyce S Eliason exceeded $10k/month and sat vacant for over a year while Plaintiff's sister and so called "Sole Trustee and Personal Representative" utilized lies and bribes to entice his partners.

590.     Whereas the Defendants knew that Max D Eliason had sufficient means to provide the financial backing necessary to save his youngest son's business and personal residence; the Defendants meticulously drained all of the personal accounts of Max D Eliason to below $10K so as to not allow him enough capital to commence the litigation he demanded against his own Law Firm and Daughter.

## TWENTY-SECOND CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED THEFT BY DECEPTION WITHIN THE ELIASON 2015 TRUST)

*Utah Code 76-6-405 states that theft by deception is:*

*(1)     As used in this section, "puffing" means an exaggerated commendation of wares or worth in a communication addressed to an individual, group, or the public.*

*(2)     (a) A person commits theft if the person obtains or exercises control over property of another person: (i) by deception; and (ii) with a purpose to deprive the*

*other person of property. (b) The deception described in Subsection (2)(a)(i) and the deprivation described in Subsection (2)(a)(ii) may occur at separate times.*

**It shall be proven at trial that Bryan Stephens and Craig McCullough would utilize deception with malicious intentions over the course of the entire relationship wherein the non-family members would use secret (and still undisclosed) trusts and agreements without authority in gifting or taking all ownership of everything possible between both estates.**

**Both Craig McCullough and the Stephens would go on to claim that various documents were done to facilitate the asset acquisition for estate planning purposes and yet demands for transparency are still ignored.**

**Plaintiff recently obtained bank statements going back to 2013 on Eliason Eight, LLC and was shocked to find that several hundred thousand dollars had gone to the 2015 Eliason Trust and a preliminary indication is that the Stephens children are the recipients of ownership in both of the Family Entities via this vehicle.**

**A complete audit of exactly what has happened within these entities shall be required prior to trial wherein the defendants shall have the opportunity to disclose under whose authority they have been operating to make such "gifts" to their own children without disclosure. Every document shall be required which has been executed without notification or explanation provided to Kirton McConkie's client; Max D. Eliason.**

591.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

592.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

593.    The Eliason Family 2015 Trust was created on December 30th, 2015 with the intention being to provide the financial vehicle for the Beneficiaries to purchase the remaining 58% of the parent's portion (Max and Joyce Eliason) of Eliason Eight, LLC and Eliason Enterprises, LLC.

594.    Plaintiff alleges that the Defendants had immediately and knowingly transferred tens of millions of dollars of oil mineral rights to the entity which were never supposed to leave the entity of Eliason Eight, LLC.

595.    The evidence will prove that the revenues immediately dropped from close to $6M/year to less than $3M despite Plaintiff watching notifications of new oil well discoveries throughout the Uintah Basin which should have inflated net income.

596.    Despite repeated demands for a copy of the Eliason 2015 Trust from Craig McCullough; Plaintiff did not receive any information relating to said entity until 2019.

597.    Plaintiff had been informed by Craig McCullough that the Eliason 2016 Trust had replaced the 2015 Trust and all assets transferred so as to prevent Plaintiff from knowing that he was an equal Trustee and Beneficiary of said entity.

598.    Plaintiff Brett L Eliason was removed as Trustee/Beneficiary on May 20th, 2019 which was the same day he was sent the documents.

599.    Plaintiff alleges that the entire document has been fraudulently modified in order to provide the "approval" for Craig McCullough to act as "Trust Protector" and to justify the theft of the tens of millions of dollars which have been embezzled through this entity.

600.    Page 1 of the Eliason 2015 Trust specifically states that "The Settlors establish this Trust for the benefit of the Beneficiaries" in Section 1.3 under Trust Purpose.

601.    The names of the Beneficiaries are correctly listed as Mark Dean Eliason, Lisa Eliason Stephens, and Brett Lynn Eliason in Section 1.1.1; however, they are listed as "Settlor's Children" instead of "Beneficiaries".

602.   Plaintiff reminds the Defendants and the Court that an angry Joyce S Eliason rebuked Bryan Stephens and Craig McCullough for presenting anything other than a complete equality among her children in a letter and text from her to Craig McCullough on November 7th, 2016.

603.   That statement and anger would naturally be indicative of any prior undisclosed and secret meetings which were held without her knowledge including in 2015.

604.   It is alleged that Craig McCullough and Bryan Stephens utilized criminal concealment and theft by deception and added whatever pages needed to be included within this trust prior to giving a copy to Plaintiff Brett L Eliason in 2019.

605.   Within the Beneficiary Section 1.2 on page one of the Eliason 2015 Trust is a very suspicious approval under 1.2.3 and 1.2.4. which states that Any charitable or tax-exempt organization that may be added as a beneficiary of the Trust pursuant to Section 6.5.2 hereof; and Such other persons as identified in this Trust Agreement.

606.   Section 1.4 of the document states that the property allocation of this trust shall go to the Max D Eliason Dynasty Trust and the Joyce S Eliason Dynasty Trust neither of which were ever discussed with Settlors nor Plaintiff.

607.   Plaintiff reminds Defendant that this Trust was never established to hold assets and the very fact that there is an intentional generation skipping provision to two Trusts which have never been revealed as existing is considered Fraudulent Theft by Deception.

608.   Plaintiff also demands to understand how it is possible for an entity which has existed since 2015 never produce one statement to the Beneficiary and Plaintiff Brett L Eliason nor has Kirton McConkie ever divulged to Plaintiff that he was a rightful Trustee.

609.    Plaintiff is repulsed to read that in Section 6.5.2 of The Eliason 2015 Trust that the "Trust Protector" has been empowered with rights which have knowingly been written in order to provide justification and authorization for crimes already committed within this Trust since its inception in December of 2015.

610.    The Settlors Max and Joyce Eliason would have never permitted a "bribed" attorney who was in fact representing Bryan Stephens, Lisa Stephens, Mark Eliason, and Laurie Eliason be considered for the position of an "unnecessary" Trust Protector to which Craig McCullough claims was put into place in each document.

# TWENTY THIRD CAUSE OF ACTION:

# (CONSPIRACY TO COMMIT AGGRAVATED AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

611.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

612.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

*Elements*

1. *Defendant acted intentionally or recklessly; and*
2. *Defendant's conduct was extreme and outrageous; and*
3. *Defendant's act is the cause of the distress; and*
4. *Plaintiff suffers severe emotional distress as a result of defendant's conduct.*[8]

### 2 *Intentional or reckless act*

*It is not necessary that an act be intentionally offensive. A reckless disregard for the likelihood of causing emotional distress is sufficient. For example, if a defendant refused to inform a plaintiff of the whereabouts of the plaintiff's child for several years, though that defendant knew where the child was the entire time, the defendant could be held liable for IIED even though the defendant had no intent to cause distress to the plaintiff.*

### 3 *Extreme and outrageous conduct*

**The conduct must be heinous and beyond the standards of civilized decency or utterly intolerable in a civilized society.** *Whether the conduct is illegal does not determine whether it meets this standard. IIED is also known as the tort of "outrage", due to a classic formulation of the standard: the conduct must be such that it would cause a reasonable person to feel extremely offended, shocked, and/or outraged.*

*Some general factors that will persuade that the conduct was extreme and outrageous (1) there was a pattern of conduct, not just an isolated incident; (2) the plaintiff was vulnerable and the defendant knew it; (3) the defendant was in a position of power; (4) racial epithets were used; and (5) **the defendant owed the plaintiff a fiduciary duty.**[9][10]*

613.    The level of aggravated conspiracy by those in authority and holding a position of Power is inconceivable within this complaint.

614.    Defendants all were very much aware of the vulnerability of both Plaintiff and Max and Joyce Eliason and utilized their status within the LDS Church and as the most Prominent Lawyers in the State of Utah to attack and assault Plaintiff and his daughters in the worst imaginable ways possible.

615.    Any person within society whether it be a "Prophet of President" or anyone who has a Fiduciary Duty of care which was breached herein should suffer the associated penalties for the inhumane treatment with exactly the same amount of compassion and humanity displayed towards their victims.

616.   The evidence exposed herein by all of the supporting documents and communications will display the most heinous form of betrayal and the associated intentional infliction of emotional distress coming from those that Plaintiff loved and trusted the most in his life.

617.   The truth and facts of the complaint prove that Lisa Stephens was "unleased" as the fraudulent "sole trustee" with her only goal being to make certain that her younger brother not live long enough to expose this corruption to the public.

618.   Plaintiff has found numerous mentions of "Life Insurance" policies which could be taken out on his head without disclosure and the inference that this took place would be a witness as to how vicious and malicious the mind of the Defendants has been since the inception of this relationship in 2013.

619.   There is likewise numerous mentions of undisclosed Life Insurance Policies on Joyce S Eliason which would have been impossible to obtain without fraud.

620.   There is not an amount sufficient on earth to compensate Plaintiff and his daughters for being attacked by the next "Prophet, Seer, and Revelator" overseeing the 150 Lawyers of the Lord who all acted in conspiracy with plaintiffs greedy and resentful siblings in orchestrating a "Picasso of Corruption" gone bad.

## TWENTY FOURTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED EXTORTION/BLACKMAIL)

621. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

622. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

***76-6-406 Theft by extortion as defined by Utah Code is as follows:***

***(1)     A person is guilty of theft if he obtains or exercises control over the property of another by extortion and with a purpose to deprive him thereof.***

***(2)     As used in this section, extortion occurs when a person threatens to... (c) Engage in other conduct constituting a crime; or (i) Do any other act which would not in itself substantially benefit him but which would harm substantially any other person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships.***

623. Plaintiff alleges that Bryan and Lisa Stephens utilized their newfound wealth in convincing Brett's business partners to "quit" in September of 2018 thereby causing the destruction of the entity which was supposed to be open in early March of 2018 so as to permit Joyce S Eliason to have a "statuette" created before she died.

624. Following the directions by his fraudulently appointed "Trustee" and fraudulently appointed "Personal Representative"; Bair Elite, LLC members with Jon Bair would text Brett on September 17, 2018 stating that they "quit".

625. They would demand $15k initially and when Brett agreed in order to save the operation; the amount was raised to $75k overnight knowing they had been following the instructions of Lisa and Bryan Stephens for months.

626. The intentional theft of both the software and hardware which was purchased by Plaintiff and his mother Joyce S Eliason was being held for "ransom" under the directions of Bryan and Lisa Stephens whose children were enabled to borrow limitless amounts of non-recourse debt to take-over this operation following the fraudulent Second Amendment to the Joyce S Eliason Trust was executed on April 17th, 2018.

627. Plaintiff paid Defendant David Werner $7,500 to "negotiate" a compromise with Robert Bair, Pauline Bair, Jon Bair, and Zac Bair; but all was done in vein as the Defendants were unknowingly being supported by the Trustee who owed her younger brother the duty of Loyalty as the "Sole Trustee" of her mothers estate and intentions.

628. Plaintiff pled directly with Craig McCullough to understand that Joyce S Eliason never would have tolerated such an intentional level of betrayal and theft from either her or her son who had trusted the Bair Family who was literally the 50% owners merely by the grace of Plaintiff as a gesture of kindness and friendship which was spitefully used against him even through the current litigation. It is alleged that while Plaintiff was forced into "Pro-Se" litigation; Lisa funded the legal costs of the Bairs.

629. The action of taking the property of the Plaintiff by the Defendants and then demanding $75K to have the Partners become amicable to opening the store which Plaintiff worked on with them and his mother for two years meets the definition of Extortion as per Utah Law.

# TWENTY FIFTH CAUSE OF ACTION:

# (CONSPIRACY TO COMMIT AGGRAVATED BREACH OF CONTRACT)

630.   Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

631.   Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

*A contract is a written or spoken promise, or series of promises, between two parties. Each party to a contract promises to perform a certain duty or pay a certain amount. The agreement is meant to be legally enforceable, so that each party will have legal recourse if the agreement isn't kept.  A breach of contract occurs when the agreement is not kept, because one party to the contract does not fulfill their obligation according to its terms.*

*A breach can occur if a party fails to perform within the time frame specified in the contract, does not perform in accordance with the terms of the agreement, or fails to perform whatsoever. If one party fails to perform while the other party fulfills her duties under the contract, the performing party is entitled to legal remedies for breach of contract.*

***Anticipatory Breach:*** *Contracts generally have set dates on which "performance," or fulfillment of the contract's obligations, are required.*

- *If one of the parties commits a breach prior to that time, then they have committed an anticipatory repudiation, or anticipatory breach. If this occurs, the non-breaching party may immediately consider the contract breached, and take legal action.*
- ***Compensatory Damages:*** *The most common legal remedy, compensatory damages are a monetary award to compensate the aggrieved party. A court can order the person who breached the contract to pay the aggrieved party enough money to get what they were promised by the terms of the contract.*
- ***Restitution:*** *A court orders restitution if they order the breaching party to pay back the other person the amount the aggrieved party paid initially to make the aggrieved party "whole" again.*
- ***Punitive Damages:*** *If the breach of contract is especially heinous, a court may order punitive damages, meant to punish the breaching party for breaking the terms of the contract.*

632.   Plaintiff alleges that the contract between Kirton McConkie and Max and Joyce Eliason was breached intentionally with the full understanding that the Defendant was working for Bryan Stephens, Lisa Stephens, Mark Eliason, and Laurie Eliason.

633.   Defendant Kirton McConkie clearly breached the contract with Max and Joyce Eliason and admitted to doing so when Tom Mecham divulged to Plaintiff on February 11th, 2019 that they represented Lisa Stephens which would be illegal unless Max D Eliason had been deemed "incompetent" legally which had not happened.

634.   The actions which Kirton McConkie took to "cover up" this crime is considered "retaliation against a witness and/or a victim" and "compounding of a felony" and is considered unforgivable for the Law Firm which was paid to protect Max and Joyce Eliason and their youngest son equally and who instead has turned and attacked those to whom the LDS Church and Kirton McConkie owed a Fiduciary Duty.

## TWENTY SIXTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGGRAVATED MURDER OF JOYCE ELIASON)

635.   Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

636.   Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

637.   Plaintiff restates that on April 17th, 2018; Bryan Stephens, Craig McCullough, and Lisa Stephens worked in collusion to deliver a Second Amendment to the Joyce S Eliason Trust and a Second Codicil to the Joyce S Eliason Last Will and Testament to an illegally morphine drugged Joyce Eliason for execution.

140

638.    The Amendments to the Joyce S Eliason Trust and Last Will and Testament are extremely critical due to the sudden change from a mandatory three beneficiary and three Co-Trustee decision on all matters.

639.    This one day of modifications literally was meant to be the pivotal point in securing the ability to manipulate both of the Estates of Max and Joyce Eliason and depriving Plaintiff Brett L Eliason from his birthright.

640.    The texts between Plaintiff and his sister Lisa Stephens clearly indicate that Brett Eliason was surprised that his mother had begun taking morphine since he had attended each appointment with Dr Akerly at the Huntsman Hospital.

641.    Plaintiff has acquired the medical records of Joyce S Eliason indicating that her doctor never prescribed said morphine which Joyce had started taking just three days prior to the execution of these critical amendments.

642.    The texting conversation between Plaintiff and his sister will illustrate very odd statements by Lisa Stephens concerning the health of her mother on the night of April 20th, 2018 wherein Plaintiff was told how very sick she was but to NOT come over to stay with his mother whom he knew had been very sick the past few days.

643.    Plaintiff alleges that the Defendants knowingly had Joyce S Eliason execute the documents in question and then administer an overdose of illegal morphine knowing that it would be a fatal blow to her already slowed breathing.

644.    Once Lisa Stephens realized that Plaintiff was going to spend the night by his mother's bedside, she told him to turn his mother's oxygen down to 4 upon his arrival.

645.    Plaintiff was surprised because his mother's typical oxygen flow was 3, and Plaintiff did not understand why she had gone from the usual 3 to 5.

646.    Upon review of the symptoms of Joyce Eliason along with the contraindications of the morphine with Joyce's clonazepam, there is a clear indication that the morphine was knowingly interacting with Joyce's other drug and this would result in the required "5" level of oxygen.

647.    Plaintiff alleges that Lisa Stephens knowingly instructed her younger brother to arrive at his mother's bed side and to be the one who "pulled the plug" on his mother's life as the reduced oxygen level would be insufficient to sustain the life of Joyce S Eliason.

648.    Plaintiff arrived very late on the night of April 20th, 2018 and spoke to his mother for approximately 15 minutes before she would fall asleep.

649.    Joyce S Eliason asked Plaintiff an odd question of "Brett, are you OK with the changes I made to the Trust?".

650.    Plaintiff responded "It is your money mother dear; you are free to do with it as you please".

651.    Joyce Eliason indicated that she was uncertain what she had signed but that it was concerning the grandchildren's $500/month but indicated that there had been a significant change which her brother Larry Stillman had recommended.

652.    Joyce would fall asleep without knowing how to expand on the idea and would fall into a morphine induced coma that night which forced Brett to call 911 to save her.

**The following is a text conversation between Lisa Stephens and Brett Eliason which begins on April 16th, 2018 and finishes after a coma Joyce would enter into from an apparent morphine overdose on April 20th, 2018.  This is important to recognize given that Joyce Eliason is about to sign Amendment Two on April 17th wherein the Defendants took control of the entire estate via fraudulent Trustee modification described above.**

4/16/2018

iMessage Message received from Lisa Stephens (Eliason) (+18012599138)

4/16/2018 9:41:34 AM

iMessage Message sent 4/16/2018 12:14:53 PM



**This would be the first time Plaintiff heard that his mother was on morphine; just one day prior to the signing of the important document. A disclosure within the medical reports from Huntsman Hospital would reveal that no prescription was given and that morphine was a contraindication not to be taken with the clonazepam which she was already taking as it slows the breathing dramatically. Why would one ever administer a drug which slows breathing to a woman with lung cancer who only has one lung remaining?**

4/18/2018

iMessage Message received from Lisa Stephens (Eliason) (+18012599138) 4/18/2018 4:27:21 PM

Hey!

I have a couple of meetings tonight and I really need to go to both.
Would you let me know how she is when you stop by later? She's having a really sick day & I'm worried about leaving her

**It should be noted that Defendant was aware of Plaintiff being at Trolley Square trying to open the retail store "My 3-D Me" which Joyce wanted to see open prior to her death. Defendant made no mention whatsoever as to an "undisclosed" amendment Joyce had signed the day before.**

4/20/2018

iMessage Message sent 4/20/2018 5:32:03 PM

Has mom improved at all through the day Lis? I'll head over later and sleep there as we discussed but how heartbreaking!

iMessage Message received from Lisa Stephens (Eliason) (+18012599138) 4/20/2018 5:44:35 PM

I don't know what to do. It's like she's had the stomach flu these last three days. I can't get her to eat or drink much at all.

She's about the same as this morning. I'm so sad for her I had to come have a meltdown at my house. And Dads just been squeezing her feet all day. He's my hero.

iMessage Message received from Lisa Stephens (Eliason) (+18012599138) 4/20/2018 5:49:40 PM

It's getting up to go to the bathroom that's the huge challenge. I've been trying to get her to eat or drink so she might gain the strength to without fainting. But then she has to go to the bathroom! And she's too weak! I don't quite know what to do

**Three days after the amendment was executed; Lisa would state that her mother's health was declining rapidly. The nausea to which reference is made concerning Joyce Eliason is a common side effect of a morphine overdose. This level of nausea was a condition heretofore not seen by Plaintiff.**

iMessage Message sent 4/20/2018 7:10:46 PM

I never could have imagined that a human could bear such torture! I've said it before but it literally feels like she's been nailed to her cross for 5 plus years now; and we go and weep at her feet!

I feel so ashamed to go into frozen "I cannot physically move from my bed today" from this Chinese water torture that has lasted over 10% of yours and my adult (conscious of life) lives!

Here she's fighting harder than anyone I've ever heard of and I'm unable to function in society? Wtf? Shame on me!

Thank god for your strength Lis! You somehow keep it all together despite being buried in your own life's issues! I'm so sorry to be more of a burden on you than an aid!

144

But back to the cross; I'd take a death at Calvary that lasted a few hours (and Christ was a Demi God so to speak; with perfect knowledge of where he'd be that day) compared to the roller coaster ride from Hell moms living with slow suffocation and a certain downward spiral with zero chance of pulling out of the inevitable fate...

Sorry for the novel; I'm sitting locked in the public bathroom at Trolley sobbing and you're the only person that would understand this (and come to think of it; you're pretty much my only sane contact I have in life!

Love ya Lis!

8:01:19 PM iMessage Message received from Lisa Stephens (Eliason)

Shoot.

Mom is such a Rockstar.

And she said to tell you to not come stay here tonight.  Maybe just come early in the morning.

It should be noted that defendant tells her brother to "not come" which is odd since Joyce Eliason never would have told someone that given her need for help at this time of her illness.   It is alleged that defendant was afraid Joyce Eliason would discuss the recent amendment and get Plaintiff's opinion.

**At 9:30 P.M.; Defendant is once again stating that her mother can "last until morning" and saying she is being "kicked out" (once again, something Joyce Eliason never would have done).  She also realizes Brett had stated he was coming over; and to possibly reduce the oxygen from 5; which was an unprecedented high level for Joyce Eliason.**

145

What job on earth could I have ever dreamed of that would be better than sharing lost and precious moments sitting in the presence of two warriors unlike non other all the while understanding what unconditional love really is?

