IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRETT L. ELIASON, KYLIE M. ELIASON, BRITTNIE L. ELIASON, and VERONIQUE ELIASON,<br><br>    Plaintiffs,<br><br>v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, et al.,<br><br>    Defendants. | **ORDER OVERRULING OBJECTION AND ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 1:20-cv-24-RJS-DBP<br><br>Chief Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

On June 30, 2020, Chief Magistrate Judge Dustin Pead entered a Report and Recommendation recommending that the undersigned dismiss the claims brought by pro se Plaintiffs Brett Eliason, Kylie Eliason, Brittnie Eliason, and Veronique Eliason (collectively, Eliason). Eliason timely filed a Response and Objection (Objection) to the Report and Recommendation.[1] For the reasons explained below, the court overrules Eliason's Objection and dismisses the Amended Complaint without prejudice. But Plaintiffs may, if they choose, file a second amended complaint within fourteen days of this Order. Otherwise, the court will dismiss the Amended Complaint with prejudice and close the case.

---

[1] Dkt. 55.

1

## BACKGROUND

Eliason initiated this action on February 26, 2020,[2] and filed an Amended Complaint two days later.[3] On March 6, 2020, the undersigned entered an order referring the case to Judge Pead.[4]

Eliason asserts forty-five causes of action against over a hundred defendants and seeks nearly $127 billion in damages.[5] Although Eliason accuses Defendants of a host of crimes and wrongdoing, most of his claims involve allegations related to the estate plan of Max and Joyce Eliason, Plaintiff Brett Eliason's parents.[6] Specifically, Eliason alleges Defendant law firm Kirton McConkie has improperly managed his parents' estate, defrauding the Eliason family out of millions of dollars.[7]

Since filing the Amended Complaint, Eliason has filed numerous motions for summary judgment and motions to compel.[8] Defendants filed two motions to dismiss—one by R. David Bishop and one brought collectively by Dallin H. Oaks and the Corporation of The Church of Jesus Christ of Latter-day Saints (the Church Defendants).[9] The Church Defendants' Motion sought dismissal on three grounds, arguing: (1) the court lacks subject matter jurisdiction, (2)

---

[2] Dkt. 1.

[3] Dkt. 2.

[4] Dkt. 8. The case was initially referred to Judge Pead under 28 U.S.C. § 636(b)(1)(A). On March 24, 2020, the undersigned modified the referral to one under 28 U.S.C. § 363(b)(1)(B). Dkt. 10.

[5] *See* Dkt. 2 at 1–2, 250–255.

[6] *See id.* at 1–7. Joyce Eliason is deceased. *Id.* at 3.

[7] *See id.* at 11–12.

[8] Dkt. 9; Dkt. 23; Dkt. 34; Dkt. 38; Dkt. 40; Dkt. 42; Dkt. 43.

[9] Dkt. 30; Dkt. 36.

Eliason's claims are barred by the doctrine of res judicata, and (3) the Amended Complaint fails to state a cause of action.[10]

On June 30, 2020, Judge Pead issued a Report and Recommendation (the Report) agreeing with the Church Defendants that the court lacks subject matter jurisdiction.[11] Specifically, the Report held that diversity jurisdiction was lacking, and there was no federal question presented because the two federal causes of action Eliason advances fail to state a claim for which relief can be granted.[12] The Report also concluded that the Amended Complaint failed to state a claim against Defendant R. David Bishop and that Eliason's motions for summary judgment were premature.[13] Although the Report recommended dismissing the Amended Complaint, it afforded Eliason fourteen days to file a second amended complaint.[14]

Eliason declined the invitation to amend and instead timely objected to the Report.[15] Spanning fifty-four pages, Eliason's Objection never explicitly engages the Report. Instead, the Objection largely rehashes Eliason's numerous grievances against Defendants. The remainder of the Objection is a hodgepodge of criticisms of proceedings in a parallel case in the District of Hawaii,[16] personal pleas to the President of the Church of Jesus Christ of Latter-day Saints,[17] and recitations of several federal statutes.[18]

---

[10] *See generally* Dkt. 36.

[11] Dkt. 52 at 7–11.

[12] *Id.*

[13] *Id.* at 11–12. Judge Pead denied Eliason's motions to compel in a separate Order. Dkt. 53.

[14] Dkt. 52 at 13.

[15] Dkt. 55.

[16] *Id.* at 24–31.

[17] *Id.* at 18–22.

[18] *See, e.g.*, *id.* at 25–27, 33–35.

**ANALYSIS**

The court begins by deciding which legal standard to apply in assessing Eliason's Objection—namely, whether the court should review the Report de novo or for clear error. Concluding that at least one of Eliason's objections is specific enough to warrant de novo review, the court first addresses that objection and then reviews the remainder of the Report for clear error.