It's just that suffering that's increasing that's unbearable as it feels like the titanic lights are out and 98% of the ship is underwater and were days away from an unavoidable rendezvous with a cold dark ocean and Mom doesn't have a life vest or a ticket on the rescue boats....completely helpless and the only words we can utter is the cliché of "it's in the hands of God"...

That unbearable sensation of you want her suffering to end but you have a taste of the emptiness this world will be without the foundation that mom and dad have always provided!

And immediately that overwhelming horror hits you of holy shiz..what's to become of Superman Dad immediately thereafter?  I can't bear the thought of placing him in a home but also know you and I cannot split a 24/7 watch at Lynne Lane!

But I'm bawling now just imagining visiting him in his own Sunshine Terrace

No words exist to describe it?

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 1:02:43 AM

Yep to all of that. I share your broken heart and tears.
We've died hundreds of times with Mom and will keep doing it with Dad. We just need to go a day at a time or it's too overwhelming

iMessage Message sent 4/21/2018 1:49:25 AM

I'm here; all is well!  Love ya Sis!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 2:32:40 AM

iMessage Message sent 4/20/2018 10:37:52 PM

> I'm going to head to her place in about 30 min or so and just crash on her sofa; it seems like her bladder screams at about 1:00 AM so I'll be sure to be there for that!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/20/2018 11:31:59 PM

Call if you need me!

iMessage Message sent 4/20/2018 11:34:25 PM

> Ok!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/20/2018 11:41:21 PM

Thanks so much!!!Maybe turn her oxygen back down to 4?
We need hospice.

iMessage Message sent 4/20/2018 11:47:21 PM

> I know...mom's not making sense saying she wants to go to the hospital so as not to force one of us there; but then she doesn't want one person to sleep there to help during the night?

653.    Plaintiff once again points out that Lisa Stephens tells her younger brother to turn the oxygen of his mother "down" to 4 without questioning what her saturation rate was doing.

654.    There is no other logical reason for Lisa Stephens to knowingly tell Plaintiff to cut her oxygen down in such a manner as she knew that the high dosage of morphine would slow her breathing down immensely when in concert with her clonazepam.

655.    Plaintiff alleges that this was intentional and pre-meditated to "put her mother down" and was done in collusion with Craig McCullough and KMC Law.

147

I am feeling zero inspiration about what to do next.
I don't know who to call for help.

iMessage Message sent 4/21/2018 12:30:09 AM

Mom tied our hands with what options we have really, and though not intended, I think we both feel such a level of guilt for each minute of 24/7 we miss?

Here I feel borderline nervous breakdown and try to protect myself by sequestering myself into a dark room for a day or two, and when I finally get the strength to head to moms, I feel so bad that I missed an episode of MSW (I did the math and I'm on episode 1,397 with her since we started...). And

I'm scared she's thinking "Brett just doesn't care anymore..." Dang! I'm on

my way...I'll let you know what I find!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 12:35:09 AM

She doesn't think that at all! She knows you've been devoted beyond belief and is so glad you're finding happiness with starting the store. She knows you'd be there if you could, and would if she needed you!
She's just so tired and doesn't respond to us the way she'd like to. Don't take it personal. She loves us to the moon and back.

What job on earth could I have ever dreamed of that would be better than sharing lost and precious moments sitting in the presence of two warriors unlike non other all the while understanding what unconditional love really is?

It's just that suffering that's increasing that's unbearable as it feels like the titanic lights are out and 98% of the ship is underwater and were days away from an unavoidable rendezvous with a cold dark ocean and Mom doesn't have a life vest or a ticket on the rescue boats....completely helpless and the only words we can utter is the cliche of "it's in the hands of God"...

That unbearable sensation of you want her suffering to end but you have a taste of the emptiness this world will be without the foundation that mom and dad have always provided!

And immediately that overwhelming horror hits you of holy shiz...what's to become of Superman Dad immediately thereafter? I can't bear the thought of placing him in a home but also know you and I cannot split a 24/7 watch at Lynne Lane!

But I'm bawling now just imagining visiting him in his own Sunshine Terrace

No words exist to describe it?

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 1:02:43 AM

Yep to all of that. I share your broken heart and tears.
We've died hundreds of times with Mom and will keep doing it with Dad. We just need to go a day at a time or it's too overwhelming

iMessage Message sent 4/21/2018 1:49:25 AM

I'm here, all is well! Love ya Sis!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 2:32:40 AM

656.    Plaintiff's last text to his sister that night was at 1:49 AM on 4/21/18 wherein he sat next to his mother's bedside all night to ensure her oxygen did not fall off of her face.

iMessage Message sent 4/21/2018 8:32:53 AM

Are you awake Lis?

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 8:48:47 AM

What's up

iMessage Message sent 4/21/2018 8:54:05 AM

She had a really close call and is fighting to recover...I didn't close my eyes and was watching her as I worked

But her oxygen fell off and by the time i got to her she was ice cold and non responsive...

iMessage Message sent 4/21/2018 8:54:41 AM

iMessage Message sent 4/21/2018 8:55:43 AM

Dad was freaking out with no clue how to get the oxygen on her; but he started crying and laid on her when he felt her ice cold and hardly moving...

iMessage Message sent 4/21/2018 8:56:17 AM

She's pulling up and opening her eyes and warmth coming backwards

iMessage Message sent 4/21/2018 8:56:23 AM

Coming back...

iMessage Message sent 4/21/2018 8:56:59 AM

But when I tested her saturation after getting her oxygen on; it would not register...

iMessage Message sent 4/21/2018 8:57:38 AM

She's not well to say the least...

iMessage Message sent 4/21/2018 8:57:54 AM

I thought she was gone...

iMessage Message sent 4/21/2018 11:47:00 AM

Sorry I had to come find a meditation room Lis! I got lost finding it. How's she doing?!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018

Brigette is coming

11:47:41 AM iMessage Message received from Lisa Stepens (Eliason)

(+18012599138) 4/21/2018

11:57:12 AM

Thank goodness you were there this morning Brett!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 12:02:06 PM

Do you know where Mom's advanced directive is

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 12:07:09 PM

Are you in the waiting room?
They want to know what her advanced directive says just in case they need to resuscitate her. I've never seen it but is it home with her will?

iMessage Message sent 4/21/2018 12:08:54 PM

150



iMessage Messag
Hmmm, shoot! I can't remember if I have a copy on my shelf still...and Craig's not in... dang! Now I see why they said get it on file!

iMessage Message sent 4/21/2018 12:09:10 PM

I'm upstairs in the hope room...

iMessage Message sent 4/21/2018 12:09:50 PM

I know she did not put a DNR in there though; that's for certain!

12:10:37 PM

Let me see if one of my kids can go find it at Moms.
Brigitte should be here in a minute.
She did NOT put in a DNR? Can you please come talk to the nurse guy? I blew it. I don't know what it says

iMessage Message sent 4/21/2018 12:11:04 PM

She was even contemplating to what extreme level of brain dead she wanted to be before being disconnected from life support.

iMessage Message sent 4/21/2018 12:11:28 PM

So clearly she wanted them to fight to save her!

iMessage Message sent 4/21/2018 12:11:55 PM

Yes! Be there in 5!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/21/2018 12:13:12 PM

Okay awesome

657.    Plaintiff points out that Lisa had told the nurses that Joyce Eliason had a DNR on record which as Plaintiff points out was literally a joke because Joyce had stated early on that they were not to disconnect her from life support even if "one brain cell" could be revived.

658.    Had Plaintiff not interceded, Joyce S Eliason would have perished that morning and it was clear by her rapid recovery and release from the hospital that this was not caused by the failure of Joyce Eliason's lung.

151

iMessage Message sent 4/22/2018 6:30:09 AM

I'm so traumatized replaying that image of touching an ice-cold mom that couldn't move and thinking she was gone ... and then seeing those eyes open in horror when she threw up blood was the worst horror show could have created in my nightmares...

Dad was so happy it scared me...he was high as a kite after watching the jazz with bry and Kylie there...

iMessage Message sent 4/22/2018 6:31:01 AM

He didn't ask I ce where mom was; and had no clue what had transpired that day (good and bad side to that obviously)

659.    Plaintiff points out the horrific symptoms which Joyce S Eliason displayed as described the following day to his sister.  The symptoms of a morphine overdose are all consistent with the above statements.

## TWENTY SEVENTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED FRAUD WITHIN THE SECOND AMENDMENT TO THE JOYCE S ELIASON TRUST DATED APRIL 17TH, 2018)

660.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

661.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

662.    The execution of the Second Amendment to the Joyce S Eliason Trust and the Second Codicil to the Last Will and Testament were dated April 17th, 2018.

663.    These documents were arguably the vital pages of authority which are relied on.

iMessage Message sent 4/26/2018 8:00:48 AM

> Hey Lis, mom started telling me about some diamond trust she'd signed and the details were blurred but asked me to read it and make changes if I wanted to?
>
> I thought she was delusional but I stopped on my way home at Craig's and his assistant said she'd signed something on Wed or something? Can you shoot me a copy today? The assistant needed Craig's approval but I've got to think you were there?
>
> Love you!

iMessage Message received from Lisa Stepens (Eliason) (+18012599138) 4/26/2018 8:30:48 AM

Yeah, she set up like a perpetual education fund that can make small loans.
It was really important to her to get it done & she's really proud of it.
Let's talk it about it after we get home.

iMessage Message sent 4/26/2018 8:32:54 AM

> Do you have a copy you can send? Is this different than the $500 a month? She said something about her entire cash flow going into it which I assumed she was delusional about...?

iMessage Message sent 4/26/2018 8:37:28 AM

> As I questioned her, she said "oh, that's not what I wanted to happen, and wanted to change it immediately?" I'm clueless other than if this is that $500

664.    Plaintiff asks Defendants if they see an issue when Joyce Eliason asks about some "Diamond Trust" which she had signed just before falling into her morphine induced coma.

153

665.    Defendants are standing behind this document executed on April 17th for both the appointed power of "Sole Trustee" and "Personal Representative" as it pertains to the Last Will and Testament of Joyce S Eliason which is also considered fraudulent.

666.    Kirton McConkie breached its duty of care and Fiduciary Duty to Joyce S Eliason by not providing either Joyce or Plaintiff copies of the documents which Joyce had been forced to sign nine days earlier than the discussion held within the above stated text between Plaintiff and Defendant Lisa Stephens.

667.    Defendants Bryan and Lisa Stephens stated that Joyce meant it to be a 'surprise disowning of Plaintiff" after she passed away; however, if this were the case, why would Joyce S Eliason ask Plaintiff what she had signed and to make any changes Plaintiff saw fit?

> **The Trustees, as soon as is reasonably practicable, shall create one subtrust for each of the Settlor's then living grandchildren; the then living children of Settlor's children (individually a "Grandchild's Subtrust "and collectively the "Grandchildren's Subtrusts") and one subtrust collectively for the descendants of each of the Settlor's then deceased grandchildren (the "Collective Great Grandchildren's Subtrusts") and one subtrust for the spouse of each of Settlor's then deceased grandchildren who died leaving no surviving descendants (the Spouse's Subtrust").**

671.    The document refers to setting up a subtrust for each of the Settlor's then living grandchildren; and one subtrust collectively for the descendants of each of the Settlor's then deceased grandchildren.

672. Plaintiff informs the Defendants and the Court that this document was knowingly signed four days prior to Joyce Eliason falling into an apparent morphine induced coma and knowing that Joyce S Eliason's life span was expected to be weeks at most.

673. The verbiage speaks of creating one subtrust collectively for the for the descendants of each of the Settlor's then deceased grandchildren and one subtrust for the spouse of each of the spouses of any deceased grandchildren.

674. Max and Joyce Eliason have no deceased grandchildren and yet a trust is to be set up for the spouses of any of the grandchildren who may pass away pre-maturely which would indicate that Joyce S Eliason is making provisions for spouses of grandchildren which she may have never met while completely disowning her youngest son and Plaintiff whom she paid Kirton McConkie to protect.

675. The fact that the document speaks of existing "deceased grandchildren" would only be a reference to the multiple mis-carriages which Lisa Stephens had during her childbearing years but the term "Spouses Trust" is meaningless in this context since the miscarriages clearly left no descendants and no spouses.

676. Plaintiff alleges that this is yet one more addition that has been added to make the Trust a complicated web to which Defendants believed that Lisa Stephens in her role as Sole Trustee would be able to keep secret and confidential.

**The amount to be allocated to the Sub-Account for each Grandchild's Subtrust, to the Sub-Account for each Collective Great Grandchildren's Subtrust and to the Sub-Account for a Spouse's Subtrust shall be equal to $500.00 multiplied by the number of months between (i) the living Grandchild's age or the age at which a deceased grandchild died and (ii) age thirty-one (31)**

677. Kirton McConkie and Defendants do not have one legal justification for representing Bryan and Lisa Stephens and Mark and Laurie Eliason and are concealing the complete dismissal of Max D Eliason as their client and have allowed Bryan Stephens to "buy" the birthright of Plaintiff Brett L Eliason and to steal all of his assets while creating fraudulent debt.

678. And yet in the provisions within the document which has already been considered as fraudulent, the Defendants stand by the allegation that Joyce S Eliason intended for the Grandchildren and Great-Grandchildren, and the non-existent deceased grand-children but to disown her youngest son who cared for her daily for five years?

679. The question also arises as to who is the recipient of the "Spouses Trust" since there could be no possible way that there is an existing spouse or "Spouse"?

680. Plaintiff re-states that his own daughters and intended beneficiaries of the "Grandchildren's Trust" have not received one dollar of the $500/month as per the wishes of Joyce S Eliason while the deceased grandchildren (which can only be miscarriages) have $500/month up until the age of 31?

681. Plaintiff is revolted at the mockery and theft of his parent's estate and that a Law Firm such as Kirton McConkie would stand by such "pornographic" estate planning.

156

*The Great Grandchild Distribution Amount shall be $500.00 per month allocated among the descendants of a deceased grandchild by right of representation. In the Trustee's sole discretion, the Trustee may commence the Distribution Amounts prior to the Grandchild or Great Grandchild attaining age 25. After a Grandchild or a Great Grandchild has received a total of 72 monthly Distribution Amounts (which include Distribution Amounts paid to the Grandchild or Great Grandchild prior to Settlor's death), the Trustee may discontinue the monthly support payments and, subject to the RMD rules, may accumulate funds within the Subtrust and the Trustee may, in the Trustee's sole discretion, distribute all, part of none of the income and principal of the Subtrust to the Grandchild or Great Grandchild 'for such purposes as the Trustee shall determine.*

682.    Lisa Stephens has herein provided herself with the discretion of commencing to give her own grandchildren a monthly distribution of $500/month for 72 months and has the right to commence said distribution prior to the great-grandchildren of Max and Joyce Eliason reach the age of 25 for the grandchildren with the Plaintiff's children Kylie and Brittnie Eliason being the only two under the age of 25.

683.    Lisa Stephens has rejected (see texts) the requested $500/month which Joyce S Eliason requested to be distributed at Plaintiff Brett L Eliason's discretion and Lisa's only disbursement came with conditions to Kylie and stated that her portion would be discounted due to her premature withdrawal knowing Lisa could give her own grandchildren $500/month without being questioned.

684.    Lisa Stephens has rejected (see texts) the requested $500/month which Joyce S Eliason requested to be distributed at Plaintiff Brett L Eliason's discretion and Lisa's only disbursement came with conditions to Kylie and stated that her portion would be discounted due to her premature withdrawal

knowing Lisa could give her own grandchildren $500/month without being questioned.

685. Plaintiff and his family were forced to drop their health insurance coverage following the death of Joyce S Eliason due to the immediate attack on Plaintiff's business interests and his emotional health while the provisions made fraudulently within the Second Amendment allow for all medical costs to be covered while Plaintiff is receiving collection letters from the Attorney General for unpaid visits relating to the neck injury sustained in a car accident.

686. Plaintiff was hospitalized with a snake bite in 2018 and he pled with his sister for relief under the pending settlement of his mother's estate since his health insurance had just lapsed.

687. And yet the provisions under the Fraudulent Trust allow Lisa and Bryan to proceed as they please with the Trust Funds.

**4. IA. 1.2 <u>Medical Expenses</u>. The Trustee may distribute from a Subtrust, funds for the Medical Expenses of the beneficiary of the Subtrust in such amounts as the Trustee may determine. Medical Expenses shall include major medical costs not otherwise paid or reimbursed by insurance. In determining whether to make distributions and in what amount, the Trustee shall take into account the beneficiary's needs, age, assets and other available sources of income and support. Medical expenses shall not include cosmetic surgeries unless determined by a physician to be medically necessary.**

688. This plea along with those of educational support for his daughter so as to avoid eviction from school have gone unheard.   Brittnie Lynne Eliason

(Plaintiff) has been forced to work full-time shifts at Wal-Mart to assist in paying family bills.

> *5. IA. 1.3 <u>Down Payment</u>. At any time after a beneficiary reaches age 21, the Trustee may distribute to or for the benefit of a beneficiary from that beneficiary's Subtrust, an amount to be used as the down payment toward the purchase of the beneficiary's first principal residence which amount shall not exceed twenty percent of the cost of a median-priced home in Salt Lake County.*

689. Plaintiff is outraged to see that this fraudulent document provided for the ability of all of the Plaintiff's cousins and aunts and uncles to borrow under the Dynasty Trust but with no provision discussed with Plaintiff so as to avoid the complete collapse of his emotional and financial health as Defendants had intended since the inception of this relationship in 2013.

> **5. IA.2.1 <u>Dynasty Trust Beneficiaries</u>. For purposes of the Dynasty Trust, the Dynasty Trust Beneficiaries shall be the descendants of the Settlor's parents and the descendants of Settlor's spouse's parents, only. Notwithstanding, priority shall be given to the Settlor's descendants and Settlor's sister, Michele Gaetz. The determination as to the amount and terms of any loan shall be made in the sole discretion of the Trustee even if such loans are disproportionate among the Dynasty Trust Beneficiaries and to the exclusion of any Dynasty Trust Beneficiary.**

690. Michele Gaetz is mentioned as having a right to borrow a disproportionate amount of money. "Shelly Stillman Gaetz" is Joyce Eliason's sister whose devotion to both Joyce and their mother Lydia Stillman has been priceless.

691. Joyce S Eliason stated prior to her death, that Michelle was to receive proceeds of up to $500K in order to help her financial situation following the

years of sacrifice she offered caring for Lydia Stillman selflessly until she passed away.

692. Plaintiff has no words towards how nauseating it is to see not only the complete betrayal of each Defendant hereof of both him, his father, and his daughters; but also, the intentional dismissal of Joyce's request to assist her younger sister with a "gift" which was never meant to be accessible as a loan.

693. Shame on this unholy conspiracy of mafia style religious corruption which is begging to be made an example of within society so as to not repeat.

> 4. IA.2.3 <u>Education Trust</u>. Until the termination of The Dynasty Trust, the
>
> Trustee may loan to a Dynasty Trust Beneficiary for the Educational Expenses of the Dynasty Trust Beneficiary such amounts, shares, and interests as the Trustee may determine; however, in no event shall any one Dynasty Trust Beneficiary receive a loan in excess of twenty thousand dollars ($20,000) for Educational Expenses. Educational Expenses shall only include expenses incurred in working towards a post high school undergraduate or equivalent technical school degree. If the Trustee determines, in the Trustee's sole discretion that all of the Dynasty Trust Beneficiaries have had an equal opportunity for an undergraduate or equivalent technical school degree, then the Trustee may consider making loans for post-graduate Educational Expenses. The Trustee, in the
>
> Trustee's sole discretion, may loan funds to pay principal and/or interest on a Dynasty Trust Beneficiary's student loans. However, the Trustee shall only pay the principal and/or interest for that portion of the student loans for which the proceeds were used for Educational Expenses as described in Section 4. IA.2. I (a).

694. Plaintiff alleges this is yet another Trust put into place on paper with the existence thereof in question; as no documentation has been provided to Plaintiff's Kylie Eliason and Brittnie Eliason; both of whom have intentionally been disowned by Lisa Stephens.

160

695.  Kylie M Eliason is working full time in Los Angeles to pay for her rent after needing to drop out of the community college she attended while there is an "Education Trust" allowing for advances of up to $20,000 for even post-graduate work with no recourse.

> (a)  Educational Expenses may include tuition, student fees, books, supplies and room and board.
>
> (b)  The Trustee may, but is not required to, take into account the following factors in determining whether to make loans for Educational Expenses:
>
>> (1)  Prior academic performance;
>> (2)  Performance on tests designed to measure ability and aptitude for college work;
>> (3)  Recommendations from instructors;
>> (4)  Financial need, including other sources of funds available to the Dynasty Trust Beneficiary;
>> (5)  Conclusions which the Trustee draws from a personal interview as to the Dynasty Trust Beneficiary's motivation, character, ability, potential and likelihood of success in achieving the educational goals described by the Dynasty Trust Beneficiary;
>> (6)  Personal history;
>> (7)  Cost of the programs to be pursued;

696.  Plaintiff's heart and soul is heavy beyond description to acknowledge to betrayal by Lisa Stephens toward him, his daughters, and her own parents. The provisions made for her own children to fund the business of My 3-D Me with the intention of stealing it from her own brother after all of his efforts and years of work is beyond what words could describe.