### I.  Appropriate Legal Standard

The applicable standard of review in considering a magistrate judge report and recommendation depends on whether a party lodges objections to the recommendation.[19] When assessing unobjected to portions of the report and recommendation, the Supreme Court has suggested no further review by the district court is required, but neither is it precluded.[20] This court generally reviews unobjected-to portions of a report and recommendation for clear error.[21]

However, Federal Rule of Civil Procedure 72(b)(2) allows parties to file "specific written objections to the proposed findings and recommendations." In those instances, "[t]he district judge *must* determine de novo any part of the magistrate judge's disposition that has been

---

[19] *See* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any *part* of the magistrate judge's disposition *that has been properly objected to*.") (emphasis added).

[20] *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("The [Federal Magistrate's Act] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection."); *id.* at 154 (noting that "it is the district court, not the court of appeals, that must exercise supervision over the magistrate," so that "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard").

[21] *See, e.g.*, *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made [to a magistrate judge's report and recommendation], the district court judge reviews those unobjected portions for clear error.") (citations omitted); *see also* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citing *Campbell v. U.S. Dist. Court for N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879).

*properly* objected to."[22] To qualify as a proper objection that triggers de novo review, the objection must be both timely and specific.[23] Indeed, "only an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act . . . ."[24] Thus, de novo review is not required where a party advances objections to a magistrate judge's disposition that are either indecipherable or overly general.[25]

Here, although the Objection was timely,[26] the court concludes only one of Eliason's objections is sufficiently specific to warrant de novo review. Of the Objection's fifty-four pages, Eliason never refers explicitly to the Report. Most of the Objection is a stream of accusations against a number of parties Eliason argues are guilty of serious wrongdoing. Usually, the failure to identify specific errors in the magistrate's disposition would warrant only clear error review.[27]

Nevertheless, the court recognizes pro se litigants are held to less stringent standards than are parties formally represented by lawyers[28] and that documents filed pro se are "to be liberally

---

[22] Fed. R. Civ. P. 72(b)(3) (emphasis added); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court.") (citations omitted).

[23] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[W]e hold that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

[24] *Id.*

[25] *See id.* ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.") (citation omitted); *see also Moore v. Astrue*, 491 F. App'x 921, 922 (10th Cir. 2012) (upholding district court's clear error review of magistrate judge's report and recommendation because Plaintiffs objected only "generally to every finding" in the report).

[26] Although the Objection was timely, Eliason filed several "Exhibits" ostensibly related to the Objection that were untimely. *See* Dkt. 56 (filed outside the 14-day timeframe established under Rule 72(b)(2)). Thus, the court will not consider them. In any event, having briefly reviewed the Exhibits, none of them would have affected any of the court's conclusions.

[27] *See supra* notes 23–25.

[28] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

5

construed."[29] Accordingly, the court construes Eliason's arguments about Defendants' alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) to challenge the Report's conclusion that there is no federal question jurisdiction. The court reviews that issue de novo. Because Eliason's other objections cannot fairly be liberally construed as objecting to any other portion of the Report, the court reviews the remainder of the Report for clear error.

## II. Federal Question Jurisdiction

Because diversity jurisdiction is lacking, Eliason's action may remain in federal court only if federal question jurisdiction exists. "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[30] Although the Amended Complaint does not assert a civil RICO claim, Eliason argued in other filings that Defendants are liable under the civil RICO statute.[31] Even construing these filings liberally, they fail to plead adequately a cognizable civil RICO claim.

To state a claim for civil RICO, Eliason must allege four elements as they relate to Defendants: "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."[32] "Racketeering activity is defined as any 'act which is indictable' under federal law."[33]

---

[29] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

[30] *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003) (internal quotation marks and citations omitted).

[31] *See, e.g.*, Dkt. 17 at 1 (asserting in the case caption that the listed defendants are guilty "under the RICO Act of 1970"); Dkt. 38 at 8 ("It is not a coincidence that the largest group of corrupt Defendants in the history of mankind are proven guilty of Racketeering and Organized Crimes . . . ."). Liberally construing Eliason's filings, the Report incorporated these allegations into the Amended Complaint. Dkt. 52 at 7–8.

[32] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).

[33] *Id.* (quoting 18 U.S.C. § 1961(1)(B)).