161

2  4 IA.2.5 <u>Business Ventures</u>. The Trustee may make loans to

**Dynasty Trust Beneficiaries to commence a business venture in which the Dynasty Trust Beneficiary actively participates, but only if the Trustee believes there is a reasonable likelihood of success. In determining the likelihood of success, the Trustee may allow for more speculative business ventures than would normally be considered. However, any business ventures must be shown to be worthwhile and capable of success with sufficient profit potential to fully repay the loan. Such determination shall be made in the sole discretion of the Trustee, who determination shall not be subject to review by any person. Prior to receiving a loan, the Dynasty Trust Beneficiary shall submit a business plan with financial projections and such other documentation as the Trustee requests and shall provide such security as required by the Trustee.**

6. I <u>Trustee Succession</u>. The following will act as original Trustees, and as successor Trustees, in the following order of succession:

1. **Joyce S. Eliason.**

2. **Lisa Eliason Stephens.**

3. **A Trustee chosen by each of Settlor's descendants who are over the age of 25 and are not legally disabled, voting by right of representation as defined in Section 8.8.6, so there is one Trustee serving from each family line, who shall serve jointly. If all of the descendants of a Settlor's child are under age 25, the then serving Trustees of the Trust shall select a Trustee to represent that family line until a descendant reaches age 25.**

697. Under the Rules of RES IPSA LOQUITUR; the Defendant is required to explain how the "Original Trustee" Succession order of the Joyce S Eliason Trust could show Joyce S Eliason as Sole Trustee and assigning Lisa Stephens this role upon her death when the original Trust is as follows:

ARTICLE 6 TRUSTEE PROVISIONS

6.1 <u>Trustee Succession</u>. The following will act as original Trustees, and as successor Trustees in the following order of succession:

(1)   Joyce S. Eliason and Max D. Eliason. If either should cease or fail to serve, the survivor shall serve alone.

(2)   Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason If a Trustees should cease or fail to serve, the survivor(s) shall continue to serve.

(3)   A Trustee chosen by the majority of the beneficiaries voting by right of representation as defined in Section 8.8.6, with the natural or legal guardian voting for legally disabled beneficiaries.

698.   Plaintiff understands that it is not his place to call something a felony crime; but in reality, this complaint is being done on behalf of the "Victims of Abuse of Power and Crime" but whose pleas with 911, The District Attorney, and The Utah Bar failed; as did the complaint to Judge Mow of the Third District Court.

699.   Plaintiff points out that within the modification, the Defendants dismissed the demands by Joyce S Eliason to treat each child equally and as "Co-Trustees" and "Co-Personal Representatives" and made it impossible for Plaintiff to even be represented within the confines of the newly required 25 year old child to be named after Lisa is no longer serving as Trustee.

700.   Defendant Bryan Stephens and Lisa Stephens contradict themselves within the attached texts concerning the generation skipping intention and instead utilize "The Money is Safe Within the Marital Trust" to which Plaintiff has yet to see any documents even though his privilege to do so is equal to that of his siblings.

701. The Second Amendment to the Joyce S Eliason Trust begins with a fraudulent statement in the opening paragraph as follows:

## SECOND AMENDMENT TO THE
## JOYCE S. ELIASON TRUST

This Second Amendment to The Joyce S. Eliason Trust ("Trust") originally dated October 28, 2015, is made and entered into this 17 th day of April, 2018, by and between Joyce S. Eliason, the Settlor and Trustee.

Joyce S. Eliason, pursuant to the authority granted in the Trust, does hereby amend said Trust as follows:

l. The First Amendment to The Joyce S. Eliason Trust dated the 7th day of December, 2017 is hereby deleted in its entirety.

702. The first paragraph states that the Joyce S Eliason Trust was created by and between Joyce S Eliason as the Settlor and Trustee which is false.

703. Max and Joyce Eliason were both Settlors and Co-Trustees thereby making any changes to this Trust require the signature of Max and Joyce S Eliason.

704. Defendants knew of Max D Eliason's legal background and that his competency level still allows him to understand legal documents to which he still insists on reading each word and initialing each page; therefore, they knew Max would never agree to what they were fraudulently asking Joyce to execute.

705.    Plaintiff reminds the Court and the Defendants that this Amendment was submitted to Probate Court with the intentional malicious aggravated conspiracy to fraudulently modify government documents which falls under criminal law.

706.    The Second Amendment continues as follows:

**Article 4 of the Trust is hereby amended to insert a new Section 4. IA between Section 4.1 and 4.2 to read as follows:**

**6. IA <u>Grandchildren's Trust and Dynasty Trust</u>. Upon the death of the Settlor, whether Settlor's spouse is surviving or not, (after fulfilling the provisions of Section 4. I), the Trustee, as soon as is reasonably practicable, shall create two trusts; The Joyce Eliason Grandchildren's Trust (the "Grandchildren's Trust"); and The Eliason Dynasty Trust (the "Dynasty Trust). The Trustees shall allocate to The Grandchildren's Trust the assets held in Settlor's TD Ameritrade IRA Account # 787-445953 which have been directed to be distributed to The Grandchildren's Trust by a beneficiary designation.**

707.    Kirton McConkie and Defendants refuse to provide any documents associated with the "Grandchildren's Trust" and/or "The Eliason Dynasty Trust" to which both Kylie Marie Eliason and Brittnie Lynne Eliason are intended Beneficiaries who have never received notification of being included and accounting is refused.

708.    Plaintiff also restates that the provisions of this Amendment were denied to both Plaintiff and Joyce S Eliason as per the texting conversations in attached Exhibits and within the body of this complaint.

709.    Furthermore, the above paragraph allocates the TD Ameritrade account #787-445953 to the "Grandchildren's Trust" by a beneficiary designation.

710.   This illegally removes the investment account from the Joyce S Eliason Estate and supposedly provides that it be distributed as per a beneficiary designation (Lisa Stephens and Bryan Stephens were the only ones who knew this document existed).

711.   Anything done under this fraudulent document is considered to be done through the crime of "abusing and exploiting a vulnerable adult" which is considered a felony within this context.

712.   The Trust Further continues to fraudulently embezzle the TD Ameritrade investment account of Joyce S Eliason wherein several million dollars of securities including her millions of dollars in Disney Stock which she had in her account for decades.

**(l) all of the assets held in Settlor's TD Ameritrade Account #188-191951 at the time of Settlor's death; and (2) all amounts owing to the Trust pursuant to that certain Promissory Note dated the 22nd day of December, 2016 with Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason, Trustees of The 2016 Eliason Trust dated the 22nd day of December, 2016 as Borrower and Max D. Eliason and Joyce S. Eliason as Payee in the original principal amount of Four Million One Hundred Sixty-Eight Thousand One Hundred Twenty-Three Dollars ($4,168,123) of which an undivided one-half ( 1 2) interest was assigned to the Trust pursuant to the Assignment of Promissory Note dated the 22nd day of December, 2016.**

713.   The paragraph then goes on to assign the amount of $4,168,123 which was payable to Max and Joyce Eliason through the Eliason 2016 Irrevocable Trust which was illegal to steal along with the $4M+ that was already in the Eliason 2016 Trust.

# TWENTY-EIGHTH CAUSE OF ACTION:

# (CONSPIRACY TO COMMIT AGGRAVATED TAX AVOIDANCE AND TAX EVASION)

714.  Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

715.  Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

716.  The Estate Planning of Max and Joyce Eliason included the implementation of an A/B Trust wherein all of the Assets of Joyce S Eliason were to remain within the "Marital Trust" following the death of Joyce S Eliason with her Trust becoming irrevocable.

717.  The Eliason 2015 Family Trust was an irrevocable Trust set up to be a vehicle in which the three beneficiaries were empowered to purchase the 58% ownership of Max and Joyce Eliason as it pertains to Eliason Eight, LLC and Eliason Enterprises, LLC.

718.  Craig McCullough told the Settlors and the Plaintiff that this entity had been replaced by the Eliason 2016 Trust when it was formed in December of 2016.

719.  Plaintiff learned in March of 2019 that the 2015 Trust still existed.

720.  The Eliason 2015 Trust has never provided any reporting to Plaintiff despite him being an equal Beneficiary and Trustee of the Entity.

721. The Provisions therewith include the ability for the "Trust Protector" Craig McCullough (which was never heard of by either Plaintiff or Settlors) to remove Plaintiff as Trustee just for asking for accounting and the reason it held oil and gas mineral rights.

722. Craig McCullough is the "Trust Protector" of an entity which he stated no longer existed, and he is "protecting" only his clients being Mark D Eliason, Bryan P Stephens, Lisa E Stephens, and Laurie Eliason which is an intentional aggravated conspiracy to commit "theft by deception" and "breach of fiduciary duty" to Joyce S Eliason and Max D Eliason among other criminal intentions.

723. Within the provisions made by the "Trust Protector"; is the ability for the attorney of Max and Joyce Eliason to dismiss Brett L Eliason as beneficiary and yet add any and all new beneficiaries he sees appropriated and under the guise of "Charitable Trusts" and others.

724. The oil and mineral rights found within this Trust are considered to be stolen through "Abuse of Power by a Fiduciary" and the valuations are in the tens of millions of dollars which are unaccounted for.

725. The transfers of all of the assets out of the Estates of Max and Joyce Eliason prior to the death of the surviving spouse constitutes a taxable event along with the transfer of tens of millions of dollars in oil proceeds to undisclosed

entities at a book value which is fractional compared to the actual valuation of the assets in question.

726.    U.S. Code 7201 states indicates guilt for any action which defeats any tax.

## TWENTY NINTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED ABUSE AND EXPLOITATION BY A FIDUCIARY WITHIN THE MAX AND JOYCE ELIASON TRUSTS)

727.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

728.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

729.    Plaintiff reminds the Court and the Defendants that Tom Mecham admitted guilt of an "undisclosed conflict of interest" to Brett L Eliason on February 11th, 2019.

730.    It is alleged that Bryan and Lisa Stephens utilized Fraudulent Misrepresentation in order to secure the Estate Plan of Max and Joyce Eliason.

731.    It has been established that Joyce S Eliason was under the influence of an illegally obtained prescription of morphine when she executed the Second

**6. I** <u>Trustee Succession</u>**. The following will act as original Trustees, and as successor Trustees, in the following order of succession:**

      **(l)**    **Lisa Eliason Stephens.**

      **(2)**    **A Trustee chosen by each of Settlor's descendants who are over the age of 25 and are not legally disabled, voting by right of representation as defined in Section 8.8.6, so there is one Trustee serving from each family line, who shall serve jointly. If all of the descendants of a Settlor's child are under age 25, the then serving Trustees of the Trust shall select a Trustee to represent that family line until a descendant reaches age 25.**

735.   Defendants refuse to provide Max D Eliason a copy of his own Last Will and any Codicils which may have been executed since June 20th, 2013.

727.   As indicated within the above Section 6.1 "Trustee Succession", the Defendants had a very ill and drugged Joyce S Eliason sign an illegal modification to the Original Trustee Succession order of The Max D Eliason Trust dated October 28th, 2015 which is also considered to be a breach of the laws surrounding the falsification of a legal document which is intended to be used in Probate Court.

728.   It is alleged that the Defendants relied on their fraudulent verbiage within the Eliason Family Trust documents which permitted "a single beneficiary" to declare Max D Eliason "Incompetent" which as discussed was not legally done until May 29, 2019.

729. Plaintiff demands that the Defendants once again be punished for this heinous and lawless action of complete greed and criminal intent to rob the clients who paid the Defendants to protect them.

## CAUSE OF ACTION NUMBER THIRTY:

## (CONSPIRACY TO COMMIT AGRAVATED INSURANCE FRAUD)

730. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

731. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

732. Among the numerous fraudulent activities within the Estate Plan of Max and Joyce Eliason; Plaintiff has discovered multiple references to life insurance policies which have been taken out on the life of Joyce S Eliason.

733. These policies were never reflected on the personal financial statement of either Max or Joyce Eliason which infers that the Defendants opened any and all policies on the life of Joyce Eliason which would have not been possible had the truth concerning her lung cancer been revealed to the insurer.

734. Plaintiff's request from Kirton McConkie for an explanation have gone unanswered with no explanation as to how it would have been possible to open without deceit.

735. The following verbiage is found within the Eliason 2016 Family Trust (to which Plaintiff's rights as Co-Trustee and Beneficiary have been illegally removed when Plaintiff requested accounting):

172

**ARTICLE 3 - DISPOSITION OF TRUST ESTATE AFTER DEATH OF SETTLOR AND SETTLOR'S SPOUSE**

**3.1 Distribution Upon Death: Collection of Insurance Proceeds. Upon the Settlor's death, if Settlor's spouse is surviving, the Trustee shall distribute that portion of the Trust Estate, if any, which is included in Settlor's estate for federal estate tax purposes to the Trustees of The Joyce S. Eliason Trust, a revocable trust established by Settlor.**

736.    The fact that life insurance policies exist is already suspicious, and the legality as to what has transpired is further questioned as to why any Insurance Policies on the life of Joyce S Eliason would be discussed within the irrevocable family 2016 Trust.

737.    The next sentence states that "upon the Settlor's death, if Settlor's spouse is surviving, the Trustee shall distribute that portion of the Trust Estate, if any, which is included in Settlor's estate for federal estate tax purposes to the Trustee of The Joyce S Eliason Trust, a revocable Trust established by the Settlor".

738.    Plaintiff points out to the Court and the Defendants that the Plaintiff Brett L Eliason is an equal Co-Trustee to the Joyce S Eliason Trust, but only after both Max D Eliason and Joyce S Eliason are deceased.

739.    Within the Title shown above the paragraph in ARTICLE 3 – it clearly states what should happen upon the death of both Settlor and the Settlor's Spouse meaning Max D Eliason.

740.    Plaintiff also points out the obvious fraud which has been applied herein since this document was supposedly created and executed on December 22nd, 2016 and yet was not provided with a copy until late 2018.

173

741. The verbiage makes no mention of Max D Eliason being the Co-Trustee and Settlor of the A/B Trust strategy employed by Mr. Craig McCullough and Kirton McConkie.

742. The obvious question is why would a document prepared two years prior to the death of Joyce S Eliason refer to there being "A Trustee" and why does the instructions to allow the Trustee to manage said property when the Title states clearly that this would happen only after the death of the surviving spouse.

743. The document continues in intentional fraud as follows:

**If no qualified Trustee makes claim to such portion of the Trust Estate within six (6) months after Settlor's death, the Trustee shall distribute such portion to the personal representative of Settlor's estate. Upon the death of Settlor, the Trustee shall make reasonable efforts to collect the proceeds of all insurance policies which become payable to the Trustee pursuant to this Trust Agreement.**

744. Plaintiff is speechless as to the flagrant and malicious theft of assets from such "pornographic" phrases such as "If no qualified Trustee makes claim to such portion within six months after the Settlor's death, the Trustee shall distribute such portion to the Personal Representative of Settlor's Estate.

745. Plaintiff was never told that he was a Co-Trustee until he discovered it almost one year after the death of his mother Joyce S Eliason.

746. It should also be pointed out that the proceeds of any life insurance policies become payable to the Trustee which as discussed; is Max D Eliason and not Lisa Stephens who has no more rights than her younger brother whom she has maliciously been attacking since 2013.

174

747.   The next fraudulent statement is associated with the fact that the "Personal Representative of Settlor's Estate" receive the Distribution should no qualified Trustee appear.

748.   The "Personal Representative" is in fact defined as follows within the Last Will and Testament of Joyce S Eliason dated October 28th, 2015 and is as follows:

1.     **ARTICLE 2 DESIGNATION OF FIDUCIARIES**

2.1 **Designation of Personal Representatives. I nominate the following as Personal Representatives of my estate, to act in the sequence named, each to serve in the event the preceding person or persons, as applicable, fails to qualify or after qualifying fails or ceases to act:**

**(I) Max D. Eliason, Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason to serve jointly or the survivor(s) with the act of a majority being the act of the Personal Representative.**

749.   Plaintiff points out that Kirton McConkie and the Sr Management along with Dallin H Oaks are all fully aware of the fact that they have no basis whatsoever to represent Lisa Stephens as "Sole Trustee" nor in the position of "Personal Representative" since the Last Will and Testament clearly shows that Max D Eliason, Mark D. Eliason, Lisa E Stephens, and Brett L Eliason are to serve jointly as "Personal Representative" with the act of a majority being the act of the Personal Representative.

175

750. Max D Eliason was alive and competent upon the death of the "Joy" of his life and therefore any and all decisions should have been made with a required 3/4 persons required to take any action.

751. **KIRTON MCCONKIE IS HEREBY REQUESTED TO EXPLAIN UNDER THE RULE OF RES IPSA LOQUITUR UNDER WHAT AUTHORITY THEY NOW STATE THAT THEY REPRESENT LISA STEPHENS AND IN WHAT CAPACITY DID THEY EMPOWER HER WITH ILLEGALLY TO TAKE OVER BOTH OF THE ESTATES OF MAX AND JOYCE EIASON.**

**The Trustee shall have full authority to take any action the Trustee deems best in regard to collection and to pay the expense thereof, including the expense of any litigation, out of the principal of the Trust Estate. The Trustee shall have full authority to make any compromise or settlement with respect to the policies which it may deem advisable, and to give all necessary and proper releases of liabilities.**

752. Plaintiff points out to the Court and the Defendants that the "Trustee" as defined within the Eliason 2016 Trust is all Three Beneficiaries working in unison with a unanimous decision required.

753. Plaintiff was never told by Defendants of his rights and has yet to be provided with any accounting which has been demanded multiple times with no response given other than "you will need to obtain counsel at your own cost".

176

754.  Plaintiff also directs the court and the Defendants to the line stating that the Trustee shall have full authority to pay any expenses of litigation from the Eliason 2016 Trust and yet all of the funds were removed by Defendants with Plaintiff replaced as Trustee in May of 2019 when Plaintiff requested his annual distribution which was never given to Plaintiff since the inception.

755.  Kirton McConkie and Defendants have no authority to withhold the information contained within the Trust Agreement as it concerns the rights of The Trustee and what has happened to the "Insurance Proceeds".

756.  Joyce S Eliason's final words which were heard by Defendant Lisa Stephens were "Brett, Lisa is a crook and hiding the evidence, tap the wires between her and McCullough".  UNDER UTAH LAW, THIS IS CONSIDERED TO BE A DYING DECLARATION AND PLAINTIFF DEMANDS TO KNOW IF THE VERIAGE WITHIN THE POLICY CONCERNING THE "AUTHORITY TO MAKE ANY COMPROMISE OR SETTLEMENT WITH RESPECT TO THE POLICIES"?

757.  Whereas Kirton McConkie told Plaintiff to secure his own legal counsel since they had discovered an "undisclosed conflict of interest" with Craig McCullough and Lisa and Bryan Stephens, Plaintiff questions whether or not the "wire" to which Joyce S Eliason made reference to was explained as being legal by the Eliason 2016 words concerning compromise or settlement with respect to the policies.

177

758. The punishment and damages associated therewith fall under the same category as those described in Utah CV 76-10-1801 (Elements and Penalties for Communications Fraud).

759. Plaintiff requests that the Judicial System not allow this type of corruption and betrayal by fiduciaries of those who have been paid to protect them not go unpunished to set an example of the intolerance society will have towards this type of activity.

760. Plaintiff demands that Kirton McConkie account for the details found herein along with the associated dates which the subject policies were put into place along with the maturity date and to disclose where every single dollar and in what amount has been paid out to those who "bet on the death of Joyce S Eliason" in what was likely an event of Insurance Fraud as alleged herein since Joyce S Eliason would have been uninsurable unless the applicant failed to disclose the fact that either the x-rays showed a "mass" within her left lung in May of 2013.

761. The coincidental timing of the Morphine Overdose on April 20th, 2018 and the fact that Lisa Stephens indicated to the ER team at the University of Utah that Joyce had a "DNR" on file (which was untrue) curiously is almost exactly five years after the discovery of the Tumors and a normal period of a term life policy.

# THIRTY-FIRST CAUSE OF ACTION:

# (COMMUNICATIONS FRAUD)

762. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

763. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983

**Utah Code 76-10-1801. Communications fraud — Elements — Penalties**

(1) Any person who has devised any scheme or artifice to defraud another or to obtain from another money, property, or anything of value by means of false or fraudulent pretenses, representations, promises, or material omissions, and who communicates directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice is guilty of

(d) a second-degree felony when the value of the property, money, or thing obtained or sought to be obtained is or exceeds $5,000; and

(5)    Each separate communication made for the purpose of executing or concealing a scheme or artifice described in Subsection (1) is a separate act and offense of communication fraud

(6)    (a) To communicate as described in Subsection (1) means to:

(i)    bestow, convey, make known, recount, or impart;

(ii)    give by way of information;

(iii)    talk over; or

(iv)    transmit information.

179

**(b) Means of communication include use of the mail, telephone, telegraph, radio, television, newspaper, computer, and spoken and written communication.**

764.  The level of organization and the inclusion of multiple defendants who have created the means and the planning of carrying out this horrific act of corruption and embezzlement has been ongoing for the past seven years with the number of participants still unknown until an investigation can be accomplished.

765.  Within the scope of a criminal investigation, the Plaintiff alleges that the number of incidences which fall under the violations of law described herein are in the dozens due to the fact that every document provided within the Estate Plan of Max and Joyce Eliason has clearly and intentionally been utilized to deliver both of the Estates of Max and Joyce Eliason to Defendants Bryan and Lisa Stephens upon the death of Joyce S Eliason while erasing the name of Max D Eliason as Settlor and Co-Trustee as if he never existed.