Eliason fails to allege these four elements in any of his filings and thus fails to state a civil RICO claim. To be sure, Eliason accuses Kirton McConkie and the Corporation of the President of the Church of Jesus Christ of Latter-day Saints of serious wrongdoing, but this alone is insufficient. Eliason must allege both the specific enterprise and the pattern of racketeering activity in which the enterprise is engaged.[34]

In the Objection, Eliason asserts "[t]he victim/plaintiff has over 3,500 pages of supporting evidence and has completed an approximate 300 page complaint with over 50 felony crimes which qualify under the RICO Act of 1970."[35] But the racketeering activity must be acts indictable under *federal* law.[36] All the causes of action listed in the Amended Complaint either arise under state law[37] or do not appear grounded in state or federal law.[38] And while Eliason lists in his Objection alleged federal crimes that could qualify as racketeering activity, these allegations are insufficient for two reasons. First, the allegations must appear in Eliason's pleading, not an objection to a report and recommendation.[39] Second, each description of the alleged crimes amounts to "naked assertions devoid of further factual enhancement" that are insufficient to state a claim for relief.[40] For example, Eliason lists wire fraud as one of Defendants' alleged crimes but asserts only that "[f]unds were stolen from Eliason Eight and wired to the IRS for taxes."[41] Without more, this amounts to "an unadorned, the-defendant-

---

[34] Additionally, Eliason must allege an enterprise that is distinct from the individual Defendants themselves. *See* Dkt. 52 at 10 (citing *Dopp v. Loring*, 54 F. App'x 296, 297–98 (10th Cir. 2002)).

[35] Dkt. 55 at 37.

[36] *See Tal*, 453 F.3d at 1261.

[37] *See* Dkt. 2, counts 1, 2, 4, 11, 15.

[38] *See id.*, counts 9, 25, 37, 45.

[39] *See Nicodemus*, 318 F.3d at 1235 (noting the federal cause of action must be established in the plaintiff's "well-pleaded complaint").

[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

[41] Dkt. 55 at 36.

unlawfully-harmed-me accusation" that courts routinely reject.[42]  Accordingly, Eliason has failed to state a claim under the civil RICO statute.  Because neither the Amended Complaint nor Eliason's other filings assert other federal causes of action, there is no federal question jurisdiction here.  And without either diversity or federal question jurisdiction, the court lacks subject matter jurisdiction.[43]

      Nevertheless, Eliason may attempt to replead his claims.  In so doing, the court reminds Eliason that Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement" of the grounds for the court's jurisdiction and to show that Plaintiffs have a claim for which they are entitled to relief.  Though perhaps counterintuitive, Eliason is more likely to find success complying with Rule 8 by focusing a revised complaint only on the allegations essential to Plaintiffs' claims.

      The court further reminds Eliason that Defendants asserted other grounds for dismissal, including that "[t]he claims asserted here could have or should have been brought in the State Court action and are therefore barred by res judicata" and that the claims suffered from pleading deficiencies.[44]  Although the Report did not address those alternative grounds, it concluded that they "appear[] . . . equally valid."[45]  Given this preliminary assessment, the court cautions Eliason to consider those alternative bases for dismissal when drafting an amended complaint.

---

[42] *Iqbal*, 556 U.S. at 678.

[43] The court declines to exercise supplemental jurisdiction over Eliason's remaining state law claims.  *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

[44] Dkt. 52 at 11.

[45] *Id.*

### III. The Remainder of the Report

Having reviewed the remainder of the Report, the court finds no clear error in any of Judge Pead's conclusions. Accordingly, the court adopts the Report in its entirety.

### IV. Communications with Chambers

Before concluding, it is necessary to comment on Plaintiffs' communications with chambers. Since the filing of this case, Plaintiff Brett Eliason has regularly emailed chambers for one or both of the presiding judges, along with many others. The body of many of these emails is often not directed to the undersigned, but to various attorneys or Eliason's family.

Judges ordinarily may not engage in *ex parte* communications with parties or lawyers about cases before the court. It is inappropriate for any party or any lawyer for a party to attempt to communicate with a judge about the substance of a case except through court filings placed on the public docket. This is an important rule of practice the court enforces in all cases.

Eliason is directed to immediately cease email communications with chambers. All matters requiring the court's attention should be included in motions or other appropriate filings and will be addressed in the normal course. And the court has not considered these emails or anything in them (that is not also filed on the docket) in evaluating the sufficiency of Eliason's Amended Complaint.

Separate from the fact of the communications, the substance of most of the emails to chambers (and others) is inappropriate from any litigant. Plaintiffs are availing themselves of the United States courts, seeking relief for injuries they claim they have suffered. All litigants who come to court seeking redress must adhere to basic rules of decorum, decency, and fair play. Making explicit or implicit threats to others, utilizing insulting or inflammatory hyperbole, or engaging in otherwise abusive conduct is inappropriate and cannot be permitted from any party.

Plaintiffs must refrain from such conduct moving forward or risk sanctions that could, at some point, include dismissal of Plaintiffs' claims.

## CONCLUSION

For the reasons explained above, Eliason's Objection is OVERRULED, and the Amended Complaint is dismissed without prejudice.[46] This means Eliason may file a second amended complaint. If Eliason chooses to do so, the newly amended complaint must be filed within fourteen (14) days of the date of this Order. Otherwise, the court will dismiss the case with prejudice and close the case.

SO ORDERED this 12th day of August 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[46] Dkt. 55.