766.  Every document within Plaintiff's possession has been fraudulently modified to deprive him of his birthright and to rob him of every asset he owned in addition to destroying his businesses and by bribing his business partners to "quit" thereby leaving Plaintiff assassinated both financially and emotionally while indications from within the Eliason 2016 Trust indicate that the Trustees (to which Plaintiff was intended to be by his mother) had the clear intention to put life insurance on him just as they had allegedly done on Joyce S Eliason.

180

## THIRTY-SECOND CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGGRAVATED BREACH OF FIDUCIARY DUTY TO PLAINTIFF BRETT L ELIASON THROUGH LISA STEPHENS)

### (BREACH OF FIDUCIARY DUTIES)

*There is no legal standard of care higher than fiduciary duty. Fiduciary duty exists in many different contexts and situations, but it essentially refers to times when a special trust or confidence is placed in one party by another.*

*A fiduciary duty is an obligation to act in the best interest of another party. For instance, a corporation's board member has a fiduciary duty to the shareholders, a trustee has a fiduciary duty to the trust's beneficiaries, and an attorney has a fiduciary duty to a client.*

*A fiduciary obligation exists whenever the relationship with the client involves a special trust, confidence, and reliance on the fiduciary to exercise his discretion or expertise in acting for the client. The fiduciary must knowingly accept that trust and confidence to exercise his expertise and discretion to act on the client's behalf.*

*When one person does agree to act for another in a fiduciary relationship, the law forbids the fiduciary from acting in any manner adverse or contrary to the interests of the client, or from acting for his own benefit in relation to the subject matter. The client is entitled to the best efforts of the fiduciary on his behalf and the fiduciary must exercise all of the skill, care and diligence at his disposal when acting on behalf of the client. A person acting in a fiduciary capacity is held to a high standard of honesty and full disclosure in regard to the client and must not obtain a personal benefit at the expense of the client.*

There has been nothing negligent about the complete dismissal of all duties as the Plaintiff and the estates each defendant has a specific duty to care for has been criminally victimized.  Countless examples of intentional infliction of damages shall be presented at trial.

181

767.   Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

768.   Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

769.   The Breach of Fiduciary Duties within this matter are prevalent and have been happening since the relationship began wherein Kirton McConkie was paid to represent Max and Joyce Eliason as their respective attorneys to whom they owed a Fiduciary Responsibility.

770.   Lisa Stephens was fraudulently named as "Sole Trustee" and "Personal Representative" by Kirton McConkie who knowingly have no basis to be representing her legally at the present time since the documentation shows otherwise.

771.   Whereas Kirton McConkie has repeatedly stated that they represented her as the "Sole Trustee"; her actions are to be held at the standard in which any Trustee with a Fiduciary Duty to a Beneficiary is owed.

772.   Lisa Stephens shall be held responsible for targeting her younger sibling and nieces over the course of time she "professed' to be the representative of her mother with the simple truth that she "stole" this right and had criminal intentions since cutting a deal with Craig McCullough of Kirton McConkie prior to introducing Max and Joyce Eliason to him.

773. Utah Code 75-7-801 describes the Duties of Administering a Trust by a Trustee and states "A Trustee must administer the trust expeditiously and in good faith, in accordance with its terms and purposes and the interests of the beneficiaries.

774. Utah Code 75-7-802 states under section (b) that and transaction entered into by the Trustee for the Trustee's own personal account constitutes a conflict of interest and is voidable by a beneficiary who has been adversely affected.

775. The provision continues under section (c) that states a conflict of interest is presumed if a transaction is entered into by the Trustee with the Trustee's Spouse, Descendants, Siblings, an agent of the Trustee, or a corporation or enterprise associated therewith.

776. It is alleged that Lisa Stephens has breached the rules of "Loyalty" and every position discussed in the prior paragraph have been recipients of compensation and the division of the Estates of Max and Joyce Eliason which have been illegally embezzled and disbursed.

777. The Duty of Impartiality has intentionally been violated under aggravated and conspiratorial circumstances with intent to deprive Plaintiff of his birthright while destroying his financial and emotional well-being.

778. Plaintiff has not received one document of accounting from any one of the Trusts or his own LLC Entities of Eliason Eight, LLC and Eliason Enterprises, LLC nor was he ever informed that he was an equal "Personal Representative" or equal Co-Trustee".

183

779. Plaintiff demands justice insomuch as each individual who knowingly was destroying Plaintiff's life and taking all of his possessions and human rights from him and his daughters and father; suffer the same consequences which they wished upon those they were paid to protect.

780. Whereas the Plaintiff is a beneficiary of every entity done under the Max and Joyce Eliason Estate Plan, the Defendants are hereby demanded to rescind every entity and transaction; all of which are considered to be void by the Plaintiff/Beneficiary.

781. This incident and the associated criminal allegations once again test positively under the "But/For" Test used in determining guilt in both Torts and Criminal cases.

782. The but-for test is a test commonly used in both tort law and criminal law to determine actual causation. The test asks, "but for the existence of X, would Y have occurred?" If the answer is yes, then factor X is an actual cause of result Y.

783. In utilizing this formula, "But for the Breach of Fiduciary Duty to Max and Joyce Eliason; this crime and all others herein could not have been possible.

784. The Breach of Fiduciary Duties within this matter are prevalent and have been happening since the relationship began wherein Kirton McConkie was paid to represent Max and Joyce Eliason as their respective attorneys to whom they owed a Fiduciary Responsibility.

785. Lisa Stephens was fraudulently named as "Sole Trustee" and "Personal Representative" by Kirton McConkie who knowingly have no basis to be representing her legally at the present time since the documentation shows otherwise.

786. Whereas Kirton McConkie has repeatedly stated that they represented her as the "Sole Trustee"; her actions are to be held at the standard in which any Trustee with a Fiduciary Duty to a Beneficiary is owed.

787. Lisa Stephens shall be held responsible for targeting her younger sibling and nieces over the course of time she "professed' to be the representative of her mother with the simple truth that she "stole" this right and had criminal intentions since cutting a deal with Craig McCullough of Kirton McConkie prior to introducing Max and Joyce Eliason to him.

788. Utah Code 75-7-801 describes the Duties of Administering a Trust by a Trustee and states "A Trustee must administer the trust expeditiously and in good faith, in accordance with its terms and purposes and the interests of the beneficiaries.

789. Utah Code 75-7-802 states under section (b) that and transaction entered into by the Trustee for the Trustee's own personal account constitutes a conflict of interest and is voidable by a beneficiary who has been adversely affected.

790. The provision continues under section (c) that states a conflict of interest is presumed if a transaction is entered into by the Trustee with the Trustee's Spouse, Descendants, Siblings, an agent of the Trustee, or a corporation or enterprise associated therewith.

185

791. It is alleged that Lisa Stephens has breached the rules of "Loyalty" and every position discussed in the prior paragraph have been recipients of compensation and the division of the Estates of Max and Joyce Eliason which have been illegally embezzled and disbursed.

792. The Duty of Impartiality has intentionally been violated under aggravated and conspiratorial circumstances with intent to deprive Plaintiff of his birthright while destroying his financial and emotional well-being.

793. Plaintiff has not received one document of accounting from any one of the Trusts or his own LLC Entities of Eliason Eight, LLC and Eliason Enterprises, LLC nor was he ever informed that he was an equal "Personal Representative" or equal Co-Trustee".

794. Plaintiff demands justice insomuch as each individual who knowingly was destroying Plaintiff's life and taking all of his possessions and human rights from him and his daughters and father; suffer the same consequences which they wished upon those they were paid to protect.

795. Whereas the Plaintiff is a beneficiary of every entity done under the Max and Joyce Eliason Estate Plan, the Defendants are hereby demanded to rescind every entity and transaction; all of which are considered to be void by the Plaintiff/Beneficiary.

796. This incident and the associated criminal allegations once again test positively under the "But/For" Test used in determining guilt in both Torts and Criminal cases.

186

797. The but-for test is a test commonly used in both tort law and criminal law to determine actual causation. The test asks, "but for the existence of X, would Y have occurred?" If the answer is yes, then factor X is an actual cause of result Y.

798. In utilizing this formula, "But for the Breach of Fiduciary Duty to Max and Joyce Eliason; this crime and all others herein could not have been possible.

## THIRTY-THIRD CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGGRAVATED OBSTRUCTION OF JUSTICE)

Utah Code 76-8-306. Obstruction of justice in criminal investigations or proceedings — Elements — Penalties — Exceptions

An actor commits obstruction of justice if the actor, with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense:

(1) a) provides any person with a weapon;

(b) prevents by force, intimidation, or deception, any person from performing any act that might aid in the discovery, apprehension, prosecution, conviction, or punishment of any person;

(c) alters, destroys, conceals, or removes any item or other thing;

(d) makes, presents, or uses any item or thing known by the actor to be false;

(e) harbors or conceals a person;

(f) provides a person with transportation, disguise, or other means of avoiding discovery or apprehension;

(g) warns any person of impending discovery or apprehension;

(h) warns any person of an order authorizing the interception of wire communications or of a pending application for an order authorizing the interception of wire communications;

(i) conceals information that is not privileged and that concerns the offense, after a judge or magistrate has ordered the actor to provide the information; or

(j) provides false information regarding a suspect, a witness, the conduct constituting an Offense, or any other material aspect of the investigation.

187

799. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

800. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

801. Tom Mecham of the Board of Directors of the Law Firm of Kirton McConkie informed Plaintiff Brett L Eliason on February 11th, 2019 that there was an "undisclosed conflict of interest" between Craig McCullough of KMC Law and Bryan and Lisa Stephens.

802. Plaintiff made pleas for compassion and respect for the victims including his parents Max and Joyce Eliason along with all of the proceeding ancestors whose legacies and desires to protect the generations to follow had been violated.

803. Plaintiff reminded Kirton McConkie on numerous attempts including an in-person meeting with Ken Olsen of KMC Law Sr Management that their client Max D Eliason is still alive and the Settlor/Co-Trustee of the Joyce S Eliason Trust which had already been submitted to probate on June 22nd, 2018 under Civil #183901323 with intentionally frauded document.

804. Plaintiff made pleas to Dallin H Oaks to intervene which also went unheard. Every action which Defendants have taken against Plaintiff and his family and Father are each considered to be an act of "Obstruction of Justice".

805. Plaintiff has been prohibited from visiting his father since April 17th, 2019 when the Defendants realized that Plaintiff was intending on demanding a new Trustee be appointed and that he was utilizing his Power of Attorney to revoke the Joyce S Eliason Trust dated October 28th, 2015.

806. Defendants immediately filed false allegations against Plaintiff stating that he was "abusing and exploiting" his own father to the Utah Division of Adult Protective Services.   This action wherein Plaintiff was forced to dispute malicious and fraudulent allegations is considered to be an "Obstruction of Justice" as per Utah Law.

807. The humiliating presentation of Max D Eliason in front of Judge Faust is beyond reproach and shame on the Senior Management and Dallin H Oaks for finding the need to have their client deemed "incompetent" so as to protect their crimes from becoming public knowledge.

808. The associated isolation of both Max D Eliason and his son Brett L Eliason with the associated intentional character assassination are considered to be 'Obstruction of Justice".

809. The closure of the Eliason 2015 Trust accounts at Zions Bank is considered to be an "Obstruction of Justice" and was done to cause intentional financial and emotional distress of Plaintiff.

810. The closure of the Eliason 2016 Trust accounts at Zions Bank is considered to be an "Obstruction of Justice" and was done to cause intentional financial and emotional distress of Plaintiff.

189

811. The closure of the accounts of Eliason Eight, LLC at Zions Bank is considered to be an "Obstruction of Justice" and was done to cause intentional financial and emotional distress of Plaintiff.

812. The closure of the accounts of Eliason Enterprises, LLC at Zions Bank is considered to be an "Obstruction of Justice" and was done to cause intentional financial and emotional distress of Plaintiff.

813. The refusal to provide the funds which are granted to Plaintiff under the provisions of the Eliason 2016 Trust and those of the Joyce S Eliason Last Will and Testament is an intentional attack on Plaintiff's ability to secure legal counsel and is also and "Obstruction of Justice" as per Utah Law.

814. The malicious false allegations made by Lisa Stephens to the Unified Police Department concerning the emotional and financial abuse of Max D Eliason are blatant lies designed to Obstruct the Prosecution of the Defendants.

815. The installation of cameras and the associated key pads at the home of Max D Eliason is considered a violation of Plaintiff's privacy in addition to being considered an "Obstruction of Justice".

816. The forged "divorce decree" is considered "invasion of privacy" and also an "Obstruction of Justice".

817. The recent collusion with Jaryl Rencher and Mike Collins of Rencher/Anjewierden to have the matter dismissed in Court is considered an "Obstruction of Justice".

818. The employment of attorney Kent Snider to keep Plaintiff away from his father is considered an "Obstruction of Justice".

190

819.    The employment of attorney Roger Bishop to represent Mark Eliason, Lisa Stephens, Bryan Stephens, and Laurie Eliason who also indicates that Brett Eliason cannot see his father for Christmas is considered to be nothing shy of wicked and evil and also an "Obstruction of Justice".

820.    Plaintiff alleges that the Defendants are knowingly doing whatever it takes whether it be legal or not in order to deprive Plaintiff of his human rights and his right to his own birthright.

821.    Plaintiff requests once again that anyone who is knowingly participating in this form of wicked behavior be prosecuted with the same amount of respect and rights to defend themselves in the court of law as they have provided for plaintiff.  The actions demonstrated indicate the message of "let's kill him before he kills us…".

## THIRTY-FOURTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED PROVISION OF FALSE INFORMATION TO LAW ENFORCEMENT OFFICERS AND GOVERNMENT AGENCIES)

**2006 Utah Code - 76-8-506 — Providing false information to law enforcement officers, government agencies, or specified professionals.**

**76-8-506.    Providing false information to law enforcement officers or government agencies.**

**A person is guilty of violating this Utah Law if he or she commits any of the following actions:**

**(1)   knowingly gives or causes to be given false information to any peace officer or any state or local government agency or personnel with a purpose of inducing the recipient of the information to believe that another has committed an offense.**
**(2)   knowingly gives or causes to be given to any peace officer, any state or local government agency or personnel, or to any person licensed in this state to practice social work, psychology, or marriage and family therapy, information concerning the commission of an offense, knowing that the offense did not occur or knowing that he has no information relating to the offense or danger; or**
**(3)   knowingly gives or causes to be given false information to any state or local government agency or personnel with a purpose of inducing a change in the person's licensing or certification status or the licensing or certification status of another.**

822.   Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

823.   Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

824.   Plaintiff's last visit to his father was on April 17th, 2019 at which time Defendant Lisa Stephens called the Unified Police Department to have Plaintiff removed stating that she had a restraining order in place against her younger brother.

825.   Plaintiff's oldest niece Amy Stephens Menzel arrived along with three of Plaintiff's nieces and nephews and showed some form of "proof" that Plaintiff was "clinically insane" and that he had no rights to visit his father.

826.   Plaintiff was visiting his father with his oldest daughter Brittnie Lynne Eliason and were there to show "Grandpa" a collection of art which she had done in her AP Art Classes at Bountiful High School in this her graduating year as a Senior.

827. Amy Stephens also told Brittnie that she had no right to be there and that "she knew what she had done wrong" (which is nothing the Plaintiff nor Brittnie have any indication of to this day).

828. Lisa Stephens has knowingly provided false allegations concerning her younger brother and Plaintiff committing "abuse and exploitation" of his father with whom Lisa is knowingly blaming Plaintiff for doing exactly what she has done.

829. Plaintiff questions the Defense as to how it would be possible for Plaintiff to exploit his father financially when she and her husband have already stolen all assets of both estates.

830. The Defendants utilized attorney R. David Bishop and attorney Kent Snider to file elderly abuse charges to the State of Utah Adult Protective Services which Plaintiff was forced to appear at a recent hearing and was able to defend the allegations with ease wherein it was alleged that Plaintiff changed a $25 check from his father into a $25,000 check made payable to himself.

831. The Plaintiff does not believe his father has ever written a $25 check to his son, and the evidence will show that Plaintiff was drawing an extra $25,000/month during the last year he took care of his mother.

832. The Defendants are knowingly accusing the Plaintiff of taking a 15-day loan from his own company (Eliason Eight, LLC and Eliason Enterprises, LLC) which he and his two siblings had purchased from Max and Joyce Eliason within the scope of the Eliason 2015 and Eliason 2016 family Trusts.

833. The Defendants are aware that Lisa Stephens deducted the amounts owing from Plaintiff's next oil disbursement check and that they had already raped and pillaged both of the Estates by tens of millions of dollars without leaving Plaintiff one cent.

834. Plaintiff also states that before a June Hearing within the Third District Court under Judge Skanchy, Kent Snider who supposedly represents Plaintiff's father stated to the judge that Max D Eliason "hated the guts of his youngest son and never wanted to see him again".

835. Plaintiff has never had one argument with his mother or father and Kirton McConkie knows that Craig McCullough was told by Joyce S Eliason to not allow Bryan Stephens to be involved in one aspect of her estate planning process.

836. Plaintiff's Durable Power of Attorney was removed from Plaintiff illegally and through false allegations to Judge Faust in a hearing on June 10th to which Plaintiff was not informed existed.

837. Every one of the instances stated should be considered another count of this despicable form of abuse of power with the intent to destroy the Plaintiff's emotional and financial well-being.

838. "But for the existence of the Breach of Fiduciary Duty to Max and Joyce Eliason, this violation of law along with every other allegation herein would not have been needed to commit since there would not have been a crime to "cover-up and bury".

## THIRTY-FIFTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED INVASION OF PRIVACY AND THE ALIENATION OF AFFECTION)

**Utah Invasion of Privacy Laws**

*There are some vital aspects concerning disrupting the privacy of a person in Utah with the help of false publicity. According to the Utah law on the invasion of privacy, a person is liable for disturbing the privacy of another if he or she publicizes something about the said individual that affects his or her image and keeps them in a false light. Furthermore, if keeping the said other individual in such a false light tends to be highly offensive to that individual, then the person who brought the said other individual into a such a false light is liable for invasion of privacy.*

*According to this aspect of invasion of privacy in Utah, there are three key aspects you should consider before making a claim. First, the disclosure of private facts must be made to the public and not to any individual in private. Second, such information must be private or confidential facts and mustn't be commonly known. And third, the disclosure of such confidential information must be able to deter the public image of the said individual, harm his or her reputation in the society, or must be highly offensive to him or her. The only evidence needed to prove such cases in the courts is that the matter should have been made public. However, one of the most challenging parts to prove, in this case, is whether the facts disclosed were highly objectionable to the said individual or not.*

**Alienation of affections** *is a common law tort, abolished in many jurisdictions. Where it still exists, an action is brought by a spouse against a third party alleged to be responsible for damaging the marriage, most often resulting in divorce. The defendant in an alienation of affections suit is typically an adulterous spouse's lover, although family members, counselors and therapists or clergy members who have advised a spouse to seek divorce have also been sued for alienation of affections.[1]*

*The tort of alienation of affections often overlaps with another "heart balm" tort: criminal conversation. Alienation of affections has most in common with the tort of tortious interference, where a third party can be held liable for interfering with the contractual relationship between two parties.*

839.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

195

840. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

841. Plaintiff alleges that the Defendants coerced and/or bribed a number of individuals who were compensated as "actors" to assist in the objective of "Soul Capture".

842. Defendants Zant Doty and Kindra Kauer were employed by Plaintiff in September of 2018 following the intentional sabotage of the Retail store within Trolley Square known as "My 3-D Me".

843. Plaintiff accepted them as cherished friends and offered all of the generosity he could hoping that the store could recover following the Bair family who "quit" with the intentions of accepting an undisclosed offer by Bryan and Lisa Stephens who were not satisfied with just "embezzling" Plaintiff's inheritance.

844. Plaintiff assumed that Zant Doty was capable of recovering the lost software and would be able to get the store open and running so as to provide an income stream (without knowing that Defendants had been stealing millions of dollars for years).

845. Defendant Doty inquired of Plaintiff if he could "move in" with him temporarily since the home he was living in Jeremy Ranch had been sold.

846. As the "pieces of the puzzle" unfolded since Plaintiff generously accepted Defendant Zant Doty and Kindra Kauer into his life and business affairs, it was discovered that Mr. Doty was a client of Defendant Bryan Stephens within the CPA profession of Plaintiff's brother-in-law.

196

847. As the litigation of this matter began in March of 2019, the Plaintiff noticed several odd actions such as the filing of the initial complaint herein on a "Federal Form" which Plaintiff tried to rectify but which would be used against him by Kirton McConkie at the hearing on July 10th, 2019.

848. As Plaintiff reviewed the documents of the Eliason 2016 Trust, it became apparent by the behavior in Court and his intentional changes on important documents, that Mr. Doty was playing the role of "caretaker" which is referenced in the Trust.

849. Plaintiff question Mr. Doty concerning the interaction with him and Bryan Stephens, and the Defendant produced phone records indicating that he had been in contact and working under the direction of the Defendants to have Plaintiff regarded as "incapacitated and insane".

850. This being done so as to meet the associated reason which Defendants placed within the Eliason 2016 Trust to dismiss a Trustee and not owe him a duty which was rightfully his.

851. Following the prior injunction hearing with Judge Mow in July of 2019, Plaintiff became suspicious at the sudden need for the Plaintiff to finalize a divorce proceeding which was initiated in 2016 but which had never been finalized.

852. Plaintiff discovered within the Eliason 2016 Trust that in the event that Plaintiff was deemed "incapacitated" for any reason by one of the beneficiaries, then the Trustee of the entity would go to Plaintiff's spouse; Veronique Eliason.

853. The verbiage added therein indicated that the "receipt" of any divorce decree at any time would forfeit all rights of Veronique Eliason to become the Trustee following the appointment of Plaintiff Brett Eliason who was deemed "incapacitated".

854. Upon the realization that Mr. Doty and Kindra Kauer were "actors" in this form of "Truman Show" which Defendants had created; Plaintiff ordered Mr. Doty to leave after he conceded that he was playing the role of "Guardian".

855. Plaintiff discovered among the documents within his den at his personal residence that Mr. Doty had obviously hacked into Plaintiff's computer and found an online divorce proceeding from 2016 and needed to go through Plaintiff's emails in order to locate the Plaintiff's password and login in order to find the original statements.

856. Defendants Zant Doty and Kindra Kauer emptied all of the Plaintiff's drawers while he was visiting his daughter in California in January of 2019 in order to find associated information needed for the divorce proceeding.

857. Within the attached exhibits is an entire Application, Parenting Plan, Answer, Findings of Fact and Conclusions of Law, and a finalize Decree of Divorce dated April 21st, 2016.

858. Whereas Mr. Doty left a personal paper in the middle of the document and whereas he was secretly being employed to cause intentional damage to Plaintiff's emotional and financial condition; it is alleged that Mr. Doty and Ms. Kauer worked in collusion and within the already existing conspiracy to

fabricate a "divorce decree" so as to meet the requirements to dismiss the rights of Plaintiff to appoint his spouse as Trustee on behalf of his daughters.

859. The details of the "Decree of Divorce" demonstrate without a doubt that the Defendants who were working under the direction of Kirton McConkie had discovered and included extremely private and embarrassing statements which were never to be made public on any condition.

860. The "fraudulent" decree of divorce also indicated that Plaintiff's income was $15,000/month which is assumed the Defendants felt that would be a reasonable income for Plaintiff despite them already raping and pillaging tens of millions of dollars while still targeting the demise of the Plaintiff's emotional and financial well-being.

861. Kirton McConkie actually represented Plaintiff for several weeks beginning in November of 2016 which was the same week that Bryan Stephens and Craig McCullough had attempted to deprive Plaintiff of $2M and were caught by Joyce.

862. Among the fraudulent items associated therewith, is the fraudulent creation of debts owed to Eliason Enterprises/Joyce Eliason and secured by each of the automobiles which Defendants Bryan Stephens and Lisa Stephens had decided to take possession of as they caused the demise of Plaintiff's financial condition.

863. The divorce decree fraudulently created a debt of $75,000 secured by Plaintiff's Veronique Eliason's Cayenne Turbo with payments due of $2,250/month.

864. The divorce decree fraudulently created a debt of $35,000 secured by Plaintiff's Porsche 911 Cabriolet with payments due of $2,250/month.

865. The divorce decree fraudulently created a debt of $160,000 secured by Plaintiff's Ferrari F430 with payments due of $2,500/month.

866. The divorce decree fraudulently created a debt of $75,000 secured by Plaintiff's Porsche Panamera Turbo with payments due of $2,250/month.

867. The divorce decree fraudulently created a debt of $25,000 secured by Plaintiff Brett Eliason's Porsche Cayenne Turbo with payments of $2,250/month.

868. Each of these debts are showing as owing to Eliason Enterprises, LLC and Plaintiff alleges that these loans were created to justify the Defendants actions of depriving Plaintiff of any and all rights associated with the family real estate holding company.

869. The divorce decree states that Brett L Eliason is granted a divorce from Veronique Eliason which becomes final on entry and approved by Judge David Hamilton in the Second Judicial Court in Farmington, Utah.

870. The Decree grants custody rights and alimony due and states that Plaintiff owes Veronique Eliason $387,500 upon the sale of their residence on 634 Ridge Top Lane.

871. This document has clearly been created by KMC Law and Bryan Stephens.

872. Plaintiff's Brett L Eliason and Veronique P. Eliason cannot believe the malicious and heinous greed and sadistic manner in which the "Lawyers of Jesus Christ Himself" even went to the extremes of "getting Plaintiff divorced"

so as to secure their right to name Plaintiff's sister-in-law Laurie Eliason as the Trustee representing his best interests.

873. Plaintiff would appreciate a response from Dallin H Oaks who is the "High Managerial Agent" orchestrating these actions if the Defendants also saw fit to obtain a "Temple Divorce" while they reek of hypocrisy, corruption, and greed. "Families are Forever Brother Oaks?"

## THIRTY-SIXTH CAUSE OF ACTION:

## (ACCOUNTING FRAUD/BREACH OF FIDUCIARY DUTY BRYAN STEPHENS OWED MAX AND JOYCE ELIASON AND BENEFICIARIES)

Being held accountable as a fiduciary has one very crucial implication. Whereas assertions of failure to exercise *due care* (the normal standard to which outside accountants are held) lie within the domain of tort law, assertions of failure to meet the requirements of *loyalty* are found within fiduciary obligations. In the instance of allegations of breach of fiduciary duty, the burden of proof shifts to the respondent accountant, who must show, *inter alia*, that all material facts had been provided to the beneficiary and that all other fiduciary obligations have been satisfied.

In the event of a finding of failure to exercise ordinary due care, as defined in the professional standards with which the accountant is obligated to comply, damages are limited, typically, to actual damages suffered by the plaintiff, assuming that the tripartite required demonstrations of liability, reliance and damages have been achieved by the complaining party. In contrast, a failure to meet fiduciary obligations may result in punitive damages as well as the awarding of plaintiff's legal fees, and thus presents a significantly greater financial risk for the accountants and for their insurers. The burden of proof, coupled with the potentially greater monetary damages, makes defending against well-founded accusations of having been a fiduciary and having breached associated duties to the beneficiary a much more serious concern.

874. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

875. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

876. Defendant Bryan P Stephens has been the CPA of Max and Joyce Eliason since he married their daughter Lisa E Stephens as a benefit of being a "member of the family'.

877. Plaintiff alleges that Bryan P Stephens worked in collusion with Craig McCullough of Kirton McConkie since the day he introduced Max and Joyce Eliason to Kirton McConkie using Fraudulent Misrepresentation on June 20th, 2013.

878. Plaintiff alleges that Defendants Bryan and Lisa Stephens have charged excess amounts to prepare tax returns and "balancing the books" and have utilized their position of trust to embezzle the estates of Max and Joyce Eliason which represents Abuse and Exploitation of vulnerable adults.

862. Defendants refuse to provide accounting information to client/beneficiary and Trustee as per Utah Law and has been the driving force behind this seven-year plot to steal his in-laws sacred life's work which has been passed down from generations. 868. Kirton McConkie is responding as if this was a normal line of business which they are protecting and have taken no measures to

202

restore the stolen assets and cash flow and return them to their appropriate locations within the Estate Plan.

## THIRTY-SEVENTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED FALSE ACCUSATIONS)

A **false accusation** is a claim or allegation of wrongdoing that is untrue and/or otherwise unsupported by facts.[1] False accusations are also known as **groundless accusations** or **unfounded accusations** or **false allegations** or **false claims**. They can occur in any of the following contexts: Accusations that are determined to be false based on corroborating evidence can be divided into three categories:[2]

- A completely false allegation, in that the alleged events did not occur.
- An allegation that describes events that did occur, but were perpetrated by an individual who is not accused, and in which the accused person is innocent.
- An allegation that is false, in that it mixes descriptions of events that actually happened with other events that did not occur.

A false allegation can occur as the result of intentional lying on the part of the accuser;[3][4] or unintentionally, due to a confabulation, either arising spontaneously due to mental illness[3] or resulting from deliberate or accidental suggestive questioning, or faulty interviewing techniques.[5] In 1997, researchers Poole and Lindsay suggested that separate labels should be applied to the two concepts, proposing that the term "false allegations" be used specifically when the accuser is aware that they are lying, and "false suspicions" for the wider range of false accusations in which suggestive questioning may have been involved.[6]

When a person is suspected of a wrongdoing for which they are in fact responsible, "false accusation may be used to divert attention from one's own guilt".[4] False accusation may also arise in part from the conduct of the accused, particularly where the accused engages in behaviors consistent with having committed the suspected wrongdoing, either unconsciously or for purposes of appearing guilty.[4]

203

Additionally, once a false accusation has been made – particularly an emotionally laden one – normal human emotional responses to being falsely accused (such as fear, anger, or denial of the accusation) may be misinterpreted as evidence of guilt.

863. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

864. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

865. Defendants Mark Eliason and Lisa Stephens filed a motion with Judge Kara Pettit of the Third District Court on May 03rd, 2019 in the matter concerning the Guardianship and Conservatorship of Max D Eliason and included Adult Protective Services with representation by Defendant Roger D Bishop representing the siblings of Plaintiff.

866. Plaintiff Brett L Eliason was never informed of the contents of said allegations against him which are now showing as "Private" on the records of the Court.

867. Plaintiff alleges that any negative information found therein has been fraudulently created in order to cast blame on Plaintiff and accuse him of the actions the Defendants are covering up within the complete embezzlement of the Max and Joyce Eliason Estate.

868.    Plaintiff's rage is beyond infuriated to be told by his parents' rapists that have robbed both of them blind while attacking their younger sibling that he has no rights whatsoever to visit his father Max D Eliason despite being the only one who upheld his fiduciary duty to his parents religiously.

869.    Plaintiff Demands that Kirton McConkie accept full responsibility for being the employer of the two attorneys who defend the Plaintiff from his god given right to see his own father and to publicly apologize for the civil rights violations and the hideous display of "abuse of office and power" by one who sits high within the walls of the sacred LDS Temple and claiming to be "the Prophet To Be".

## THIRTY-EIGHTH CAUSE OF ACTION:

## (FRAUD WITHIN THE ELIASON 2016 TRUST AND CONSPIRACY TO COMMIT AGRAVATED MISHANDLING OF ASSETS BY A FIDUCIARY)

Liability of Trustees and Rights of Persons Dealing with Trustee

75-7-1001 Remedies for breach of trust. **(1) A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust. (2) To remedy a breach of trust that has occurred or may occur, the court may: (a) compel the trustee to perform the trustee's duties; (b) enjoin the trustee from committing a breach of trust; (c) compel the trustee to redress a breach of trust by paying money, restoring property, or other means; (d) order a trustee to account; (e) appoint a special fiduciary to take possession of the trust property and administer the trust; (f) suspend the trustee; (g) remove the trustee as provided in Section 75-7-706; (h) reduce or deny compensation to the trustee; (i) subject to Section 75-7-1012, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace**

**trust property wrongfully disposed of and recover the property or its proceeds; or (j) order**

**any other appropriate relief.**

8.    **Enacted by Chapter 89, 2004 General Session**

75-7-1002 Damages for breach of trust. (1) A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of: (a) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or (b) the profit the trustee made by reason of the breach. (2) Except as otherwise provided in this Subsection (2), if more than one trustee is liable to the beneficiaries for a breach of trust, a trustee is entitled to contribution from the other trustee or trustees.  A trustee who received a benefit from the breach of trust is not entitled to contribution from another trustee to the extent of the benefit received.

870.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

871.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

872.    The Eliason 2016 Trust was executed on December 22nd, 2016 with Max and Joyce Eliason as the respective Settlors.

873.    The purpose of said Trust was to replace the Eliason 2015 Trust with both of the purposes being to act as an instrument to purchase the assets associated with two family entities; Eliason Eight, LLC and Eliason Enterprises, LLC.

206

874. Joyce S Eliason feared that her oldest children would attack Plaintiff after she passed away and therefor executed a "First Amendment" to the Eliason 2016 Trust on December 8th, 2017 just weeks before she passed away.

875. The First Amendment specifically demands that all three Beneficiaries act as Co-Trustees with a unanimous vote required on all activities.

876. Plaintiff is also considered an equal Co-Beneficiary who has the right to withdraw funds of up to 5% of the Trust annually with Joyce requesting that the respective Beneficiary be notified of said rights.

877. Plaintiff was provided with a copy of the Eliason 2016 Trust upon demands several months after the death of Joyce S Eliason.

878. Kirton McConkie had knowingly been acting in "conflict of interest" with Plaintiff's siblings to disown and destroy Plaintiff emotionally and financially.

879. Plaintiff was never informed of his rights as Trustee or Beneficiary nor that he had the right to withdraw and borrow money for any and all of his cash needs since 2016. 886. Defendant Kirton McConkie and Craig McCullough owes a duty of equality to Plaintiff as a Beneficiary, and a duty of Loyalty to Max and Joyce Eliason having supposedly represented them during their Estate Planning needs.

207

880. Plaintiff alleges that his siblings and his in-laws colluded with Bryan Stephens and Craig McCullough within this document and every other one that exits in order to allow provisions to specifically disown Plaintiff whether the provisions make any sense or are even legal.

881. Plaintiff demanded his legal rights to accounting for the Trust on May 21st, 2019 and received instead a letter on May 26th, 2019 which was backdated to May 20th, 2019 wherein Craig McCullough illegally removed Plaintiff as Trustee under the self-appointed role of Trust Protector which had not yet been heard of by Plaintiff nor his Parents.

882. In a letter to Kirton McConkie Sr Management and Mr. Lee Wright, Plaintiff acting on behalf of his father and under his rights as a holder of a Durable Power of Attorney; fired Craig McCullough which Max Eliason demanded and who clearly had the right as the Settlor of the Eliason 2016 Trust.

883. In order to address the demands of Plaintiff on behalf of his father, Kirton McConkie proceeded to hire two "outside attorneys" (Kent Snyder and R David Bishop) to conspire with Mark Eliason, Lisa Stephens, Bryan Stephens, and Laurie Eliason to force an emergency hearing with Judge Faust demanding rights of Conservatorship and Guardianship while filing documents alleging that Plaintiff was abusing his father financially and emotionally as he tried to revoke the Joyce S Eliason Trust which was still revocable since Max was shown as the Settlor.

208

884.   Below is the First Amendment which Craig McCullough himself told Plaintiff

that this was being done because his mother "loved him so much" and feared

that his two siblings would assault him from envy and resentments.

FIRST AMENDMENT TO
THE 2016 ELIASON TRUST

This First Amendment to The 2016 Eliason Trust ("Trust") originally dated December 22, 201 6, is made and entered into this day of December, 2017, by Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason, Trustees of the Trust (the "Trustees").

The Grantor, Joyce S. Eliason and Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason, the Beneficiaries, pursuant to Utah Code Section 75-7-411 as a modification of a noncharitable irrevocable trust by consent, do hereby consent to this First Amendment to the Trust as follows:

1.   Section 4.8 Manner of Acting is hereby amended in its entirety to read as follows:

4.8   Manner of Acting. When more than one Trustee is serving, the unanimous consent of all of the then serving Trustees, whether individual or corporate, shall be required to make any decision, undertake any action, or execute any document affecting the Trust.

2.   Except as specifically herein amended, The 2016 Eliason Trust, dated December 22, 2016 is hereby ratified and confirmed.

IN WITNESS WHEREOF, the Trustees have executed this First Amendment to The 2016 Eliason Trust the day and year first above written.

TRUSTEES:

_____
Mark Dean Eliason

_____
Lisa Eliason Stephens

_____
Brett Lynn Eliason

2016

209

885.  Joyce Eliason's requests and wishes were dismissed along with every other desire she had along with her husband as it pertains to the legacies of their great lives.

886.  Craig McCullough acting on behalf of Kirton McConkie knew that he had no intention of ever allowing Plaintiff to see a dime of this entity.

887.  Whereas the fraud found within all documents is so extensive, there is no reason to believe that one page of this agreement is valid since the Defendants have no shame in modifying government documents and replacing pages after the Settlors have executed the respective documents.

## THE 2016 ELIASON TRUST

This Trust Agreement, dated this 2-2-— day of December, 2016, is between Joyce S. Eliason (hereinafter called the "Settlor"), Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason (hereinafter called the "Trustee") and Craig F. McCullough (hereinafter called the "Trust Protector"). The Settlor hereby transfers to the Trustee the property described on Schedule A attached hereto and incorporated herein. This property and any other property which subsequently may be transferred to or received by the Trustee (all of which are sometimes referred to herein as the "Trust Estate") shall be held by the Trustee in trust and shall be administered upon the terms and conditions hereinafter set forth. The Trustee may purchase insurance on the life of Settlor. The name of the Trust shall be The 2016 Eliason Trust.

210

888. Plaintiff directs the readers' attention to the fact that Craig McCullough has appeared as a Trust Protector in the opening paragraph of the 2016 Eliason Trust and refers to addition property which subsequently may be transferred to or received by the Trustee and shall be referred to herein as the "Trust Estate".

889. Whereas Craig McCullough had not disclosed that he was illegally representing the associated Defendants rather than his own stated Clients Max and Joyce Eliason, it is unlikely that anything that Craig McCullough has accomplished as Trust Protector could possibly be considered legal.

890. It is alleged that the fraudulent transfer of oil and mineral rights along with any real estate properties were provided for within this definition of "Estate Property".

891. The fraud found within the Eliason 2016 Trust is apparent on almost every page of the document with every paragraph being designed to deprive Plaintiff and his daughters of their rights as Trustee and or Beneficiary.

### ARTICLE 1 - FAMILY, BENEFICIARIES, AND TRUST PURPOSES

1.1     Family.

1.1.1 Settlor's Spouse. Settlor is married to Max D. Eliason.

1.1.2 Settlor's Children. Settlor has three children whose names and birth dates are as follows:

| Name | Birth Date |
| --- | --- |
| Mark Dean Eliason | March 27, 1960 |
| Lisa Eliason Stephens | January 9, 1962 |
| Brett Lynn Eliason | January 19, 1965 |

All references to Settlor's children are to such children and to any child subsequently born to or legally adopted by Settlor. The Trustee may rely upon these birth dates for all purposes.

1.2     Beneficiaries. The beneficiaries of this Trust are:

1.2.1 Settlor's children;

1.2.2 The descendants of Settlor's children; and

1.2.3 Such other persons as identified in this Trust Agreement.

1.3     Trust Purpose. The Settlor establishes this Trust for the benefit of the Beneficiaries.

### ARTICLE 2 - DISTRIBUTION OF TRUST ESTATE DURING LIFETIME OF SETTLOR AND SETTLOR'S SPOUSE

2.1     Trustee to Pay Expenses from Trust Property. During the lifetime of Settlor and Settlor's spouse, the Trustee shall invest and reinvest the Trust Estate, collect the income therefrom and may apply such income to the payment of Trust expenses, insurance premiums or other charges on any insurance policies that comprise part of the Trust Estate.

892. Plaintiff points out that the Beneficiaries include "Such other persons as identified in the Trust Agreement" under Section 1.2.3 even though the Trust is established for the benefit of the Beneficiaries.

893. The entire purpose of the Trust was to make payments into the Eliason 2016 Trust in order to facilitate the purchase of Eliason Eight, LLC and Eliason Enterprises, LLC and all proceeds therewith were to provide a fund accessible for each beneficiary to borrow against with minimal payback requirements and to remain in place until the death of both Max and Joyce Eliason.

894. Plaintiff states that he as a Co-Trustee was never informed that the funds would be investable or that there would be any "income producing" properties since all that was to be deposited therein was monthly payments to purchase the respective assets from Max and Joyce Eliason.

895. Plaintiff is also curious as to the Trust Expenses which could be incurred without his knowledge as a Trustee and Beneficiary and to whom the Defendants would have placed an insurance policy on and for what reason and how much.

Except as set forth in Section 7.4, the Trustee shall not make distributions or loans to or for the benefit of the Beneficiaries pursuant to this ARTICLE 2 if there are amounts owing to Settlor or Settlor's spouse from the Trust or amounts owing to the Trust from Settlor or Settlor's spouse.

213

896.    The provision herein allows the Trustee to not make distributions or loans to or for the benefit of Beneficiaries if there are amounts owing to the Settlor or Spouse.

897.    Joyce Eliason caught and strongly rebuked Bryan Stephens and Craig McCullough on November 7th, 2016 stating "how dare you rob my youngest child of $2M without asking your client first.

898.    Kirton McConkie was informed that Bryan Stephens was never to be associated with the Estate planning efforts of KMC Law on hers or her husband's Estate Plan.

899.    The provision which was placed in the Eliason 2016 Trust just days after Joyce was infuriated the "Craig seemed to work for the Stephens instead of her"; shamelessly created this paragraph and created additional debts owed by Plaintiff to which Joyce Eliason had already stated never had a note associated therewith.

900.    Joyce specifically injected over $400K into the Trust the same day with the rights of withdrawal for each Beneficiary being 5% of the total/year but expires immediately if the Beneficiary does not request the amount.

901.    Plaintiff should have had access to 5% of $5,000,000 per annum according to the terms of the Eliason 2016 Trust.

902. His demand that Kirton McConkie allow him access to his rightful distribution were ignored while the Board of Directors under Dallin Oaks decided to have the Beneficiary deemed "incapacitated" which according to the Estate Documents of KMC Law could legally be done by one of the Beneficiaries (Lisa the "Sole Trustee" one would assume with her own bribed attorney right by her side to attest to the legality according to Kirton McConkie).

903. The following paragraph requires a response by the Defendants as to how they were able to legally make any and all decisions of disbursement without the required unanimous decision from all Co-Trustees.

Subject to Sections 5.8 and 6.3.4, if there are no amounts owing to Settlor or Settlor's spouse from the Trust nor amounts owing to the Trust from Settlor or Settlor's spouse, the Trustees, acting unanimously, may make equal distributions to the subtrusts for Settlor's children, or if a child is deceased to the collective subtrust for the benefit of the descendants of a deceased child to be held, administered and distributed in the case of a distribution to a subtrust for the benefit of Settlor's child pursuant to Section 3.2.1 or in the case of a distribution to a collective subtrust for the benefit of the descendants of a deceased child pursuant to Section 3.2.2.

904. Plaintiff points out to the Court that even if the Defendants created fraudulent debts owed by Plaintiff to his Parents; it still required a unanimous decision from all Trustees and does not make exceptions for Trustees to be disallowed if they had suddenly been the recipients of fraudulently incurred debt.

905. Plaintiff questions to what "income" the writer and creator of said document could be referring since the payments of amounts owed to Max and Joyce

215

Eliason are not considered income as per generally accepted accounting principles.

906. Furthermore, to what distributions would the creator refer to since any loans made hereunder until that time in which the Trust is no longer needed but in nowise could be considered a distribution except for the annual 5% which Plaintiff/Trustee and Beneficiary has been deprived for three years on this Trust and four years on the Eliason 2015 Trust.

907. Defendants have stolen tens of millions of dollars in oil and mineral rights and even took $722k from Eliason Eight, LLC to wire income taxes on the stolen oil.

Any net income (which may be the whole of such income) not so paid over or applied shall be accumulated and added to the principal of the Trust at least annually and thereafter shall be held, administered and distributed as a part thereof.

## ARTICLE 3 - DISPOSITION OF TRUST ESTATE AFTER DEATH OF SETTLOR AND SETTLOR'S SPOUSE

3.1    Distribution Upon Death: Collection of Insurance Proceeds. Upon the Settlor's death, if Settlor's spouse is surviving, the Trustee shall distribute that portion of the Trust Estate, if any, which is included in Settlor's estate for federal estate tax purposes to the Trustees of The Joyce S. Eliason Trust, a revocable trust established by Settlor. If no qualified Trustee makes claim to such portion of the Trust Estate within six (6) months after Settlor's death, the Trustee shall distribute such portion to the personal representative of Settlor's estate. Upon the death of Settlor, the Trustee shall make reasonable efforts to collect the proceeds of all insurance policies which become payable to the Trustee pursuant to this Trust Agreement. The Trustee shall have full authority to take any action the Trustee deems best in regard to collection and to pay the expense thereof, including the expense of any litigation, out of the principal of the Trust Estate.

-2 4820-8533-3565

908.    Whereas Kirton McConkie dismissed its Fiduciary Duty of Loyalty and that of a Fiduciary to Max and Joyce Eliason before the relationship was consummated, the requirement for Craig McCullough to be non-partial to each Beneficiary was dismissed along with it.

909.    Plaintiff informs the Defendants that all of the equity within the Eliason 2016 Trust was meant to be used as a vehicle to purchase the ownership of Eliason Eight, LLC and Eliason Enterprises, LLC with the Beneficiaries entitled to borrow according to their associated needs.

910.    The verbiage states that a qualified Trustee needs to make a claim on the proceeds of an undisclosed Life Insurance Policy within six months after the death of the Settlor or the Trustee shall distribute such portion to the Personal Representative of the Settlor's Estate.

911.    Plaintiff reminds the Defendant that his rights as Co-Trustee and his rights as Personal Representative are equal to both Lisa Stephens and Mark Eliason and so it would have been impossible for Lisa to act as either in distributing said proceeds.

The Trustee shall have full authority to make any compromise or settlement with respect to the policies which it may deem advisable, and to give all necessary and proper releases of liabilities. The Trustee, however, shall not be obligated to incur any expense in making collection of the proceeds of any policy unless indemnified by the beneficiaries hereof. The proceeds of the insurance policies shall be added to and become a part of the Trust Estate and shall be held, administered, managed and distributed as hereinafter set forth.

217

912.   Plaintiff demands a response as to what compromise or settlement is inferred to herein which would be needed on an undisclosed Life Insurance Policy which would have required Plaintiff's Authority and disclosure when this entity was created in December of 2016; just one month after Joyce Eliason rebuked Bryan Stephens and Craig McCullough for attempted fraud in the amount of $2M.

913.   Plaintiff alleges that this Life Insurance Policy was fraudulently initiated and payable with amounts due to Craig McCullough as part of his "compensation plan" for delivering the two Estates to Bryan and Lisa Stephens.

914.   Whereas the morphine overdose of Joyce S Eliason corresponds exactly to 5 years since the diagnosis of Joyce S Eliason; Plaintiff demands to know the expiration date of said policy which would add additional evidence concerning the allegation that the Defendants sought to murder Joyce S Eliason just after signing the fraudulent document but right before the insurance policy expired.

915.   Regardless of the allegations, Plaintiff has been denied his right to have any and all accounting by the Defendants which is a clear violation of law and the deprivation of his rights as a beneficiary of the Estates of his parents.

916.   The Paragraph also clearly states the Trustee has all rights to pay for any and all litigation expenses which have been withheld from him as the rightful beneficiary and heir to his rightful claim and birthright granted by his parents Max and Joyce Eliason.

917.   3.2 Distribution - Separate Trusts. Upon the death of the later to die of Settlor and Settlor's spouse, the Trustee, as soon as is reasonably practicable, shall divide the remaining property of the Trust Estate into equal shares to create one subtrust for each of Settlor's then living children and one subtrust collectively for the descendants of each of Settlor's then deceased children. The Trustee shall divide the assets of the collective subtrust for the descendants of each the Settlor's then deceased children among such descendants by right of representation to create a separate subtrust for each of the descendants of the Settlor's then deceased children. The Trustee shall administer and distribute the sub trusts for Settlor's children under the provisions of Section 3.2.1. The Trustee shall administer and distribute the sub trusts for Settlor's deceased children's descendants under the provisions of Section 3.2.2.

918.   Section 3.2 states that upon the death of both Max and Joyce Eliason, the remaining property of the Trust Estate shall be divided equally for the Settlor's then living children.  However; "The Trustee" had already been given the right to divide the property to those who did not owe anything to Max and Joyce Eliason and it has been proven that the Eliason 2016 Family Trust has already been distributed thereby enabling the embezzlement to appear legitimate.

919.   Each reference to "The Trustee" implies that there is but one Trustee while the associated documentation clearly proves there are three Co-Trustees that comprise "The Trustee".

920.   Therefore, any and all distributions and associated actions are considered null and void and Plaintiff demands the rescission thereof with penalties imposed at the maximum allowed by society upon those who have abused their duties as "Fiduciaries" and those whom Max and Joyce Eliason loved and were trusted.

219

921. As is the case with every instrument under the Eliason Estate Plan; the Defendants have refused to provide one statement of accounting and have illegally removed assets from the Trusts and have also illegally removed Plaintiff of his rights to serve as mandatory Co-Trustee as per the wishes of Max and Joyce Eliason.

922. 3.2.4 <u>Settlor's Intent</u>. Settlor intends that, upon the death of any Beneficiary (regardless of his or her generation from the Settlor) of any subtrust under this Trust, except to the extent that the Beneficiary effectively exercises his or her power of appointment, the property in that subtrust be divided, as set forth above, by right of representation into separate lifetime trusts for the Beneficiary's surviving descendants with each of those descendants becoming a Beneficiary of his or her own trust and, similarly, to be disposed of through all succeeding generations to the maximum extent permitted under the State laws which govern this Trust.

923. Despite the various fraudulent additions which have allegedly been integrated within the document, the "Settlor's Intent" was correct wherein each Beneficiary would have representation therein for the benefit of their own lineage.

924. Plaintiff was not informed that he was a beneficiary or a Trustee until May of 2019 at which time he was "fired" and replaced by his sister in law Laurie Eliason who has no right as per the Trust Agreement to serve in said position.

9.    **ARTICLE 4 TRUSTEE PROVISIONS**

**4.1    Trustee Succession.**

    **4.1.1 Trustee. The following will act as original and successor Trustees in the**
**following order of succession:**

        **(a) Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn**
**Eliason to serve jointly.**

925.    The verbiage found within the Trust along with the First Amendment leaves no doubt as to who was intended to be Trustee of this Entity.

926.    Tens of millions of dollars have evaporated through the Eliason 2016 Trust and Defendants refuse to provide any related information.

    5.6.1 Payment to Guardian. To pay the guardian of any beneficiary such amounts of the income or principal of any trust created hereunder of which such beneficiary is a beneficiary as the Trustee may consider appropriate to reasonably compensate such guardian for expenses properly incurred in the care and custody of such beneficiary.

927.    Plaintiff accepted the request of an Engineer named Zant Doty to stay at his personal residence while they worked together to open the store "My 3-D Me, LLC".

928.    Plaintiff discovered several months later that Mr. Doty was acting the role of "Guardian" as per the Eliason 2016 documents since this permitted any normal rules to be applicable to Plaintiff's rights as Trustee or Beneficiary.

221

(a) If any Beneficiary wants to purchase a home, invest in a business or establish himself or herself in a professional practice or other career, the Trustee may pay portions of the principal of any trust of which such Beneficiary is a beneficiary to such Beneficiary for such purposes or acquire assets for such purposes as a part of the trust, if the Trustee shall consider that such payments will not jeopardize the probable future needs of the other income beneficiaries of such trust, and that (in the case of a business venture) there is a reasonable chance of success.

929.   Plaintiff is deeply offended to see that the Eliason 2016 Trust was to utilized for the purchase of a home or to invest in a business or establish any professional practice or career despite the Law Offices of KMC Law telling Plaintiff he had no rights whatsoever under the provisions of any trust and instead are allowing him to go into foreclosure and/or become evicted from his own store.

(b) Settlor expects Settlor's children, or the families of Settlor's children, to be treated with substantial equality unless the Trustee considers unequal treatment advisable because of disparity of benefits received from Settlor, or any other person, illness, educational expense or other special needs or circumstances.

930.   Plaintiff points out this added verbiage which permits the Defendants to decide whether or not Plaintiff has the right to any distribution based on prior disparity among the Beneficiaries.

931.   Plaintiff reminds the Court and the Defendants that the letter which Joyce Eliason wrote on November 7th, 2016 erased any and all potential for there to be a consideration for disparity of any and all benefits and this is but one more indication that Bryan Stephens and Craig McCullough have been in control of all documentation since the beginning of this relationship.

5.8.3 <u>Insurance on Life of a Trustee</u>. If insurance on the life of any person shall

become an asset of the Trust or any trust hereunder, such person, if and while acting as a trustee, shall have no power or authority to change beneficiaries or to obtain the cash or loan value of such insurance or to exercise any other right, privilege or incident of ownership with respect to such insurance. All incidents of ownership of such insurance shall be vested solely in the trustee other than such person. All rights, privileges and incidents of ownership concerning such insurance shall be exercised by a co-trustee or successor trustee and not the trustee who is the insured under the policy.

932.    Plaintiff demands to know whether or not the Defendants took out a life insurance policy on himself similar to that of Joyce S Eliason with the knowledge that their intent was to emotionally and financially destroy plaintiff thereby increasing or being the cause of his death.

6.3 Powers of Trust Protector.

6.3.1 Trustee Removal and Appointment. In the Trust Protector's sole discretion, the Trust Protector may remove Trustees, require any or all then serving Trustee or Trustees to resign, and may appoint successor Trustees, notwithstanding the succession indicated, except that he cannot appoint himself as Trustee. If the Trust Protector removes a Trustee, that person cannot be re-appointed as a Trustee without approval of the Trust Protector. If the Trust Protector does not appoint a successor Trustee for any Trustee that has been removed, a new Trustee shall then be appointed pursuant to the provisions of Section 4.1.

933.    It is intolerable to see that each document suddenly allows for the representation of Mark Eliason and Lisa Stephens by their "bought" attorney Craig McCullough in an unnecessary role which defines conflict of interest on all fronts including that of Max and Joyce Eliason.

7.4.4 Duty of Trustee to Inform Beneficiaries of Withdrawal Rights. Each Beneficiary designated as having a right of withdrawal with respect to any property transferred to the Trust Estate or, if such Beneficiary is then under a legal disability, his or her legal guardian or, if there is none, his or her natural guardian shall be given reasonable notice by the Trustee of such right of withdrawal and the conditions under which it may be exercised; provided, however, that the Trustee shall only be required to give such notice if requested to do so by the Donor in the written notice described in Section 7.4. I hereof when the Donor transfers property to the Trust.

223

934.    Plaintiff was never informed he was a Trustee, or Beneficiary and Defendants had already taken all of the cash out of the Trust when Plaintiff requested a disbursement.

8.4.6 <u>Incapacity.</u> Except as otherwise provided in this trust agreement, an individual is deemed incapacitated if in the written opinion of a licensed physician, the individual is unable to effectively manage his or her property or financial affairs, whether as a result of age, illness, use of prescription medications, drugs or other substances, or any other cause. An individual will be deemed restored to capacity if the individual's personal or attending physician provides a written opinion that the individual is able to effectively manage his or her property and financial affairs.

An individual is also deemed incapacitated if (1) a court of competent jurisdiction declares the individual to be legally incompetent or incapacitated or (2) the individual disappears or is absent without explanation for more than 30 days or is detained under duress, which may be established by an affidavit of the Trustee or, if no Trustee is serving, by an affidavit of a beneficiary.

935.    Plaintiff alleges that the Defendants have created multiple statements to justify declaring Plaintiff "Incapacitated" since December of 2016?

8.7 Court <u>Decrees</u>. All decrees of adoption of persons under the age of 18 years and all decrees of divorce at any time rendered by courts of record shall be considered valid for all purposes of this Trust Agreement.

936.    The verbiage added herein that states that any decrees of divorce at any time that is rendered by court shall be considered valid for all purposes of this Trust Agreement.

224

937. Plaintiff alleges that this is why the Defendants needed to fabricate a Divorce Decree for and on behalf of Plaintiff/Spouse so as to eliminate her as the next person in line to sit as Trustee.

938. Plaintiff cannot find one page of the Eliason 2016 Trust which is not considered to be Fraudulent.

# THIRTY-NINTH CAUSE OF ACTION:

# (CONSPIRACY TO COMMIT FRAUDULENT NON-DISCLOSURE AND/OR CONCEALMENT)

939. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

940. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

941. Plaintiff is considered to be one of three Beneficiaries of Max and Joyce Eliason.

942. Kirton McConkie has a Fiduciary Duty to their clients which includes loyalty and care towards each Beneficiary with complete Impartiality towards each of the Three children of Max and Joyce Eliason.

943. By Definition, KMC Law has already breached this Fiduciary Duty by representing Mark Eliason, Lisa Stephens, Bryan Stephens, and Laurie Eliason.

944. Kirton McConkie's duty of Impartiality among the Beneficiaries includes the same disclosure to each individual on an equal basis showing no favoritism or bias towards one over the other.

945. Given the fact that it has been determined that the Plaintiff nor his parents were ever told that KMC Law actually represented Bryan Stephens, Lisa Stephens, Mark Eliason, and Laurie Eliason already set the stage for this law to be breached otherwise there would have been no reason to hide any conflict of interest.

946. Plaintiff is offended beyond measure to realize that his brother in law Bryan Stephens has been in control of all documents since the beginning of this relationship and that Plaintiff himself has never seen most of the documents therewith.

947. Fraudulent Concealment extends to every financial statement which has not been disclosed to Plaintiff along with the location of each and every asset that belongs in the estates of Max and Joyce Eliason today.

948. Fraudulent Concealment also extends to every dollar which is still unaccounted for by the Defendants Kirton McConkie as to how it pertains to the Fraud associated with the Estates of Max and Joyce S Eliason whom they

have betrayed for seven straight years. Defendants feel so immune to possibility of being prosecuted that they simply dismiss the months of questioning from Plaintiff.

## FORTIETH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED IMPROPER EXERCISE OF FIDUCIARY DUTY AS THE PERSONAL REPRESENTATIVE)

**75-3-711 Improper exercise of power -- Breach of fiduciary duty. If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of his fiduciary duty to the same extent as a trustee of an express trust. The rights of purchasers and others dealing with a personal representative shall be determined as provided in Sections 75-3-712 and 75-3-713 Enacted by Chapter 150, 1975 General Session**

949. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

950. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

951.  Kirton McConkie stated that they represented Lisa Stephens as Personal Representative and Sole Trustee of the Joyce S Eliason Trust upon her death on May 21st, 2018.

952.  It has been previously established that it is Impossible for the Plaintiff to be the legal "Sole Trustee" given the fact that Max D Eliason is still alive and was considered legally competent according to the Laws of Utah.

953.  As per the following verbiage taken from the Last Will and Testament of Joyce S Eliason dated October 28th, 2015; Lisa Eliason was not the legal Personal Representative thereby eliminating the basis for which KMC Law represents her.

954.  As noted, the Personal Representative of the Estate of Joyce S Eliason entrusts Max D Eliason, Mark D Eliason, Lisa Stephens, and Brett Eliason to each be considered an equal vote within the definition of Personal Representative of Joyce S Eliason.

## 10. ARTICLE 2 DESIGNATION OF FIDUCIARIES

11. 2.1 <u>Designation of Personal Representatives</u>. I nominate the following as Personal

Representatives of my estate, to act in the sequence named, each to serve in the event the preceding person or persons, as applicable, fails to qualify or after qualifying fails or ceases to act:

> (I) **Max D. Eliason, Mark Dean Eliason, Lisa Eliason Stephens and Brett Lynn Eliason to serve jointly or the survivor(s) with the act of a majority being the act of the Personal Representative.**

955.   It is therefore an obvious violation of the laws associated therewith to have completely dismissed the desires of Joyce S Eliason in favor of Lisa Stephens who once again was able to "buy" her position from KMC Law since it was more profitable to commit a felony than to choose the right.

956.   This violation has deprived Joyce S Eliason to have her wishes fulfilled as per her stated desires while also depriving the Plaintiff and Max D Eliason the rights to voice their opinion concerning the allocation of the assets of Joyce S Eliason following her death which in reality never should have happened since all assets are still supposed to be in the Marital Trust to which Defendants refuse to provide any and all documentation associated therewith.

957.   Plaintiff also reminds the Court and Defendants that the undisclosed Life Insurance Policies which were apparently placed on the life of Joyce Eliason are considered to be fraudulently created and fraudulently disbursed with all

229

accounting still deprived to the equal beneficiary and personal representative and Plaintiff Brett L Eliason.

## FORTY-FIRST CAUSE OF ACTION:

**3.1.1**  **(CONSPIRACY TO COMMIT AGRAVATED DENIAL OF PLAINTIFF TO ACCESS THE CAPTIAL TO PAY FOR HIS LEGAL COSTS GRANTED TO HIM AS A RIGHT OF BEING THE EQUAL PERSONAL REPRESENTATIVE)**

**75-3-719 Expenses in estate litigation.  If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, the personal representative is entitled to receive from the estate all necessary expenses and disbursements, including reasonable attorney fees incurred.  This provision expressly applies in a will contest to any person nominated as a personal representative in a testamentary instrument submitted in good faith.  Amended by Chapter 274, 2012 General Session**

958.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

959.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

230

960.  Plaintiff Brett L Eliason is a Personal Representative of the Estate as is Max D Eliason and yet both have been silenced and deprived of their rights hereunder.

961.  All expenses by the Defendants relating to legal costs have been covered including those of Bryan Stephens and none have been considered under "Good Faith" as each Defendant has operated under "Conspiracy to Commit Aggravated Embezzlement and the Abuse of Power and Fiduciary Duty they were granted by being entrusted by those who have betrayed their office and duty in the name of greed and power".

962.  The existence of this level of corruption and within the highest levels possible inside the Church of Jesus Christ of Latter-Day-Saints is nothing shy of the "Smoking Gun" as to the existence of the "Mormon Mafia" and "Deep State" rumors that have abounded for decades.

963.  Plaintiff Brett L Eliason encourages Law Enforcement at all levels to investigate the dealings and financing of any and all politically related affairs of the LDS Church and its upper management in order to expose any and all other victims such as him and his innocent family members.

964.  Whereas the LDS Church does not have a democratic style government with public elections or possibilities of impeachment for abuse of office powers such as for the President of The United States; the allegations herein imply that a corrupt leader at this level within the Church could in fact be a threat to world-wide peace given the outspoken political nature of Dallin H Oaks which

231

resembles that of "Brother Adolph Hitler" who's hate of the gay community is synonymous with that of President Oaks.

965.    Brother Oaks' style of administration of the LDS Church includes the refusal to apologize to the uncounted families who have suffered a loss due to an incident of suicide following the teachings and criticisms of Dallin H Oaks.  It is assumed that President Oaks does not intend on apologizing to his victims herein for their loss.

## FORTY-SECOND CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED BREACH OF TRANSFERING RESTRICTED TRUST INTRESTS FROM IRROVOCABLE TRUSTS FOR PURPOSES OF FRAUD BY A FIDUCIARY)

966.    Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

967.    Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

968.    Each Trust within the Estate planning of Max and Joyce Eliason had restrictive clauses or intentions of restrictions all of which have been maliciously violated by the Defendants including the removal of all interests from the Irrevocable Eliason 2015 Trust and the Eliason 2016 Trusts.

232

**2011 Utah Code**

**Title 25 Fraud**
**Chapter 6 Uniform Fraudulent Transfer Act Section 14 Restricting transfers of trust interests.**
**25-6-14. Restricting transfers of trust interests.**

(1) (a) For trusts created on or after December 31, 2003, a settlor who in writing irrevocably transfers property in trust to a trust having as trustee a company defined in Subsection 7-51(1)(d) who holds some or all of the trust assets in this state in a savings account described in Subsection 7-1-103(29), a certificate of deposit, a brokerage account, a trust company fiduciary account, or account or deposit located in this state that is similar to such an account may provide that the income or principal interest of the settlor as beneficiary of the trust may not be either voluntarily or involuntarily transferred before payment or delivery to the settlor as beneficiary by the trustee. The provision shall be considered to be a restriction on the transfer of the settlor's beneficial interest in the trust that is enforceable under applicable nonbankruptcy law within the meaning of Section 541(c)(2) of the Bankruptcy Code or successor provision.

(b) This Subsection (1) applies to:

(i) any form of transfer into trust including:

(A) conveyance; or (B) assignment; and

(ii) transfers of:

(A)     personal property;

(B)     interests in personal property;

(C)     real property; or

(D)     interests in real property.

233

# FORTY-THIRD CAUSE OF ACTION:

# (CONSPIRACY TO COMMIT AGRAVATED ASSAULT/MURDER OF BRETT L ELIASON ON DECEMBER 22ND, 2019)

969. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

970. Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

971. Plaintiff's personal residence was broken into in the early morning of December 22nd, 2019 and an assailant chased plaintiff into a basement theatre room wherein he struggled with intruder for approximately two hours.

972. During this time; the assailant used a tool to unlock the door repeatedly while Plaintiff pulled tightly on the inside knowing the assailant was there to "stop" the submission of the complaint herein the following day which they were adverted of at KMC Law.

973. Plaintiff eventually was able to call police at which time the assailant fled on foot. Plaintiff saw the assailants body type and shadow of that of his business partner Zac Bair who is charged herein and who knows the house of Plaintiff

and has been caught hacking into Plaintiffs computer at said residence and stealing thousands of dollars of items to be addressed separately at trial.

974.  Plaintiff requests that this investigation be carried out as part of the trial with polygraph and all communications from the respective Defendants phones as it is believed that this was done in an aggravated conspiracy manner in order to avoid prosecution by permanently silencing and "burying" the evidence and the only witness and victim capable of exposing this heinous event.

## 4.1 Utah Criminal Code Definition of Aggravated Assault

## 76-5-103. Aggravated assault.

1.  **A person commits aggravated assault if he commits assault as defined in Section 76-5-102 and he:**

    A. **intentionally causes serious bodily injury to another; or**

    B. **under circumstances not amounting to a violation of Subsection (1)(a), uses a dangerous weapon as defined in Section 76-1-601 or other means or force likely to produce death or serious bodily injury.**

2.  **A violation of Subsection (1)(a) is a second-degree felony.**

3.  **A violation of Subsection (1)(b) is a third-degree felony.**

975. Plaintiff requests that this investigation be carried out with special attention given to the communication records via email or telephone which may show additional Defendants either directly or indirectly involved within this plot. Whereas all actions hereunder are assumed being done under the direction of Dallin H Oaks, Plaintiff deserves the right to know if this was an action directed from the "Prophet to Be" of his faith and religion and that of his ancestors.

976. Plaintiff recognized his business partner as the suspect and the police were contacted with the understanding that charges would be pursued hereafter.

## FORTY-FOURTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT AGRAVATED AND UNLAWFUL DEALING OF PROPERTY BY A FIDUCIARY)

(*Effective 7/1/2019*
76-6-513. Definitions -- Unlawful dealing of property by a fiduciary -- Penalties.

(1)     As used in this section:
(a)     "Fiduciary" means the same as that term is defined in Section 22-1-1.
(b)     "Financial institution" means "depository institution" and "trust company" as defined in Section 7-1-103.
(c)     "Governmental entity" is as defined in Section 63G-7-102.
(d)     "Person" does not include a financial institution whose fiduciary functions are supervised by the Department of Financial Institutions or a federal regulatory agency.
(e)     "Property" means the same as that term is defined in Section 76-6-401.

(2)     A person is guilty of unlawfully dealing with property by a fiduciary if the person deals with property that has been entrusted to him as a fiduciary, or property of a governmental entity, public money, or of a financial institution, in a manner

236

which the person knows is a violation of the person's duty and which involves substantial risk of loss or detriment to the owner or to a person for whose benefit the property was entrusted. A violation of this Subsection (2) is punishable under Section 76-6-412.

(3)      (a) A person acting as a fiduciary is guilty of a violation of this subsection if, without permission of the owner of the property or some other person with authority to give permission, the person pledges as collateral for a personal loan, or as collateral for the benefit of some party, other than the owner or the person for whose benefit the property was entrusted, the property that has been entrusted to the fiduciary.

(b) An offense under Subsection (3)(a) is punishable as:

(i) a felony of the second degree if the value of the property wrongfully pledged is or exceeds $5,000;

(ii)      a felony of the third degree if the value of the property wrongfully pledged is or exceeds $1,500 but is less than $5,000;

(iii)      a class A misdemeanor if the value of the property is or exceeds $500, but is less than $1,500 or the actor has been twice before convicted of theft, robbery, burglary with intent to commit theft, or unlawful dealing with property by a fiduciary; or (iv) a class B misdemeanor if the value of the property is less than $500.

977.   Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

978.   Jurisdiction and Venue are proper for this Court pursuant to US Code U.S.C. § 1983.

979.   Whereas the first day which Bryan Stephens introduced Craig McCullough was done fraudulently and with the intent to embezzle every asset of Max and Joyce Eliason; it would be logical to assume that every financial decision and/or the transferring of assets was done with malice and intentional deceit by a Fiduciary.

980. This has taken place for seven years and the number of transactions is expected to be in the thousands and are comprised of values exceeding $100M.

981. Within the requests for Injunction relief and action going forward includes a forensics audit on every dollar which has been stolen and have that amount returned to its respective location.

## FORTY-FIFTH CAUSE OF ACTION:

## (CONSPIRACY TO COMMIT COUNTLESS AGRAVATED AND FRAUDULENT ACTIONS FOR SELF SERVING AND INTENTIONAL FINANCIAL AND EMOTIONAL ATTACKS ON PLAINTIFF BRETT L ELIASON)

982. Plaintiff restates and incorporates by this reference all preceding paragraphs of this Complaint and asserts upon information and belief.

983. Jurisdiction and Venue are proper for this Court pursuant to Utah Code Ann. §78A-5-102 and §78B-3-307.

984. The Defendants illegally removed Plaintiff's Power of Attorney and the rights associated therewith which was done via fraudulent and malicious defamation.

985. The Defendants deprived Plaintiff of his rights provided under the Last Will and Testament intentionally which included his rights as Personal Representative to which he and his father and siblings were all to have a vote.

986. The Defendants deprived Joyce S Eliason of her rights to have her last wishes and legacy executed by those she had paid to protect her along with the betrayal of her own daughter and son-in-law.

987. The Defendants have deprived Max D Eliason of his rights as a father to have his son visit him and to have the Agent with a Durable Power of Attorney present to make the appropriate decisions for the well-being of Max D Eliason and not for purposes of cover-up as has been the case since the defendants decided to add video surveillance and to accuse plaintiff of "abusing and exploiting" Max D Eliason as well.

988. The Defendants have appointed an outside attorney with the assumption that said person has the best intention in mind for Max D Eliason.

989. The "impartial" attorney Kent Snider is there for the sole purpose of launching intentional attacks against the son who is fighting daily to remove both him and Mr. David Bishop who maintains that Plaintiff has a cease and desist order against him which has never been legally affirmed as a restraining order in court.

990. Plaintiff has had his rights as a son of Max and Joyce Eliason taken away from him and he has had his civil rights concerning his entitlement to a fair trial

removed as if a wicked German dictator had taken control of every freedom to which Plaintiff would have been entitled had Kirton McConkie not been "paid assassins" for money.

991.  Plaintiff has had his rights of Trustee removed from the Joyce S Eliason Trust.

992.  Plaintiff has had his rights of Trustee removed illegally from the Max D Eliason Trust.

993.  Plaintiff has had his rights of Trustee removed illegally from the Eliason 2015 Trust.

994.  Plaintiff has had his rights of Trustee removed illegally from the Eliason 2016 Trust.

995.  Plaintiff has had his rights as Member/Manager of Eliason Eight, LLC illegally removed.

996.  Plaintiff has had his rights of Member/Manager of Eliason Enterprises, LLC illegally removed.

997.  Plaintiff has been denied all of his rights as Beneficiary under the Eliason 2015 Trust.

998.  Plaintiff has been denied all of his rights as Beneficiary under the Eliason 2016 Trust.

999.  Plaintiff has been denied all of his rights as Beneficiary under the Joyce S Eliason Trust dated October 28th, 2015.

1000.  Plaintiff has been denied all of his rights as Beneficiary under the Max D Eliason Trust dated October 28th, 2015.

1001.  Defendants illegally closed all of the business accounts relating to Eliason Eight, LLC so as to prevent plaintiff from accessing his legal share of capital.

1002.  Defendants illegally closed all of the business accounts relating to Eliason Enterprises, LLC so as to prevent Plaintiff from accessing his legal share of capital.

1003.  Plaintiff has been denied all rights provided within the Last Will and Testament of Joyce Eliason to access the costs required to litigate in good faith the criminal allegations for which Plaintiff has been forced to do Pro Se while KMC Law illegally represents Bryan Stephens whom Max and Joyce Eliason demanded to never allow any and all participation within their respective Estates.

1004.  Plaintiff has been denied all of his distribution rights under the Eliason 2016 Trust wherein millions of dollars have been illegally removed without any accounting provided.

1005.  The amount that was within this Trust would have been sufficient to allow Plaintiff the ability to maintain all of his expenses including not requiring the

$675K hard money loan and mortgage which now threatens the Plaintiffs personal residence along with his remaining vehicles.

1006. The Plaintiff has been deprived of tens of millions of dollars in revenue from the stolen oil properties which KMC Law refuses to recover on behalf of their "client' and equal owner to whom they owe impartiality and care and loyalty.

1007. The Plaintiff has had his credit intentionally destroyed by the Defendants as part of their goal to completely destroy every asset and cash flow which is legally his.

1008. The Plaintiff has had his condominiums intentionally attacked and foreclosed in Hawaii and has lost all equity therein.

1009. The Plaintiff has been illegally deemed "incapacitated" and "clinically insane" without any knowledge or evidence provided other than the KMC Attorneys have reported some "Private" documents to the Court to which Plaintiff will need to file a demand to see exactly what he has been charged with.

1010. The Plaintiff's hedge fund "OSIA" failed to launch in December of 2016 which would have happened without incidence had Defendants not cut plaintiff's cash flow by more than 80% of what the intended amount should have been while Defendants lied in stating that there were multiple wells drying up which was there explanation for why the amounts had fallen so sharply.

1011. The Plaintiff's company known as My 3-D Me was started in 2016 by Plaintiff and his mother Joyce S Eliason.

1012. As part of the master plan to destroy Plaintiff's life; Bryan Stephens and Lisa Stephens paid the business partners an undisclosed amount to "sabotage and steal the equipment within the store" and to "quit" knowing that Bryan and Lisa Stephens were in power and were intending on stealing all of the years and hundreds of thousands of dollars invested all of which has now been lost.

1013. Plaintiff's right to Privacy has been completely violated multiple times with apparent friends being bribed to cause additional mental and financial stress as Plaintiff was generous in helping said friends through his generosity while they did not disclose that they were actors in the plot resembling "The Truman Show" which was integrated with "Nightmare on Elm Street and a touch of the Exorcist" so the "Producers" could derive pleasure from enjoying the spectacle of killing off the unsuspecting sibling as per the instructions attached in the exhibits labeled "How to Steal Your Own Inheritance".

1014. Plaintiff generously allowed one of the engineers to live in his house to assist him during what was thought to be a difficult time.

1015. It would be discovered that said "friend" was actually a client of Bryan Stephens within his career as a CPA and that the Defendants maliciously claimed that said Zant Doty was a hired caretaker that was providing 24/7 care for Plaintiff whom they stated to all parties and family members was legally incapacitated (without examination). 1023. Defendants stated to the Third District Court that Plaintiff's allegations were the result of his insanity and that the friend that accompanied his was the 'caretaker' so as to provide

sufficient doubt to the judge concerning the mental health of Plaintiff so as to get the matter dismissed without having any accountability.

1016. Defendants utilized Zant Doty to create a fraudulent Divorce Decree so as to eliminate the need to appoint Veronique Eliason as the successor Trustee as would be the requirement when the Defendants had Plaintiff deemed incapacitated and insane.

1017. Mr. Doty hacked into Plaintiff's personal computer and stole the information needed to complete an online but obviously fraudulent decree which also created several hundred thousand dollars of debt secured by all of Plaintiffs exotic automobiles.

1018.    The Defendants intentionally created an unknow felony defamation of character which was supported by KMC Law which has been maintained to this day so as to make every single member of the entire Eliason extended family believe an unknown lie that makes him "toxic" so as to not have one single person even text him Merry Christmas or Happy New Year with refusals to even listen to the allegations of the subject conspiracy theory.

# Max and Joyce Eliason had the following wishes for their Estates and Beneficiaries:

I. <u>Protect their sacred estates and great legacies which reflect the great heritage of both Eliason and Stillman and the respective ancestors who came before them.</u>

II. <u>Take whatever appropriate actions are necessary to avoid inheritance taxes and unnecessary income taxes for the beneficiaries.</u>

III. <u>Each Beneficiary is to receive an equal 33% and within all Trusts there should be either a living Beneficiary or a designated person to represent said beneficiary.</u>

IV. <u>Protect her youngest son/beneficiary Brett Eliason from his two oldest siblings due to the perceived jealousy and resentment for being the "favorite child". This being accomplished by a mandatory unanimous approval on all actions involved with the Estates.</u>

V. <u>Joyce wrote a scathing letter to Craig McCullough on November 7th, 2016 demanding that an overbearing and greedy son-in-law not be allowed to participate or be included in any decisions as to the Estate Planning of her and her husband.</u>

As an indication as to just how the Prestigious "Lawyers of Jesus Christ Himself" have done as per the wishes of their clients Max and Joyce Eliason; the following list indicates exactly how the "conscientious attorneys" (as per Dallin H Oaks dedicatory ceremony) have respected their Fiduciary Duty to Max and Joyce Eliason.

The sacred Estates and Legacies have been embezzled by Bryan Stephens and Craig McCullough and supported by the Sr Management of Kirton McConkie and Dallin H Oaks who refuse to admit any wrong doing despite all accounts being missing.   Their actions are synonymous with them being entitled to share in the "booty" delivered to managing partners via the couples CPA Son-In-Law and appointed KMC Law Partner Craig McCullough.  Their client Joyce S Eliason had $33K on her balance sheet upon her death earmarked for a bench next to her grave at Wasatch Lawns and Plaintiff finally was able to have his siblings order the headstone one year after the death of Joyce S Eliason on May 21st, 2018.

A.    There is unquestionable evidence that over $100M of assets has been fraudulently moved out of the estates of Max and Joyce Eliason and the family oil company known as Eliason Eight, LLC with income producing mineral rights valued at tens of millions of dollars assumed as being placed by Craig McCullough into his delegated "charitable trusts" which a newly discovered Eliason 2015 Trust has allowed him to do.  Plaintiff has forwarded information to the IRS assuming that there has been a violation and associated Tax Evasion as opposed to the Tax avoidance which Max and Joyce Eliason requested.

B.    Plaintiff Brett L Eliason was dismissed as Trustee/Beneficiary from every entity to which he was considered a rightful recipient and he was not allowed any rights of appointing a successor Trustee in his place.  Defendants apparently deemed Plaintiff insane without having any conversations with his own medical doctors in order to legally do so.

C.      Rather than protect the youngest son from the oldest siblings, the oldest siblings hired/bribed Craig McCullough and Kirton McConkie to "take him out" and not only have disowned him and his daughters; but also destroyed his primary business and illegally stolen his ownership in Eliason Eight, LLC and Eliason Enterprises, LLC and given it to his sister in law Laurie Eliason.

D.      Joyce S Eliason left a specific letter to Kirton McConkie stating that Bryan Stephens was not to control nor participate in any Estate Planning decisions of his mother and father in law and <u>yet all</u> <u>information received to date indicates that Bryan Stephens was involved in preparing it all with</u> <u>designs on destroying his younger brother-in-law and embezzling both estates even before Joyce</u> <u>S Eliason was dead.</u>

My LDS Religious beliefs have always helped me in times of need as I have often repeated the scripture stating that "the gates of hell shall not prevail against you". I never would have imagined that seven years later, there had been a plot devised within the Estate Planning of my Mother and Father's Estates and that a secret deal had been cut with one of the "Lawyers of Jesus Christ Himself" and my Brother-In-Law which also included my Prophet To Be as the one holding the Gate of Hell to which I have been unknowingly fighting against for almost 7 years.

## 8. INJUNCTIVE RELIEF REQUESTED
### (NON-FINANCIAL)

| | |
|---|---|
| 1. | Kirton McConkie is to cease the horrific actions "Abuse of Power and the associated Abuse and Exploitation" of both Max Eliason and his youngest son who has been targeted for a complete emotional and financial demise by his criminal actions of knowingly concealing the heinous crimes committed against the Victims that Kirton McConkie and Craig McCullough were paid to protect. |
| 2. | The Defendants are to be required to remove all of the video surveillance and key pads which have been installed on the home of Max D Eliason which were intended to keep Plaintiff away from his father so as to eliminate his ability to act on behalf and for the best interest and well-being of his father.<br><br>This horrific crime being committed while supporting claims to friends, family, and neighbors that a "restraining order" was in place against Plaintiff Brett Eliason due to his "insane and criminal abuse and exploitation" of Max D Eliason (which is exactly what the Defendants are actually doing unchecked today in a complete mockery of the justice system). |
| 3. | An immediate and permanent restraining order against Bryan Stephens from visiting the residence or any other properties of Max and Joyce Eliason whom Kirton McConkie has empowered to "Rape and Pillage" the respective estates of his Mother and Father-In-Law since 2013. |
| 4. | Plaintiff requests that all remedies found within the Abuse of Power General Assembly rights to victims of Gross Violations be entitled to the IMMEDIATE response from the Federal Government in bringing these thugs to justice. |
| 5. | All fiduciary duties concerning the estates of Max and Joyce S Eliason be returned to Brett L Eliason as it concerns the Durable Power of Attorney and Custodian and Conservator which have been illegally removed from Plaintiff by KMC Law and the associated Defendants. |
| 6. | The immediate rescission of all documents associated with the Max and Joyce Eliason Estates with the assets restored as if the relationship had never been consummated. This includes the Max and Joyce Eliason Trusts, The Eliason 2015 Trust, The Eliason 2016 Trust, The Marital Trust, and any other entities which have been fraudulently created by Defendants. |

| 7. | Plaintiff requests that the FBI be contacted to review the allegations of Wire Fraud (Federal Offense) within the Eliason 2016 Trust wherein $722K was wired via two separate incidents in 2018 alone to pay income taxes on stolen properties for undisclosed recipients. |
|---|---|
| 8. | Any and all compensation paid to Kirton McConkie and Craig McCullough including proceeds from Life Insurance Policies and properties belonging to Eliason Eight, LLC and Eliason Enterprises, LLC be accounted for by an outside auditor and returned with treble damages to Plaintiff. |
| 9. | Plaintiff hereby refers to the verbiage within each of the entities which states that anyone who sues the Estates are automatically considered to have passed away prior to Joyce S Eliason thereby the rights of each defendant to be considered as a beneficiary is hereby removed. |
| 10. | The defendants and their children are considered to be trespassing on any and all properties included in the Max and Joyce Eliason Estate including the property of Stillman Seven as each participant has also betrayed the ancestors who acquired said property. |

ELIASON VS MCCONKIE ET AL
JUDGE ADAM MOW
CASE #190901906

| | TOTAL DAMAGES UTILIZING APPARENT AUTHORITY AND RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY ON A JOINT AND SEVERAL BASIS WITH TREBLE DAMAGES IMPLIED | | | | | |
|---|---|---|---|---|---|---|

Last Updated: 12/22/2019

| TAB # | EVENT AT ISSUE | DESCRIPTION | ESTIMATED DAMAGES | TREBLE X3 | TOTAL DEFENDANTS | TOTAL DAMAGES |
|---|---|---|---|---|---|---|
| 1 | BRITTNIE ELIASON FORCED TO SELL HER 17TH BIRTHDAY PRESENT FROM HER DAD (JEEP) | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $25,000 | $75,000 | 137 | $10,275,000 |
| 2 | KYLIE ELIASON FORCED TO SELL HER RANGE ROVER PLAINITFF PURCHASED TO SEND HER TO COLLEGE | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $25,000 | $75,000 | 137 | $10,275,000 |
| 3 | ASSUMED MINIMUM BRIBES PAID TO CRAIG MCCULLOUGH AND KIRTON MCCONKIE SINCE 2013 | PLAINTIFF IS A BENEFICIARY/TRUSTEE WHO HAS BEEN ILLEGALLY REMOVED AND REPLACED BY CRAIG MCCULLOUGH WHO HAS THE RIGHT TO INCOME FROM THE ASSETS OF MAX AND JOYCE ELIASON BUT NOT THEIR OWN SON | $10,000,000 | $30,000,000 | 137 | $4,110,000,000 |
| 4 | AMOUNT OF HARD MONEY LOAN PLAINTIFF WAS FORCED INTO IN OCTOBER 2018 TO SAVE FROM FORECLOSURE AND EVICTION FROM TROLLEY SQUARE | PLAINTIFF IS SPEECHLES KNOWING HIS SIBLINGS WERE CHEERING FOR HIM TO BE HOMELESS AND PENNILESS AND COUNTED ON KMC LAW TO EMPOWER THIS TO HAPPEN | $700,000 | $2,100,000 | 137 | $287,700,000 |
| 5 | DEFAULT OF LEASE BETWEEN MY 3-D-ME IN TROLLEY SQUARE GUARANTEED BY JOYCE S ELIASON AND BRETT L ELIASON | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $390,000 | $1,170,000 | 137 | $160,290,000 |
| 6 | PROPERTY STOLEN BY ROBERT BAIR, PAULINE BAIR, JON BAIR, AND ZAC BAIR THEREBY SABOTAGING THE BUSINESS OF MY 3-D-ME LLC | DEFENDANTS UTILIZED PLAINTIFF'S OWN INHERITANCE TO PAY THEIR LEGAL COSTS AND DID SO IN CONJUNCTION WITH KMC LAW | $50,000 | $150,000 | 137 | $20,550,000 |
| 7 | CASH INVESTED BY PLAINTIFF IN MY 3-D-ME LLC SINCE OCTOBER 2016 | NOT INCLUDING THE LOST YEARS OF LIFE ON A NEW BUSINESS WHICH KMC LAW DESTROYED | $393,745 | $1,181,235 | 137 | $161,829,195 |
| 8 | EVALUATION OF MY 3 D ME WHICH WAS DESTROYED BY DEFENDANTS INTENTIONALLY WHILE BRIBING PLAINTIFFS BUSINESS PARTNERS | PLAINTIFF'S WEBSITE HE HAD PAID TENS OF THOUSANDS OF DOLLARS TO CREATE REAPPEARED UNDER THE NAME "SOUL CAPTURE" WHICH IS THE EXACT DECSRIPTION OF WHAT THE DEFENDANTS HAVE ATTEMPTED FOR THE PAST SEVEN YEARS | $5,000,000 | $15,000,000 | 137 | $2,055,000,000 |
| 9 | FRAUDULENTLY CREATED DEBT WITHIN THE FRAUDULENTLY CREATED DIVORCE DECREE SHOWING AMOUNTS DUE TO ELIASON ENTERPRISES, LLC | DIVORCE DECREE DATED APRIL 16TH, 2016 AND CREATED THROUGH CONSPIRACY TO COMMIT AGRAVATED INVASION OF PRIVACY | $210,000 | $630,000 | 137 | $86,310,000 |
| 10 | FRAUDULENTLY CREATED NOT ON 43 S FAIRWAY DRIVE WHICH NEVER WOULD HAVE EXISTED BUT FOR KMC LAW | JOYCE S ELIASON BOUGHT THIS HOME FOR PLAINTIFF PRIOR TO HER DEATH FOR HIM TO HAVE A SANCTUARY | $483,029 | $1,449,087 | 137 | $198,524,919 |

| TAB # | EVENT AT ISSUE | DESCRIPTION | ESTIMATED DAMAGES | TREBLE X3 | TOTAL DEFENDANTS | TOTAL DAMAGES |
|---|---|---|---|---|---|---|
| 11 | ATTEMPTED FRAUD ON NOVEMBER 2ND, 2016 WHEREIN JOYCE S ELIASON REBUKED KMC LAW TO NEVER ALLOW BRYAN STEPHENS TO PARTICIPATE IN THE ESTATE PLANNING PROCESS | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $2,000,000 | $6,000,000 | 137 | $822,000,000 |
| 12 | LOANS FRAUDULENTLY CREATED ON JOYCE S ELIASON'S BALANCE SHEET FOR MY 3-D-ME WHICH WOULD HAVE NOT BEEN NEEDED BUT FOR KMCLAW | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $470,000 | $1,410,000 | 137 | $193,170,000 |
| 13 | PLAINTIFF'S FORECLOSED PENTHOUSE CONDO, OAHU HAWAII | LOST EQUITY WITHOUT EMOTIONAL DAMAGES | $250,000 | $750,000 | 137 | $102,750,000 |
| 14 | PLAINTIFF'S FORECLOSED CONDO 28TH FLOOR, OAHU HAWAII | LOST EQUITY WITHOUT EMOTIONAL DAMAGES | $175,000 | $525,000 | 137 | $71,925,000 |
| 15 | AMOUNT MARK ELIASON AND LISA ELIASON TOOK FROM JOYCE S ELIASON PRIOR TO HER DEATH WHERE JOYCE SOUGHT TO MAKE THEM "HAPPY" | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 16 | AMOUNT FRAUDULENTLY TRANSFERRED FROM ELIASON 2016 IRREVOCABLE TRUST TO "GRANDCHILDRENS TRUST" ON APRIL 17TH, 2018 | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $4,168,123 | $12,504,369 | 137 | $1,713,098,553 |
| 17 | CASH EMBEZZLED FROM THE ACCOUNTS OF MAX AND JOYCE ELIASON ESTIMATED 2013-2018 | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $10,000,000 | $30,000,000 | 137 | $4,110,000,000 |
| 18 | CASH FRAUDULENTLY TRANSFERRED TO THE ELIASON 2015TRUST FROM DECEMBER 2016- DECEMBER 2018 (AMOUNT IS UNKNOWN FOR 2019) | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $534,030 | $1,602,090 | 137 | $219,486,330 |
| 19 | CASH FRAUDULENTLY TRANSFERRED TO THE ELIASON 2016 TRUST FROM DECEMBER 2016- DECEMBER 2018 (AMOUNT IS UNKNOWN FOR 2019) | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $3,286,190 | $9,858,570 | 137 | $1,350,624,090 |
| 20 | ESTIMATED LIFE INSURANCE PROCEEDS COLLECTED ON THE LIFE OF JOYCE S ELIASON UPON HER DEATH | GOD HELP THE SOULS OF THOSE MAX AND JOYCE TRUSTED AND WHO MADE ILLEGAL BETS ON HER LIFE VIA INSURANCE FRAUD | $10,000,000 | $30,000,000 | 137 | $4,110,000,000 |
| 21 | CHECK CASHED BY CRAIG MCCULLOUGH FROM ELIASON EIGHT, LLC WHICH WAS NOT APPROVED BY PLAINTIFF NOR EVER WOULD BE. | ELIASON EIGHT, LLC SHOULD NEVER HAVE PAID CRAIG MCCULLOUGH A DIME,.,, | $12,538 | $37,614 | 137 | $5,153,118 |
| 22 | STOLEN CASH FLOW FROM THE ELIASON 2015 TRUST WHICH HAS BEEN ILLEGALLY DISTRIBUTED BETWEEN 1-1-16 AND 12-31-18 | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $254,734 | $764,202 | 137 | $104,695,674 |
| 23 | LEASE BONUSES FROM THE ELIASON 2015 TRUST WHICH HAVE BEEN ILLEGALLY DISTRIBUTED BETWEEN 1-1-16 AND 12-31-18 | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $365,275 | $1,095,825 | 137 | $150,128,025 |

| TAB # | EVENT AT ISSUE | DESCRIPTION | ESTIMATED DAMAGES | TREBLE X3 | TOTAL DEFENDANTS | TOTAL DAMAGES |
|---|---|---|---|---|---|---|
| 24 | ESTIMATED VALUE OF STOLEN OIL MINERAL RIGHTS AND R/E THROUGH THE ELIASON 2015 TRUST | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $25,000,000 | $75,000,000 | 137 | $10,275,000,000 |
| 25 | STOLEN CASH FLOW FOUND WITHIN ELIASON 2016 TRUST FROM 12-31-16 THROUGH 12-31-18 (2019 UNKNOWN) | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $2,376,313 | $7,128,939 | 137 | $976,664,643 |
| 26 | STOLEN OIL AND GAS MINERAL RIGHTS NOW IN ELIASON 2016 | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $25,000,000 | $75,000,000 | 137 | $10,275,000,000 |
| 27 | ILLEGAL REMOVAL FROM ELIASON ENTERPRISES, LLC ON MAY 20TH, 2019 | PLAINTIFF REQUESTED ACCOUNTING ON HIS OWN COMPANY AND CRAIG MCCULLOUGH REMOVED HIM AS MEMBER/MANAGER OF ELIASON EIGHT, LLC | $5,000,000 | $15,000,000 | 137 | $2,055,000,000 |
| 28 | ILLEGAL REMOVAL FROM ELIASON EIGHT, LLC  ON MAY 20TH, 2019 | PLAINTIFF REQUESTED ACCOUNTING ON HIS OWN COMPANY AND CRAIG MCCULLOUGH REMOVED HIM AS MEMBER/MANAGER OF ELIASON EIGHT, LLC | $30,000,000 | $90,000,000 | 137 | $12,330,000,000 |
| 29 | REPLACEMENT VALUE OF STILLMAN SEVEN RANCH IN SUMMIT COUNTY WITH THE INCOME PROPERTY THEREWITH | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $50,000,000 | $150,000,000 | 137 | $20,550,000,000 |
| 30 | EMOTIONAL DAMAGES FOR INTENTIONALLY DESTROYING PLAINTIFF'S FLAWLESS CREDIT SCORE | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 31 | EMOTIONAL DAMAGES FOR HAVING BEEN FORCED INTO FORECLOSURE ON TWO CONDOS IN HAWAII DUE TO THE LORDS LAWYERS | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 32 | DAMAGES TO KYLIE ELIASON FOR BEING DISOWNED FROM THE GRANDCHILDREN'S TRUST | THE DEFENDANTS KNOWINGLY ATTACKED AN INNOCENT 19 YEAR OLD WHILE DEFENDANTS GRANDCHILDREN COULD RECEIVE DISTRIBUTIONS AT THE AGE OF 1 MONTH | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 33 | DAMAGES TO BRITTNIE ELIASON FOR BEING DISOWNED FROM THE GRANDCHILDREN'S TRUST | THE DEFENDANTS KNOWINGLY ATTACKED AN INNOCENT 17 YEAR OLD WHILE DEFENDANTS GRANDCHILDREN COULD RECEIVE DISTRIBUTIONS AT THE AGE OF 1 MONTH | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 34 | EMOTIONAL DAMAGES FOR HAVING PLAINTIFF DEEMED "INCAPACITATED AND/OR INSANE" WITHOUT CAUSE NOR LEGALITY | MAX D ELIASON WAS DEEMED "TOO INCOMPETENT" TO SEE HIS SON WHO WAS "TOO INSANE" WHICH WAS DONE TO BURY THE EVIDENCE OF THEIR CRIMES | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 35 | EMOTIONAL DAMAGES FOR ALLOWING CRAIG TO DESTROY LIFE OF PLAINTIFF AS AN ILLEGAL TRUST PROTECTOR | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 36 | EMOTIONAL DAMAGES VERONIQUE FOR FILLING OUT A DIVORCE DECREE | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 37 | EMOTIONAL DAMAGES BRETT FOR FILLING OUT A DIVORCE DECREE | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |

| TAB # | EVENT AT ISSUE | DESCRIPTION | ESTIMATED DAMAGES | TREBLE X3 | TOTAL DEFENDANTS | TOTAL DAMAGES |
|---|---|---|---|---|---|---|
| 38 | EMOTIONAL DAMAGES FOR REPORTING TO FAMILY THAT PLAINTIFF WAS ABUSING AND EXPLOITING HIS OWN FAMILY | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 39 | CONSERVATIVE ESTIMATE FOR ACTUAL DEFAULTED CREDIT CARD DEBT WHICH HAS ALL BEEN IN COLLECTIONS SINCE 2016 | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $250,000 | $750,000 | 137 | $102,750,000 |
| 40 | EMOTIONAL DAMAGES FOR COMMITTING CONSPIRACY TO OBSTRUCT JUSTICE BY REMOVING THE POWER OF ATTORNEY OF PLAINTIFF THROUGH FALSE ACCUSATIONS | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 41 | DAMAGES FOR DESTROYING PLAINTIFF'S LIFE LONG GOAL OF OPENING THE HEDGE FUND OSIA | PLAINTIFF WAS AWARDED $7M IN 2010 FOR DAMAGES CAUSED BY TD AMERITRADE WITHIN THE SAME TRADING STRATEGY STARTED BY PLAINTIFF AND HIS PARTNER KYLE WINTHER IN 1992 | $7,000,000 | $21,000,000 | 137 | $2,877,000,000 |
| 42 | ACTUAL DAMAGES FOR DEFAULT ON NOTE TO MR. ERIC LIEW WHICH WAS SEED CAPITAL FOR OSIA | BUT FOR THE EXISTENCE OF THE BREACH OF FIDUCIARY DUTY TO MAX AND JOYCE ELIASON; PLAINTIFF NEVER WOULD HAVE DEFAULTED TO HIS BUSINESS PARTNER AND DEAR FRIEND | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 43 | LITIGATION EMOTIONAL AND ACTUAL COSTS INVOLVED WITH THE DEFENDANTS DEPRIVING THE PLAINTIFF OF HIS BIRTHRIGHT TO FIGHT TO PROTECT WHAT WAS LEGALLY HIS | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 44 | CONSERVATIVE ESTIMATE FOR PAYMENTS TO STEPHENS MANAGEMENT COMPANY THAT ACCEPTED PAYMENTS TO COMMIT FRAUD | STEPHENS MANAGEMENT COMPANY TO BE INVESTIGATED AS FAR BACK AS NECESSARY TO SEE WHAT YEAR HIS FRAUDULENT ACTIONS BEGAN WHICH HAS BEEN DETERMINED EXISTED IN 2013 | $100,000 | $300,000 | 137 | $41,100,000 |
| 45 | ELIASON ENTERPRISES DRAW OF $100K IN 2018 TO ELIASON 2016 TRUST WHICH WAS UNAUTHORIZED | THE HYPOCRITICAL DEFENDANTS CALLED PLAINTIFF A "FRAUD" FOR BORROWING $25K TO SAVE HIS HOME FROM HIS OWN ACCOUNT AND PAID IT BACK TWO WEEKS LATER; WHILE THEY HAD EMBEZZLED TENS OF MILLIONS OF DOLLARS FROM EVERY ENTITY. | $100,000 | $300,000 | 137 | $41,100,000 |
| 46 | OBSTRUCTION OF JUSTICE EMOTIONAL DAMAGES FOR "BUYING" RENCHER ANJEWIERDEN TO KILL COMPLAINT | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 47 | OBSTRUCTION OF JUSTICE EMOTIONAL DAMAGES FOR "BUYING" KAY BURNINGHAM TO KILL COMPLAINT | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 48 | OBSTRUCTION OF JUSTICE EMOTIONAL DAMAGES FOR NOT ALLOWING PLAINTIFF TO VISIT HIS FATHER FOR CHRISTMAS, THANKSGIVING, AND HIS FATHER'S 85TH BIRTHDAY BY PAID THUGS OF KMC LAW | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |

| TAB # | EVENT AT ISSUE | DESCRIPTION | ESTIMATED DAMAGES | TREBLE X3 | TOTAL DEFENDANTS | TOTAL DAMAGES |
|---|---|---|---|---|---|---|
| 49 | MICHELLE STILLMAN GAETZ | JOYCE S ELIASON REQUESTED THAT HER YOUNGER SISTER "SHELLY" RECEIVE $500,000 FROM HER ESTATE DUE TO HER DEDICATION TO LYDIA STILLMAN AND HER DIRE FINANCIAL NEEDS | $500,000 | $1,500,000 | 137 | $205,500,000 |
| 50 | LITIGATION DAMAGES | PLAINTIFF'S LEGAL RIGHT TO ACCESS HIS OWN TRUST ACCOUNTS TO FUND THE LITIGATION COSTS HAVE BEEN COMPLETELY DISMISSED HOPING THIS CASE WOULD NEVER SEE JUSTICE. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 51 | REMOVAL FROM $3M LINE OF CREDIT WHICH IS ASSUMED TO HAVE BEEN USED ILLEGALLY TO CREATE DEBT BURDEN FOR PLAINTIFF UPON THE DEATH OF MAX D ELIASON | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $3,000,000 | $9,000,000 | 137 | $1,233,000,000 |
| 52 | "GOD FRAUD" DAMAGES FOR DESTROYING PLAINTIFF'S ABILITY TO EVER BELONG TO HIS FAITH AND/OR QUESTION THE ASSOCIATED TRUTH BEHIND THE ACTIONS OF DALLIN H OAKS | PLAINTIFF HAS BEEN REBUKED BY HIS BISHOPRIC AND NEIGHBORS AS WELL KNOWING THAT HE HAS FILED A COMPLAINT AGAINST THEIR SACRED "KING TO BE" - MY "PROPHET TO BE" HAS VICIOUSLY DESTROYED MY ENTIRE FAMILY THAT WILL NEVER BE TOGETHER FOREVER IN THIS LIFE OR THE NEXT ONE DUE TO GREED AND POWER | $10,000,000 | $30,000,000 | 137 | $4,110,000,000 |
| 53 | EMOTIONAL DAMAGES FOR OBSTRUCTING JUSTICE BY TRYING TO GET A FELONY CRIME DISMISSED ON 12-26-19 | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 54 | EMOTIONAL DAMAGES DUE TO DEFENDANT ROBERT BAIR CHASING PLAINTIFF WITH A RAKE CALLING HIM A "PUSSY" ON THE SIDEWALK IN FRONT OF HIS HOUSE | SHAME ON THE GODLESS INDIVIDUALS WHO ARE ABUSING AND EXPLOITING THE PEOPLE THEY WERE PAID TO PROTECT. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 55 | EMOTIONAL DAMAGES FOR ZAC BAIR BREAKING AND ENTERING INTO PLAINTIFF'S HOUSE AT 4:00 AM ON DECEMBER 22ND, 2019 WHEREIN DEFENDANT ALLEGEDLY ENTERED WITH THE INTENTION OF CAUSING BODILY HARM/DEATH TO STOP THIS INJUNCTION FROM BEING FILED THE NEXT DAY. | PLAINTIFF DEMANDS THAT AN INVESTIGATION AND PHONE RECORDS BE COMPILED FROM THE DEFENDANTS IN ORDER TO DETERMINE WHETHER OR NOT THE "HIT ON PLAINTIFF'S LIFE" WAS ORDERED BY HIS "GOD" TO BE OR ONE OF HIS LOVING SIBLINGS. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |
| 56 | EMOTIONAL DAMAGES FOR HAVING THE FRIEND OF THE BAIR FAMILY "JON" POUND ON PLAINTIFF'S DOOR DEMANDING $15K AND THREATENING THAT "HE HAD A GUN AND KNEW WHERE TO FIND PLAINTIFF'S DAUGHTERS" | THREAT WAS REPORTED TO POLICE BUT IS ALLEGED TO CAUSE INTENTIONAL EMOTIONAL DAMAGE PLUS TO ADD ADDITIONAL FINANCIAL STRESS. | $1,000,000 | $3,000,000 | 137 | $411,000,000 |

| TAB # | EVENT AT ISSUE | DESCRIPTION | ESTIMATED DAMAGES | TREBLE X3 | TOTAL DEFENDANTS | TOTAL DAMAGES |
|---|---|---|---|---|---|---|
| 56 | EMOTIONAL DAMAGES FOR THE CORRUPTION AND LAWLESSNESS THAT HAS BEEN TOLERATED FOR SEVEN YEARS BY PLAINTIFF WITH ALMOST EVERY SINGLE CIVIL RIGHT GRANTED UNDER THE CONSTITUTION VIOLATED REPEATEDLY BY THE ATTORNEYS AND RELIGIOUS LEADERS WHO WERE PROTECTORS | DEFENDANTS ACCEPTED A CONTRACT TO "CAPTURE THE SOUL" OF THE PLAINTIFF AND SHOULD LOSE THEIR FREEDOM FOR THE INTENTIONAL AND HIDEOUS AND MOST REPULSIVE FORM OF LAWLESSNESS DEMONSTRATED UNDER THE EVIL PRETENSE AND FRAUDULENT DISPLAY OF "RIGHTEOUSNESS" | $10,000,000 | $30,000,000 | 137 | $4,110,000,000 |
| 56 | EMOTIONAL DAMAGES ASSESED FOR THE MERCILESS ASSAULT WHICH HAS BEEN DONE UNDER CONSPIRACY AND AGGRIVATED ASSAULT FOR SEVEN YEARS WITHOUT CESSATION. | DEFENDANTS ROBBED PLAINTIFF'S OF EVERY SINGLE CIVIL RIGHT WITH MALICIOUS INTENT TO DEPRIVE THE PERSON THEY WERE PAID TO PROTECT AND SHOULD BE SHOWN THE SAME MERCY HE, HIS PARENTS, AND HIS DAUGHTERS HAVE HAD WITH A $1,000,000 CHARGE FOR EACH OF THE SEVEN YEARS | $70,000,000 | $210,000,000 | 137 | $28,770,000,000 |
| | | **TOTAL TREBLE DAMAGES ONLY** | | | | $126,636,899,547 |

Brett L. Eliason, Trustee & Agent

Veronique P. Eliason

Kylie Marie Eliason

Brittnie Lynne Eliason